**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
450 Golden Gate Avenue, Box 36060
San Francisco, CA 94102-3489



**JOSEPH P. HART**,
Plaintiff,

v. Case No. _____

**COUNTY OF MENDOCINO;**
**DARCIE ANTLE**, in her official capacity as Chief Executive Officer of Mendocino County;
**CARMEL ANGELO**, former Chief Executive Officer of Mendocino County;
**MENDOCINO COUNTY SHERIFF'S DEPARTMENT;**
**MATTHEW C. KENDALL**, in his official capacity as Sheriff of Mendocino County;
**CAPTAIN GREGORY VAN PATTEN;**
**LIEUTENANT JOHN S. BEDNAR;**
**SERGEANT ELDON E. JOHNSTON;**
**SERGEANT LORRIE A. KNAPP;**
**SERGEANT WILLIAM HARDIMAN**
**SERGEANT STEPHEN P. BOHNER;**
**DETECTIVE SERGIO OCHOA-PEDROZA;**

**CORRECTIONAL OFFICERS:**
**C/O ALEX L. BRENNAN;**
**C/O AARON J. SHAW;**
**C/O REYMUNDO T. HERNANDEZ;**
**C/O JENZEN RIVERA;**
**C/O BARINDER SINGH;**
**C/O ROBERT C. DYE;**
**C/O JUAN J. ZAVALA;**
**C/O TIMOTHY M. DALE;**
**C/O CODY S. DOW;**
**C/O JENNA JOHNSTON;**
**C/O LEE E. HALDORSON;**
**UNKNOWN CORRECTIONAL OFFICERS;**
**UNKNOWN MEDICAL STAFF,** to be named as discovered,
Defendants,


-   **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
    **JURY TRIAL DEMANDED**

C.                                                                                          1

## 1. JURISDICTION AND VENUE

1.A) This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the Constitution and laws of the United States.

1.B) The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

1.C) Venue is proper in this district under 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims occurred in Mendocino County, California, which lies within this judicial district.

## 2. PARTIES

2.A) **Plaintiff JOSEPH P. HART** was a resident of Covelo & Ukiah, California, and a Federally protected individual with a documented disability under the Americans with Disabilities Act (ADA), with all below violations happening while residing in the County of Mendocino.

2.B) **Defendant COUNTY OF MENDOCINO & its CEO are** public entities within the State of California, both current and former CEO have been informed and made aware of these issues and should have acted to rectify the matters.

2.C) **Defendant MENDOCINO COUNTY SHERIFF'S DEPARTMENT** is a subdivision of the County charged with oversight of jail operations and staff.

2.D) **Defendant's Sheriff Matthew Kendall, Captain Gregory Van Patten & LT. John S. Bednar,** as Department heads are both sued in their individual and official capacities, all have been informed and made aware of these issues and should have acted to rectify the matters.

2.E) **Defendants Sgt. ELDON E. JOHNSTON; SGT. LORRIE A KNAPP; SGT. HARDIMAN;  SGT. STEPHEN P. BOHNER; MENDOCINO SHERIFF DETECTIVE SERGIO OCHOA-PEDROZA; MENDOCINO COUNTY C/O's; - C/O ALEX L. BRENNAN; C/O AARON J. SHAW; C/O REYMUNDO T. HERNANDEZ; C/O JENZEN RIVERA; C/O  BARINDER SINGH; C/O  ROBERT C. DYE,  C/O TIMOTHY M. DALE ,  C/O CODY S. DOW, C/O JENNA JOHNSTON, C/O LEE HALDERSON,** and unnamed medical staff are current or former employees of the County. Further named persons may be detailed and or spellings corrected upon discovery, all sued in both their individual and official capacities.

2.E) These named and unnamed individuals "**motivated, and acted upon, by evil motive or intent**" and/or "**with reckless or callous indifference to Plaintiff's health, and/or risk of death,**" defendants did this under color of state law, they did it knowingly, and/or with medical indifference, all while done in violation of the U.S. Constitution.

C.

2.F) Does 1–10 are unknown agents, employees, or contractors whose identities will be added upon video documentation and/or written discovery.

## 3.) INTRODUCTION

**Plaintiff Joseph P. Hart** respectfully brings this 27 page civil rights complaint for compensatory and injunctive relief pursuant to **42 U.S.C. § 1983, the Americans with Disabilities Act (42 U.S.C. § 12132)**, and relevant provisions of the California Government Code, including the **Bane Act (Cal. Civ. Code § 52.1)**, based on a prolonged pattern of abuse, retaliation, and deliberate indifference carried out by Mendocino County officials and its agents **between March 30, 2020, and July 3, 2024.**

This Complaint arises under both federal and state law doctrines recognizing that when a plaintiff is subjected to a continuing violation—**particularly where a single indictment and custodial authority have been used to exert total control over the plaintiff's life, liberty, and access to medical care**—then the statute of limitations is tolled under the **"continuing violation doctrine" and "delayed discovery rule."** *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002); *Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982)

These legal doctrines apply when a series of connected wrongful acts occur over time, resulting in cumulative injury, and when the plaintiff was effectively prevented from asserting rights due to systemic retaliation or incapacitating conditions such as being held for years in solitary confinement, refused federally protected rights, and held without cause as retaliatory actions for speaking up for your rights, as is the case here.

Under California law **(e.g., *Richards v. CH2M Hill, Inc.,* 26 Cal.4th 798 (2001)** and federal case law interpreting **42 U.S.C. § 1983 (see *Heck v. Humphrey,* 512 U.S. 477 (1994); *Wallace v. Kato,* 549 U.S. 384 (2007),** courts have recognized that ongoing civil rights violations—particularly those that involve incarceration, ADA violations, and medical neglect—extend or toll the limitations period until the wrongful conduct ceases or the plaintiff is able to meaningfully pursue legal action.

Defendants' conduct was not isolated or occasional but represented an **institutionalized pattern of misconduct,** wherein the Plaintiff was subjected to inhumane conditions, psychological torture, and repeated civil rights violations under a unified and coercive structure of control. The nature of this conduct and the resulting injuries invoke the equitable powers of this Court to both award substantial damages and issue immediate injunctive relief to prevent further harm.

## 4.)Plaintiff, Joseph P. Hart, brings this action against Defendants for a three-fold pattern of abuse and constitutional violations:

## (1) Deliberate Indifference to Medical Needs and Violations of the ADA

The Defendants demonstrated deliberate indifference to Plaintiff's serious medical condition—specifically, his documented epilepsy, seizure disorder, post-seizure complications, and ongoing post-surgical treatment at UCSF—while he was under their custody and care.

C.                                                                                      3

From the outset, including within the initial minutes of the 9-1-1 transcripts and police reports (see EXHIBITS C-1 through C-22), it is clear that authorities were fully aware of Plaintiff's medical history and condition, particularly in the time post covid period that this Plaintiff was held without charge and without any type of additional crime (10/23 & 7/1/24-7/3/24).

Despite this knowledge, Defendants willfully failed to implement even the most basic emergency protocols, including the scheduling of urgent medical appointments—delaying necessary care for over four and a half months and completely refusing urgent doctor prescriptions. This prolonged neglect not only violated established standards of medical care but also constituted a flagrant breach of the Americans with Disabilities Act (ADA) and Plaintiff's constitutional rights. Such conduct reflects more than mere negligence; it evidences a pattern of malicious and/or reckless disregard for Plaintiff's life, health, and legal protections under both State and Federal law.

**(2) Civil rights violations, including the 1st, 4th, 5th, 8th, and 14th Amendment violations for:** excessive bail, extensive retaliatory solitary confinement, and extensive physical and/or psychological abuse directly related to error's and violation of court orders on the part of the defendants; including creating, participating in, or benefitting from fabricated or manipulated "Erroneous Files sent to CDCR", and "parole holds" and/or "Resisting Arrest" charges filed in 2023 & 2024- both dismissed as were simply designed to harass, injure or harm, all these actions prolonged the unlawful custody and/or treatment of this plaintiff by defendants actions, either working in whole, or in parts, acting under color of law.

**(3) Due Process and Property Rights Violations:** Plaintiff's constitutional rights were violated through the unlawful seizure and subsequent destruction of valuable, lawfully-owned property, without adherence to due process, legal recourse, or departmental policy. These actions reflect a clear indication of malicious intent and/or a willful disregard for both State and Federal law. (See EXHIBITS C-1, 5 pages +). Notably, records confirm that Defendants were fully aware the property in question was legally owned by Plaintiff as early as March 30, 2020.

**5.) Pattern of Misconduct Over Extended Periods of Time**

**5.A)** The events described in this complaint span a four-year period from **March 30, 2020, to July 3, 2024,** and reflect a consistent, systemic pattern of misconduct. Rather than isolated occurrences, the facts will demonstrate an ongoing series of actions, knowingly and in violation of State & Federal Law by the defendants, collectively revealing a troubling blatant disregard for Plaintiff's constitutional and federally protected rights.

**5.B)**-The conduct of the defendants—**particularly those of Sgt. Johnston, C/O Shaw & C/O Alex Brennan**—was not merely negligent or bureaucratically indifferent at times, it was life threatening. In multiple instances, either the actions taken, or inactions taken, were marked by a reckless or even malicious attitude, **reflecting a deeper executive institutional failure to uphold the law, legal standards, and/or basic human dignity as established in *Smith v. Wade*, 461 U.S. 30, 56 (1983),** such conduct constitutes a violation of constitutional protections when "**motivated by an evil motive or intent**", or when carried out with **"reckless or callous indifference to the rights of the individual."**

C.                                                                                                          4

**5.C) The cumulative nature of the violations over this extended period underscores the severity and intentionality of this misconduct,** as well as the need for accountability within the legal systems that has allowed it to continue, even after other documented patterns of abuse by these same Defendants have been detailed by State Authorities, yet it continues.

## 6.) This is a civil rights and disability discrimination complaint brought pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and California state law.

**Plaintiff Joseph P. Hart, a federally recognized persons with a disability and serious medical condition seeks redress for the egregious, continuous, and willful violations of the Americans with Disabilities Act (ADA) and his constitutional rights, including the 1st, 4th, 5th, 8th, and 14th Amendments, during his incarceration and prosecution by Mendocino County and the Defendants serving under the color of law.**

### 6.A) – Chronological Record of Medical Neglect, ADA Violations, and Deliberate Indifference

**6.A.1)** On **March 30, 2020, at approximately 1pm-** Plaintiff was arrested by **Cahto Rancheria Tribal Officer Jason Unluata.** During this encounter, Plaintiff, who has a documented history of epilepsy, suffered a grand mal seizure, most probably brought on by extreme stress of the situation.

 Officer Unluata wrote in his report "He noticed (Plaintiff) *was sweating and having a hard time breathing*, so he called the paramedic". **(SEE EXHIBIT C-1- 5pgs)** Apparently, the paramedics said that I was "coherent" so they declined to transport me to the hospital **due to heightened 'Covid' fears**. It was at that time Officer Jason Unluata transferred Plaintiff into the custody of the California Highway Patrol (CHP).

**6.A.2)** While in CHP custody, Plaintiff was forced to sit handcuffed for 6–8 hours on the ground at the scene in the approximate 2"-3"of rain that fell during that period, during which he was forced to urinate upon himself multiple times. After approximately 5 hours, seeing clear signs of distress, urination, and the plaintiff speaking strangely, aggressively, and incoherently as a result of **"Post Morbid- Conditions"** and most certainly having communicated my serious seizure history, **CHP Officers Valee and Jessup once again called paramedics,** who came back and checked my pulse but did **not transport me to the hospital for medical attention once again due to the covid outbreak.**

**6.A.3)** Plaintiff was transferred from CHP to the custody of Mendocino County Sheriff's at approximately 9pm on March 30th, 2020 and brought to a sub-station under the supervision of **Defendant, Mendocino County Det. Sergio Ochoa-Pedroza.**

**6.A.4) Plaintiff detailed to Detective Ochoa- Pedroza his medical condition, requested medical attention and requested that his personal property be properly inventoried as it was all of his life possessions.** Defendant Ochoa-Pedroza laughed at this defendant, at one time during this interview the defendant, without provocation told this plaintiff **"**Your not trying to reach for my gun are you? Cause if I thought you were reaching for my gun...Yeah Id shoot you" acting like he might shoot me without cause, and then continued that "I better be careful, because he could make up any charges he wanted against me" all this stemming from asking for help while suffering from the "Postictal/Co-Morbid State" as a result of my Epileptic Conditions".

**'Postictal State'/ 'Co-Morbid Conditions'-  Medical Definition:**
"The ***postictal state*** is the altered state of consciousness or neurological function that follows a *seizure, **lasting from minutes to days** depending on seizure type and severity; symptoms include – Confusion or disorientation, speech difficulty, amnesia, headache, partial paralysis aka 'postictal paralysis', psychosis or aggression, emotional lability, sleepiness or lethargy"* **Per UCSF Neurology** www.neurology.ucsf.edu

**6.A.5)** Plaintiff was subsequently booked into Mendocino County Jail under the supervision of **Mendocino County Sgt. Sergio Ochoa-Pedroza at approximately 3am, where he was immediately placed in solitary confinement.**

**6.A.6) April 1-3, 2020:** Plaintiff was placed in solitary confinement on a noisy disciplinary wing, was refused any and all medical attention, by **Defendants C/O Juan Zavala, C/O Alex L. Brennan, and Sgt. Lorrie Knapp**

**6.A.7) April 4–6, 2020**: Plaintiff suffered a grand mal seizure and struck his head. **Sgt. Eldon Johnston, C/O Alex Brennan, C/O Juan Zavala, C/O Cody Dow,** and **Sgt. Lorrie Knapp** all refused to provide medical assistance, nor even call medical for me.

**6.A.8) April 6, 2020:** Plaintiff suffered another seizure and was found unconscious by C/O Alex Brennan while he was collecting meal trays, instead of summoning medical help, c/o Alex Brennan falsely accused Plaintiff of refusing to hand over a half-eaten dinner tray, apparently laying on the ground during the initial tray pick up. Exactly how he got the tray back, I am not sure, but he retaliated by initiating a punitive directive without written disciplinary notice or hearing, and forced this Plaintiff to eat with his hands, without utensils for **39 consecutive days (April 7 – May 13, 2020.)**

**6.A.9) April 6–13, 2020**: Plaintiff was refused daily requests for medical attention. These were ignored by repeated requests to **Sgt. Eldon Johnston, Sgt. Lorrie Knapp, C/O Hernandez, C/O Zavala, C/O Dow** and others.

**6.A.10) April 14th, 2020:** Plaintiff was given a medical request slip, pen & a grievance by another inmate for the first time, that was filled out and turned into **C/O DYE**. No nurse would even stop at my cell until I had a seizure on May 8th **(EXHIBIT C-4-1pg)**

C.

**6.A.11)** April 15, 2020: Plaintiff experienced another seizure. **When requesting help, C/O Shaw** responded with verbal abuse, telling him to *"shut the fuck up with your shit already."*

About 30 minutes later **Sgt. Eldon Johnson**, along with **C/O Shaw, C/O Rivera,** and **C/O Singh,** lured Plaintiff into placing his hands through the food port by telling him they were taking him to medical, and then forcefully relocated him to a padded "Drunk" cell covered in feces, where he was held without medical attention for over seven hours.

**6.A.12)** April 17th, 2020: **(EXHIBIT C-5- 5 pgs)** During pre-trial this plaintiff tried to plead with the Judge, even the lawyers mentioned *"Is this about the medical condition"* and yet this Plaintiff didn't see a doctor for many months after, in spite of documented Grand Mal seizures and head injuries during this period.

**6.A.13) May 8, 2020:** C/O Dye witnessed Plaintiff actively seizing. Nursing staff was called, but again Jail staff denied needed medical care under the guise of COVID-19 protocol. **Plaintiff suffered a severe concussion, broken finger and a split eyelid that was given some gauze, no stitches we applied, nor was a doctor called or seen as was medically needed.**

6.A.14) May 12th 2020 **(EXHIBIT C.6-6pgs) Attorney Jan Cole- Wilson** told the court, **(Hon. Carly Dolan)** that *'He (Plaintiff) is not getting medical attention'* to which this Plaintiff then pleaded for help for 3 pages of what are badly translated transcripts, during which I detailed the concussion, punishments and even detailed by video court to look at my severely bruised eye from these seizures and begging for help.

It was affirmed by Judge Carley Dolan in open court **(EXHIBIT C.6, pg#5)** when she replied in court ***"I hear what your saying, and I understand your frustration....."***, yet still nothing was done, this plaintiff was not even allowed to see or even talk to a 'medically licensed doctor' for at least another 90 days, while the medical condition worsened, and these abuses and medical neglect increased. There is clearly medical negligence with no excuse for their actions after the documented medical incidents in April, May, June, July- 2020 with multiple head injuries.

**6.A.15) May 20, 2020** (Approx. 1:30 AM): Plaintiff fell from his bunk during a seizure while in solitary confinement and remained unconscious for over five hours. No medical assistance was provided after, despite repeated pleas.

**6.A.16) June 9, 2020:** Plaintiff suffered a severe grand mal seizure while speaking with **C/O Lee E Haldorson** thru the cell door. Plaintiff suddenly collapsed face-first onto the concrete, sustaining visible facial injuries. C/O Lee E. Helderson called for immediate medical attention and request to open cell door, despite this, Helderson's superiors barred medical response, barred the door from being opened to prevent head injuries, citing COVID restrictions. A nurse was called to the scene and opened the door to exam the injuries, but no physician was ever brought in and no treatment plan followed despite obvious bleeding and head injuries.

C.

**6.A.17) June 16th, 2020:** Plaintiff, after being refused Gabapetin as a potential medicine, then requested an amino acid supplement called "Taurine". Taurine has well known benefits for Epileptics in the medical world, and is part of my UCSF presecriptions. Medical responded on June 23rd, 2020 with a note to my request saying "No" that Taurine its not a medically approved treatment" in contrary to UCSF medical reports. **(EXHIBIT C.7, 4 pgs ).**

**6.A.18) July 8th, 2020:** Plaintiff woke feeling nausea and ill and had sudden severe bleeding gums–requested to see a doctor, nurse stopped for about 15 seconds and kept walking and refused me all medical attention.

**6.A.19) July 17, 2020:** Plaintiff woke on the floor of his concrete cell with a bleeding cut on his nose and head. **C/O Hernandez had apparently** observed this Plaintiff unconscious and unresponsive and 'apparently' called medical. This Plaintiff has no recall of medical attention-any no medical assistance was provided outside postical seizure observation from outside a cell door. No doctor was scene, no medical visit was provided, despite Plaintiff's known seizure disorder. Plaintiff wrote another grievance on this. **(EXHIBIT C.8, 2pgs)** They did leave me a dinner tray to eat, as I remember really coming to because C/O Hernandez was asking me to hand the uneaten tray back thru the chuckhole if I didn't want to eat it. I do not believe that I did eat the tray and that I laid down with no food to eat post seizure.

**6.A.20) July 23, 2020:** Received an answer to that July 17th grievance **(EXHIBIT C.8, 2pgs)** indicting they acknowledged this Plaintiff was found in a solitary confinement cell unconscious, left in the concrete cell by myself, no head protection, not transported to a hospital, did not see a licensed doctor as would be normal protocol in this situation.

**6.A.21) JULY 23, 2020-**Medical staff attempted to prescribe **Keppra** or **Valproic Acid**—both of which Plaintiff is medically allergic to ( **EXHIBIT C.9- UCSF MEDICATION RECORDS, 3pgs)** and carries life-threatening risks if taken. Meanwhile, Plaintiff's long-standing, physician-approved treatments were denied based on false statements of no medical benefit and unsubstantiated accusations of misuse.

**6.A.22) July 31, 2020: I was able to have medical take a request slip because I had been having excessive gum bleeding issues. ( EXHIBIT C.10- 1pg )**

**6.A.23) August 2, 2020: The "Main Nurse" quickly stopped and asked me who my neurologist was at the time, I had told her Dr. Kore Liow, of St Francis Medical Center, in Honolulu, HI** as I had told staff since the day I was booked. **Nursing staff refused to stop at my cell again regardless of requests until August.**

**6.A.24) August 13, 2020:** Plaintiff was evaluated by a physician for the first time, **but was not provided with any medication.** Despite documented seizures, no post-episode care or treatment protocol was offered beside an occasional aspirin. This doctor did offer a Dilantin prescription, but I explained to him that I had tried taking this medication before and it had been changed because it had caused suicidal ideations, which is a well-documented side effect many taking this particular medication have, so much so it has extensive warnings on the label. In spite of that they refused any other options.

C.

**6.A.25) October 3, 2020:** I placed a request to see what kind of medical documents the jail had been keeping on me, I (surprisingly) received another noted response, denying my request and telling me that my Attorney could request them or I could upon release. **To this date have refused each and every request for copies of my medical records as is my legal right. (EXHIBIT C.11- 1pg)**

**6.A.26) November 4th, 2020:** Plaintiff was transferred to CDCR custody. The following dates, documents and events at CDCR *are documented as a cumulative effective* of the unlawful behaviors and medical neglect given by the defendants during the periods of **March 30th thru November 4th, 2020**. These are included to document the seriousness of Plaintiffs medical issues and how other correctional facilities handled the situation, over another 15 months of medical complications.

**6.A.27) November 2020- January, 2021:** CDCR claimed Mendocino initially sent them no record indicating I had a chronic medical issues and was supposed to take medication, so I was denied. Initially, CDCR ignored my requests for medication and initially had a psyche evaluation performed because they told me Mendocino records did not show this.

**6.A.28) January 29th 2021:** I was attacked by a group of inmates and had a seizure of some kind. I honestly don't remember exactly what happened, but believe I was only taken to the medical hospital inside the prison, according to the medical reports it says I had "an altercation" though I had a concussion, bone fracture in my right 3rd metacarpel and a wound requiring 8 sutures. (EXHIBIT C.12, 1pg)

As I will detail further in this complaint, January thru May 2021 was a very scary, painful and life threatening at times. After this incident I believe I was prescribed, Keppra, I told the doctors, the neurologist Dr. Liow's warned me to get a medical alert bracelet and make sure I am given Keppra or Valproic Acid upon emergency room visit and I refused to take the medication as my neurologist had advised me.

**6.A.29) May 19th , 2021** -Plaintiff was transported via emergency vehicle to Bakersfield Adventist Hospital due to seizure-related complications. (EXHIBIT C.13- 2pgs.) I was in the outside hospital for 10-12 hours, maybe longer. At this time I was prescribed Dilantin again and initially I began taking the medication as prescribed because of the fear of the seizures, but within 3-4 days I wanted to hang myself and was thinking of throwing myself off a second floor balcony rail when I was let out for a shower.

 I told the nurse about this immediately who sent me to the doctor and on May 24th CDCR changed my prescription to Valproic Acid, which I again told them Keppra and Valproic Acid is what Dr. Liow had specifically warned against. During the next few months I saw a number of different doctors, I was scheduled to see a specialist, a "Dr. Gomez via video appointment 2-3x between May and September" and a dietician for the state of California named "Mason French" They both met with me and recommended a medically prescribed *Ketogenic Diet* -but CDCR kitchen staff denied that recommendation.

C.                                                                                                                          9

**6.A.30) August, 9, 2021:** I had a seizure, broke 2 fingers and bone on my right hand, had a severe black eye and concussion. I was told I was in solitary talking to someone thru my door when apparently I could barely talk anymore and asked for help, and then fell over and half consciously put my hand out to catch myself and broke the bones in my hand.

**6.A.31) August 20, 2021:** CDCR primary care physician submitted a **"Request for Service Order" to see a neurologist, but was denied "At the Second Level"** on August, 24th, 2021. **( EXHIBIT C.15- 1pg)** – It should be noted that EXHIBIT C.15 details a lot of medical events in 2021, but also contradicts itself at times. *This is in error of state employees own record and if closely read and detailed, would show a systematic problem within the correctional systems in the State of California as a whole.*

**6.A.32) September 19, 2021: Plaintiff wrote a grievance detailing the issues with the medications, asking to see the neurologist, get the diet recommended by the dietician but denied by kitchen staff, but was returned by mail without any response. ( EXHIBIT C.14-1pg )**

**6.A.33) September 28, 2021:** Plaintiff was taken to an outside hospital after being found unconscious in a solitary cell having a seizure. The seizure alone in a concrete cell caused serious head trauma requiring **10 staples in his head.** ( EXHIBIT C.15- 1pg )

6.A.34) **November 4th, 2021:** Plaintiff wrote a grievance asking to please see a specialist and help me with my epilepsy. ( EXHIBIT C.16- 1pg)

**6.A.30) November , 12th, 2021:** CDCR finally authorized proper medication (Gabapentin, 300mg-3x daily). **Following this, Plaintiff suffered no further seizures while in CDCR custody.**

**6.A.31) January 2023: The First Appellate District reversed Plaintiff's Mendocino County conviction and ordered them to resentence.**

**6.A.32) April 25, 2023:** Plaintiff was released from CDCR custody, having served approximately 19months longer than he would have, had he been initially sentenced according to the Law.

**-Re-Incarceration and Continued Medical Neglect (2023–2024)**

**6.A.33) October 8th-10[th] 2023:** Plaintiff was re-arrested by Mendocino County Sheriffs and CDCR agents for possession of medical marijuana **in spite of a legal and valid medical cannabis prescription. Although no charges were eventually filed, this plaintiff was placed on a 17day parole hold and again placed in solitary confinement by authority of "Sgt Eldon Johnston" despite no behavioral issues, or given any disciplinary infractions.**

**6.A.34) October 22, 2023** (Approx. 9:00–10:00 AM): Plaintiff began suffering a grand mal seizure in solitary and called for help. At some period during the seizure Plaintiff remembers a female voice advising him to "Stay lying on the floor", Upon regaining more consciousness,

C.                                                                                                           10

Plaintiff observed 5–7 staff—including nursing staff and **Sgt. Eldon Johnston**—standing outside his closed cell door providing no assistance, just watching. I asked Sgt. Johnston to please let me see a doctor and he said, **"See, I told you he was ok,"** and they left me. On October 25, 2023, I asked Sgt. Eldon Johnston **"How you can treat someone like this?"**, his answer was **" Cause I don't care"** and walked away.

**6.A.35) October 22, 2023:** **Sgt. William Hardiman** came to my cell hours later that evening and kindly inquired if I was ok. He told me that he had read the report and reviewed the video. He told me that he was very upset with staff and medical personnel doing nothing but mock my condition. **Sgt. William Hardman asked if I wanted a grievance and I said yes, he brought me a grievance to which I filled out and he filed that grievance for me. ( EXHIBIT C.17-1pg. )** Sgt William Hardman stated he *"swore an oath"* and that *"he won't lie for anyone"*, and that I *"could call him as a witness if needed"* as he told me he *"was upset with the way I was being treated."*

## Medical Escalation and Brain Surgeries (2023–2024)

**6.A.36)** After suffering with odd noises and intense headaches from May thru November 2023: **UCSF Neurology** diagnosed Plaintiff with **Arteriovenous Malformation (AVM)**—a condition likely caused by repeated head trauma. ( EXHIBIT- C.18-2pgs. )

**6.A.37) February 23, 2024:** Plaintiff underwent his first AVM brain surgery at UCSF. **Dr Kazim Narsinh, MD** ( EXHIBIT- C.18-4pgs. )

**6.A.38) June 27-June 30th, 2024:** Plaintiff had a second brain surgery. Doctors concluded it was necessary due to probable repeated head trauma. ***Complications included a minor brain hemorrhage.*** Specific medical instructions were given. Various medications were prescribed on top of all the medications given by **Dr Kazim Narsinh, MD** ( EXHIBIT- C.18-4pgs. )

## July 1–4, 2024 – Returned to Mendocino County Custody and Continued Neglect.
**6.A.39) July 1, 2024:** Following post-surgery temperature drop and seizure, Plaintiff possibly called 9-11, not sure how, but somehow the Ukiah Police & Mendocino Sheriff's came to this plaintiffs residence and instead of performing a wellness check this Plaintiff recalls being dragged across the asphalt in the jail's sally port by the defendants, before apparently being transferred to Adventist ER by ambulance due to witnessed grand mal seizures. While at Adventist the hospital performed an MRI.

**6.A.40) July 1, 2024:** After release from Adventist hospital, I was returned to the county jail. Apparently in such bad condition that this plaintiff was apparently not even able to sign a request for assistance while in county jail form. After being returned to jail, this plaintiff was denied any and all medication as prescribed and sent with this Plaintiff by **Duncan Johnston, MD** on 7/1/2024 at 15:18 PDT. (EXHIBIT C.19- 12pgs.) This medication was withheld for the total of 3 days, the total time that this Plaintiff was held in the jail unlawfully July 1st, 2024 thru July 3rd at approximately 6pm.

C.

**6.A.41) July 1–3, 2024:** Plaintiff repeatedly begged for medical help, including presribed anti-seizure medication and a pain reliever like Tylenol. Requests were ignored by staff nursing and Sgt. Johnston on multiple occasions.

**6.A.42) July 2–3, 2024:** After 'complaining' by asking for my medication and for medical grievance forms, this Plaintiff was moved on July 2nd to another cell commonly referred to as **"The Chamber,"** by these defendants. "The Chamber is a cell that has a generator located on the back wall of the cell that loudly vibrates on and off every 10 minutes or so as a punishment to inmates the defendants feel "**are non-compliant** ".

These conditions created sensory and sleep deprivation. Plaintiff barely slept until the evening of July 3th when he posted $1,500 cash to be released on a case that was later dismissed with no cause.

**6.A.43) July 3, 2024:** Plaintiff was brought before the court on a charge of "refusing arrest," despite not having been arrested, detained, or alleged to have committed any offense. This incident arose during what was represented as a welfare check—initiated with full knowledge that Plaintiff was a recent brain surgery patient. As a result of the fabricated "refusing arrest" allegation, Plaintiff was offered a coercive plea: accept 30 additional days in custody followed by an extended parole period, even though Plaintiff's controlling date was set for July 16, 2024. (See **Exhibit C.20**, 3 pages.)

Upon declining this offer, Plaintiff was compelled to post a $1,500 cash bond to secure release. (See **Exhibit C.20**.) Nevertheless, Plaintiff's parole was still extended pending a court hearing for a case that was ultimately dismissed. This dismissal occurred only after Plaintiff formally requested the body camera footage of the incident. Despite the case being dismissed, the $1,500 bond was never refunded, and the underlying constitutional violations remain unaddressed.

Further compounding the injury, Plaintiff received a bill from **Medstar Ambulance of Mendocino County, Inc.** totaling **$2,532.48.** (See **Exhibit C.21**, 1 page.) The ambulance provider had billed **$2,675.00 plus additional expenses**, amounting to **$2,928.00**, of which **$395.52** was paid—presumably by the County or through Plaintiff's medical coverage.

Notably, the hospital to which Plaintiff was transported has treated him on five prior emergency room visits unrelated to incarceration, and never received a claim like this that.

**6.A.44) (EXHIBIT C.22, 2 pages)** – Adventist Hospital Ukiah's own Epilepsy Education Sheet outlines standard medical practices for understanding epilepsy and administering appropriate care during and after a seizure. As supported by written records, medical documentation, and video recordings included in the exhibits, Defendants willfully disregarded these established protocols. Their conduct constitutes a violation of Plaintiff's civil rights and supports claims under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and California state law. Given the documented evidence, a reasonable Judge—or Jury—would likely find in favor of the Plaintiff should Defendants be held accountable at trial.

C.

## 6.B) Property Loss Claim:

**Unlawful seizure and permanent deprivation of personal property without due process, in direct violation of the Fourth and Fourteenth Amendments to the United States Constitution.**

**6.B.1)** On **March 30, 2020,** during Plaintiff's arrest, members of the Mendocino County Sheriff's Department unlawfully seized and/or destroyed personal property belonging to Plaintiff, with an estimated total value of **$75,000**. This property was never returned, despite lawful requests and documented verification they were aware the property was lawfully owned by the Plaintiff's from the beginning, Plaintiff has never been given his due process or property back. ( SEE EXHIBIT  C.23,  2 pgs. )

**6.B.2) The property unlawfully seized by the defendants included, but was not limited to, the following items:**

-A collection of rare coins, including:

-A 1905 Liberty Head Gold Ten Dollar Coin;

-Several 1906 British silver coins commemorating the coronation of King George V;

-A complete 1976 Bicentennial Silver Dollar Collection. Many of these coins were family heirlooms passed down from Plaintiff's grandfather, Fred Hart.

-Digitally stored intellectual property and creative works on a 2019 Apple MacBook Pro. These files are of significant personal and professional value to the Plaintiff and are irreplaceable.

-A curated collection of gemstones and crystals, including:

-Several large quartz crystals personally mined by Plaintiff in Arkansas between 2009–2010;

-Two raw emeralds—birthstones gifted by Plaintiff's grandmother, Jacklyn Hart—weighing approximately 330 to 420 grams each;

-One raw ruby weighing approximately 200 grams, gifted to Plaintiff in or around 2005 by a friend returning from Thailand.

-Between 6 to 9 pounds of medically prescribed cannabis, lawfully possessed by the Plaintiff at the time of the incident.

-Personal clothing and apparel, including:

  o A Carhartt jacket, multiple pairs of jeans, work boots, shoes, jackets, underwear, socks, shorts, thermal undergarments, sweatpants, sweatshirts, and a zip-up Carhartt hoodie.

=Musical instruments of personal and cultural significance:

C.

- o   One Australian-made Didgeridoo;
- o   One African-made Djembe drum.

-Outdoor and sporting equipment, including:

- o   One Browning compound crossbow;
- o   Two Shimano and one Abu Garcia fishing rods and reels, with accompanying tackle and lures.

-4 original hand-painted canvas artworks (15" x 18"), depicting sacred geometric forms, painted by the late artist and personal friend of Plaintiff from Ohio, Charles Gilchrist.

**6.B.3)** Despite multiple formal and lawful demands made by Plaintiff between April 2020 and August 2024 for the return or an accounting of the seized property, the Mendocino County Sheriff's Department has failed to: (1) provide an inventory; (2) initiate a property hearing as required under due process; or (3) offer any form of restitution. This failure persists even after the Department admitted to having "destroyed" the valuable property—without following any proper procedure or adhering to applicable state law.

**EXHIBIT C.24- 3pgs.**- from Defendant Sergio Ochoa-Pedroza 6-2-2020 court recorded testimony, after admitting that he knew the property was the Plaintiffs because of the Birth Certificates, SS Cards, Bank Information and Personals in the back pack, Defendants went thru, He admits He unlawfully left the property to not be processed and *'I don't exactly know what happened to it.'*

**EXHIBIT C.25, 3 pgs** -Attorney Jan Cole-Witness statements and trials questions.

**EXHIBIT C.26, 2pgs.**- Personal business and land that I had paid for 5 years was documented by the Defendants own records.

**EXHIBIT C.27, 5pgs.**- Proof of service and copies of petition for Writ of Replevin sent June of 2021.

**EXHIBIT C.28, 1pg.**- Letter dated October 13, 2021, from Attorney Deborah L. Hawkins detailing requests to recover the property and her commitment to call Attorney Jan Cole-Wilson, again detailing this Plaintiffs efforts to recover the property lawfully.

**6.B.4)** As a result, Plaintiff was denied both **constitutional due process** and **statutory rights** regarding the seizure and disposition of lawfully owned property.

## 6.C) – False Charges, Prolonged Solitary Confinement, and Malicious Misconduct

**6.C.1)** Upon arrival at Mendocino County Jail at approximately 3:00 AM on March 31, 2020, Plaintiff was immediately placed in solitary confinement, where he remained throughout the entire duration of the period covered by this complaint.

C.

Initially, Plaintiff was held for approximately 112 consecutive days, without any formal disciplinary justification of guilt or due process, until July 20th- 2020 when he received a finding of "Insolence" and 1 week of commissary denial **(EXHIBIT C.29, 3pgs.)**

This first phase of solitary confinement effectively continued until October 2021—approximately 19 months—due to erroneous documentation submitted by Defendants and/or other employees under the authority of the Defendant County to the California Department of Corrections and Rehabilitation (CDCR). This prolonged confinement occurred despite the jail staff's full awareness of Plaintiff's documented medical vulnerabilities. Furthermore, Plaintiff was again subjected to solitary confinement under the pretext of two parole holds—one involving charges that were never filed, and the other for an alleged "resisting arrest" incident which was ultimately dismissed for lack of probable cause.

**6.C.2) 3-30-2020 thru 4-19-2020, the first 20 days of confinement, Plaintiff was denied all access to phone calls.**

**6.C.3) On April 3, 2020, Plaintiff was arraigned in Mendocino. He was also incorrectly charged as having prior sexual assault convictions, which caused his bail to be set at $500,000 and was 'offered' long term sentences with the 'threat' of facing 25years to life in prison. (EXHIBIT C.30, 8 pgs) This misidentification persisted 136 days of solitary confinement until it was corrected in open court on August 13, 2020, but at that time the high bond that attributed to the erroneous filing remained, in spite of requests for a new bond hearing, this persisted for another 6 weeks.**

**6.C.4) On June 25, 2020,** at approximately 6:45 PM, fellow inmate **Richard Flores** threw urine into Plaintiff's cell. Flores stated repeatedly to other inmates that Correctional Sgt. Eldon Johnston, **C/O ALEX L. BRENNAN;** and C/O **Aaron J. Shaw** had told him I was a sex offender so he thru the urine into my cell. Despite my protests or inability to defend myself and the fact inmate Flores threw urine in my cell, **I was denied the opportunity to clean up for hours after.** After this incident, inmate Flores was transferred off the wing.

**6.C.8) October 11, 2020,** Flores returned to Plaintiff's housing unit and attempted to throw urine on this Plaintiff again.

Having seen that this Flores was back, I literally had to ask other inmates to bring me milk cartons of detergents, cleaning supplies, bags so I could defend myself from a urine attack. In spite of asking for help from the c/o that evening- inmate Flores was allowed to come out. I was then found guilty of my 2nd documented disciplinary violation, 20 days solitary confinement though Plaintiff already was in solitary confinement. ( EXHIBIT C.31,

On **October 23rd, 2020**- this Plaintiff was found guilty of his 3rd disciplinary violation– "disobeying a direct order" stemming from the c/o asking me about drawings on the wall that were obviously not done by this Plaintiff. After being found guilty of this baseless charge and given another 5 days disciplinary confinement. Having served that, it was recorded thru grievance Lt. Bednar -**no due process violations and disciplinary penalties are justified.**

C.                                                                                                                                              15

**6.C.9) On October 23, 2020, Judge Carly Dolan formally ordered all false charges against Plaintiff expunged.**

She explicitly prohibited the District Attorney and Sheriff from transmitting those erroneous files to CDCR. (**EXHIBIT C.32, 2 pgs**)  Despite this, the erroneous files were transferred to CDCR in defiance of that court order (EXHIBIT C.33, 7 pgs ), extensively perpetuating harm against the Plaintiff .

**6.C.10) On November 4, 2020,** Plaintiff was transferred into CDCR custody at North Kern State Prison.

**6.C.11) November 4th thru December 15, 2020,** Plaintiff was initially endorsed for placement in Minimum Security (Level 1).

**6.C.12)** On December 18, 2020, the same "Committee" that had previously classified Plaintiff as minimum custody reversed its decision and reclassified him as Med-Max custody.  (EXHIBIT C.33, 7pg) This reclassification by the CDCR classification committee occurred after it received false records from the Mendocino County Sheriff's Office — records provided in direct violation of Judge Dolan's order —EXHIBIT (C.33) will detail this plaintiffs attempts to 'follow procedural code' and have this resolved thru 'proper procedure', but was denied without a hearing or the ability to provide documentation to the contrary. This was all done on the premise of the records received by the defendant, in defiance of the Judge Dolan's court order.

**6.C.13)** On **January 28, 2021,** a **CDCR Correctional Officer Aguilar** along with a CDCR inmate  counselor, publicly commented to Plaintiff loudly in front of other inmates that I (Plaintiff) was a sex-offender (Which I am not) and that I should be aware of my danger  and then made a number of public suggestions that this Plaintiff should be sexually assaulted himself, this was done loudly while passing out dinner meals, endangering Plaintiffs life.

 It should be noted that at this same time, this Plaintiff with no prior California incarceration history suddenly found himself in the middle of the Aryan brotherhood who immediately began demanding **"Where's your Paperwork?"**  meaning they wanted to see my prison file and any prior convictions.  **On January 28th at approximate 8pm-this plaintiff called the CDCR Ombudsman detailing the event and requesting help for his safety.**

**6.C.14)** On **January 29, 2021,** at approximately 7:30 AM, Plaintiff was attacked by two inmates, though on the CDCR final report records, it changed and claims there was only single 1 on 1, but this was 2 inmates versus 1. Those same records say there was no victims but also says (Plaintiff) had 'bruises' around the eye, sustained multiple broken bone's in his right hand' (this as a result of trying to protect myself), needed 8 sutures, and had a documented concussion.

During the next 24-36 hour period there was some type of seizure activity and medical attention. It could have been a concussion but there was some type of grand mal seizure activity from the head trauma, no medication, and/or stress, (EXHIBIT C.34, 2pgs)

C.                                                                                                                16

After this incident Plaintiff was transferred to a higher security, mostly 24 hour lockdown. During this period, this plaintiff wrote multiple letters, grievances and even letters to Judge Dolan that was returned "ex-parte communication" with no help. All this stemming from the defendants transferring documents to CDCR in violation of her court orders, weather this was done unintentionally by not cleaning the files as orders, or maliciously, as long time corrections professionals knowing the results of those erroneous files, either way, this defendant is responsible for sending those erroneous files.

**6.C.15)** On **March 9, 2021,** the housing unit in which Plaintiff was confined was granted access to recreation for the first time since the January 29th incident. Having previously received only one hour of outdoor activity in that extended period, Plaintiff chose to attend yard time.

Plaintiff had no intention of affiliating with the Aryan Brotherhood or participating in their organized "Brothers Workout." Instead, Plaintiff walked the perimeter of the yard alone. At approximately 10:20 AM, during his third lap past the area where the Aryan Brotherhood group was gathered, Plaintiff was abruptly and violently attacked by three inmates.

During the assault, Plaintiff was subjected to slurs and accusations such as "sex offender," and was explicitly threatened with, "Get the fuck off our yard, next time you're going to get stabbed." As a result of this unprovoked attack, Plaintiff sustained two fractured ribs, additional head trauma, and a re-fracture of the same right hand injured in the January incident.

Despite the severity of these injuries, CDCR staff failed to provide timely or adequate medical treatment initially. Plaintiff was left in a lockdown unit for approximately two and a half days with minimal care, during which CDCR staff demonstrated deliberate indifference and complicity in the denial of medical attention.  (EXHIBIT C.35)

**6.C.16)** On **March 11, 2021,** the AM shift CDCR officer in this 'lockdown' section saw this plaintiff gasping for air and asking him for help, when he opened the door and saw the severity of the injuries, that c/o called for medical and this Plaintiff was taken by stretcher to CDCR prison emergency and then quickly transported via ambulance to Adventist Hospital in Bakersfield for emergency treatment **(EXHIBIT C.35 ).**

**6.C.17)** From **March 12 to November 12, 2021,** Plaintiff was officially placed in solitary confinement by CDCR for 180 days, under the pretext of "behavioral issues" allegedly stemming from events at Mendocino County Jail and the 2 beat downs I received after arriving to CDCR directly related to the documents sent by defendants, and or their employees. These actions were done with disregard to the court order and or the risk of the plaintiff.

**6.C.18)** **October 22, 2021:** Due to continued risk of further injury to plaintiff, this Plaintiff filed a Habeas Corpus petition with Mendocino County to enforce Judge Dolan's 2020 court order. ( EXHIBIT C. 36, 5pgs.)

C.

**6.C.19)** On **December 14, 2021,** Judge Carley Dolan was assigned this case, (EXHIBIT C.37, 3pgs) in her answer she reaffirmed her previous order and questioned if defendants had knowingly ignored it. She was given documentation that her court order had not been followed, but despite this, Defendants made no effort to correct their mistake and CDCR retained the false documentation in Plaintiff's prison file.

**6.C.20)** In **January 2023,** the First Appellate District reversed Mendocino County's prior sentencing decision.

**6.C.21)** On **April 25, 2023,** Plaintiff was released from CDCR custody.

**6.C.22)** In **October 2023,** Plaintiff was re-arrested by Mendocino County Sheriffs and CDCR agents for possessing lawfully prescribed medical marijuana. Although never formally charged, he was subjected to a two-week parole hold.

**6.C.23) During this parole hold, Plaintiff was again confined to solitary confinement—despite having committed no behavioral infractions.**

**6.C.24)** On **July 1–3, 2024,** Plaintiff was erroneously taken into custody, subsequently taken to the local hospital who witnessed grand mal seizures ( as would the Mendocino Jail Sally Port Video) and then was held in Mendocino County Jail from July 1st thru July 3rd at approximately 6pm . While held there, defendants refused this plaintiffs post seizure / post seizure medical treatment, plaintiff was placed in a cell referred to as "The Chamber," where an industrial generator vibrates loudly outside the cell wall every 10 minutes or so, this was done with evil intent, retaliation from June County Counsel settlement demand, while under the color of law.

The constant noise and vibration created sensory deprivation and sleep deprivation conditions. Plaintiff was unable to sleep during this period, amounting to psychological and sensory torture.

**6.C.25) These events violated Plaintiff's 1st, 8th, and 14th Amendment rights under the U.S. Constitution**

**7.) ATTEMPT TO RESOLVE THROUGH REASONABLE DEMAND FOR SETTLEMENT**

In an effort to seek resolution prior to initiating formal legal action, Plaintiff Joseph P. Hart on 2 separate occasions sent certified mail (EXHIBIT C.38 ) and hand delivered written settlement demands to the Office of the County Counsel for the County of Mendocino in June AND July of 2024. Each letter came with a county claim form and was addressed, titled and began as follows:

 **Office of the County Counsel County of Mendocino**
501 Low Gap Road, Room 1030
Ukiah, CA 95482

C.                                                                                                              18

'Re: Formal Settlement Offer Request for Injustices and Mistreatment'....

In each letter, Plaintiff outlined in clear and reasonable terms the basis for his request, demanding a total of $500,000 settlement to address the egregious and unconstitutional conduct suffered during prolonged and unjust treatment while in custody, and a $25,000 settlement for the property unlawful seized and/or destroyed by the Defendant. Plaintiff specifically cited the severe and repeated violations of his rights arising from the County's deliberate indifference to his known seizure disorder and the willful neglect of urgent medical care by the defendants on multiple occasions that resulted in long term pain and suffering.

**The letter identified specific constitutional violations under the 1st, 5th, 8th, and 14th Amendments, as well as violations of the Americans with Disabilities Act (ADA).** The demand was not made in haste or hostility, but rather as a good faith attempt to address the harm suffered and to resolve the matter without the need for further litigation. This Plaintiff even offered 40% of the $500,000 settlement to be used for Epilepsy training of Mendocino County Jail staff by the Epilepsy Foundation of Norther California. Despite this opportunity to resolve the matter amicably and justly, the Defendants and Mendocino County Counsel have failed to respond adequately or engage in any type of meaningful dialogue for resolution despite reasonable opportunity, thereby necessitating the filing of this complaint to ensure accountability in a court of law by Defendants for their actions, and to seek legal redress for the injuries sustained by the actions of the Defendants over a prolonged period.

## 8.) LEGAL CLAIMS FOR RELIEF

### 8.A) Claim (1) One:  Violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132

-Plaintiff is a federally qualified individual with a disability-specifically a diagnosed seizure disorder (**epilepsy**)-whose condition was well-documented and known to the federal government, personal medical doctors, local Hospital physicians, Mendocino County Jail staff & the medical contractors during this time.

- Defendants, acting under color of law and in their official capacities failed to make reasonable accommodations for Plaintiff's medical condition, as required by the ADA. This failure was not merely negligent but willful, deliberate, and discriminatory at least in nature, at best it equates to torture and human rights violations under **18 U.S.C. § 242 – *Deprivation of Rights Under Color of Law*  18 U.S.C. § 241 – *Conspiracy Against Rights*  18 U.S.C. § 1111 or § 1112 – *Attempted Murder*** -which applies if law enforcement actions were intended to or knowingly endanger a person's life with intent to commit death, as is this case when defendants, under color of law willfully refused life preserving medication in hopes of harm or death to this plaintiff.

Defendants on multiple occasions found this defendant on a concrete floor bleeding from the head, not once or twice but a consistent pattern in which they refused medicine and medical assistance that caused severe pain, suffering and could have potential caused death on numerous occasions.

C.                                                                                                      19

**The ADA mandates** that public entities—**including county correctional facilities**—must ensure that disabled individuals are not excluded from services, programs, or activities due to their disability. In this case, Defendants' actions resulted solitary confinement, deprivation of medical services and humane treatment, causing physical suffering, emotional distress, and long-term harm as detailed in this complaint.

## 8.B) Claim (2) Two: Deliberate Indifference to Serious Medical Needs, 42 U.S.C. § 1983

Defendants demonstrated deliberate indifference to Plaintiff's serious medical condition, in violation of the Eighth and Fourteenth Amendments and actionable under 42 U.S.C. § 1983.

'Despite Plaintiff's known diagnosis of epilepsy and frequent documented seizures while in custody, Defendants repeatedly ignored medical emergencies, failed to respond to physician directives, refused to provide life-sustaining care and even punished this defendant in-humanely for simply requesting needed medical assistance.'

This indifference was not incidental or situational—it was a pattern of willful neglect carried out by the defendants and their personal despite repeated medical warnings and visible suffering.

Correctional officers and medical staff alike failed to intervene or summon the appropriate medical help during multiple episodes of unconsciousness and seizures, this was documented on numerous occasions and even brought up in court on a number of occasions.

Such conduct constitutes a clear breach of the constitutional requirement that jail and prison officials provide adequate medical care to incarcerated individuals. **Their conduct was not merely unprofessional—it was unconstitutional.**

## 8.C) Claim (3) Three: Cruel and Unusual Punishment, Eighth Amendment, 42 U.S.C. § 1983

**Plaintiff was subjected to conditions and treatment that amounted to cruel and unusual punishment, in violation of the Eighth Amendment.**

This includes but is not limited to:

- **Extended solitary confinement without any disciplinary justification.**
- **Verbal abuse, threats, food restrictions and psychological torment** by staff while Plaintiff was visibly injured and unwell.
- **Denial of medical care** for active seizures and post-operative recovery, leaving Plaintiff in pain, distress, and injuries from medical complications each time.

**Defendants acting maliciously, with deliberate indifference and evil intent,** knowing, or should have known, the harm their inaction and mistreatment would cause to the Plaintiff. The cumulative effect of these actions—when viewed in context of Plaintiff's vulnerable condition— **meets the legal threshold for cruel and unusual punishment.**

## 8.D) Claim (4) Four:  Due Process Violations, Fourteenth Amendment, 42 U.S.C. § 1983

Defendants violated Plaintiff's constitutional right to due process under the Fourteenth Amendment through a series of unlawful actions:

- **False criminal charges** were filed against Plaintiff without evidence or procedural justification, resulting in unlawful pretrial detention and excessive bail.
- **Prolonged solitary confinement** was imposed without any formal disciplinary findings, hearings, or behavioral cause resulting in approximately 500 total days of solitary confinement, much of which was without cause and/or was directly related to direct actions or by neglect of the defendants.
- **Reclassification and housing decisions** were made arbitrarily, subjecting Plaintiff to high-risk, punitive conditions without explanation or opportunity to be heard.
- **Property confiscation** occurred without a warrant, notice, or post-deprivation hearing when requested.
- **After being ordered for re-sentencing by the State Appeal court, Plaintiff was resentenced, but had served approximately 19 additional months by the time of re-sentence and correction of defendants legal error's.**

**These actions denied Plaintiff both substantive and procedural due process, resulting in unjust confinement, loss of liberty, and personal property violations under color of law.**

## 8.E) Claim (5) Five:  Retaliation for Protected Speech, First Amendment, 42 U.S.C. § 1983

Defendants retaliated against Plaintiff for engaging in protected speech in violation of the First Amendment.  **Specifically, Plaintiff:**

- Plaintiff submitted grievances related to medical neglect and unsafe conditions.
- Verbally addressed a judge in court regarding the severity of his head injuries and fear for his life due to mistreatment.
- Expressed his legal right and reported misconduct.
- Has requested clerks, courts, corrections and the county since 3-30-2020 to preserve all video and paper records of Plaintiffs complaints so they may be of public record.

**As a result, Plaintiff was subjected to punitive conditions, including:**

- Additional restrictions and prolonged unjust and unnecessary disciplinary solitary confinement.
- Denial of basic accommodations and personal hygiene items at times such as tooth paste/tooth brush, pain relievers for actions caused defendants.
- Refusal to provide utensils to eat with dignity for 39 consecutive days (April 7 – May 13, 2020) this was done as a form of retaliatory punishment by **c/o Alex Brennan** who was claiming that I was on the ground ignoring him and did not hand him back a dinner tray, although I have no recollection of this event ( because I was unconscious having an epileptic seizure, and had significant injuries)

C.                                                                                                          21

- This plaintiff only found out about this when staff came into my cell, searched it and then declared that I would not be allowed to eat with utensils for 30 days as discipline for refusing to hand over a dinner tray.

**These retaliatory actions had a chilling effect on Plaintiff's willingness and ability to try and report these ongoing abuses for fear of further retribution, specifically fear of Mendocino Sheriff's Department creating further legal troubles while under their authority; and fear of defendants even trying to murder this Plaintiff in the secluded mountain region of Mendocino County where Plaintiff resided when under the legal authority of defendants, as has been suspected multiple times by this Sheriff's department, including some of the named Defendants.**

## 8.F) Claim (6) Six: Unlawful Seizure and Destruction of Property (Fourth & Fourteenth Amendments), 42 U.S.C. § 1983

Defendants, acting under color of law and without legal authority, **seized and/or destroyed Plaintiff's personal and business property**—which included:

- **Proprietary business documents.**
- **Electronic devices containing confidential and professional data.**
- **Rare Coin, Crystal & Gem Collection .**
- **Life Saving medications**
- **Musical Instruments**
- **Cannabis-related supplies.**

**The estimated value of the seized property exceeds $75,000.**

**The seizure of the property was conducted:**

- Without a valid search warrant.
- Without notice or opportunity to contest the action.
- Without any post-deprivation hearing or legal recourse provided.

These acts constitute clear violations of Plaintiff's rights under the **4th & 14th Amendment.** Defendants willfully acted maliciously, or at minimum with deliberate indifference to the constitutional rights of the Plaintiff.

## 8.G) Claim (7) Seven–Monell Liability (Municipal Liability)

**Defendants' misconduct was not isolated or accidental—it was part of a broader institutional failure attributable to Mendocino County Government, specifically Defendant, Sheriff Matthew Kendall.** The County's official policies, customs, and lack of oversight created an environment where:

- **ADA violations, medical neglect, and civil rights infringements were tolerated or encouraged on an ongoing basis.** Staff were either **inadequately trained or intentionally misdirected** in their duties toward disabled and at-risk detainees.

C.

- **Systemic practices led to ongoing harm,** equating to ongoing and long lasting physical, mental and emotional torture, specifically this Plaintiff.

As such, **Mendocino County** is subject to liability under the doctrine of ***Monell v. Department of Social Services*, 436 U.S. 658 (1978).**

 **8.H) Claim (8) Eight–Violations of California State Law: Negligence, Medical Malpractice, and Property Deprivation. Defendants are liable for acts of:**

- <u>**Negligence,**</u> by failing to safeguard Plaintiff's health and well-being, despite being aware of a serious medical condition.
- <u>**Medical malpractice**</u>, by disregarding medical directives, denying prescribed medications, and failing to follow standard protocols of care.
- <u>**Wrongful destruction or seizure of property,**</u> including valuable personal and business assets valued in excess of **$75,000**.

This conduct not only breached professional and legal duties of care, but also violated Plaintiff's rights under both Federal and the State of California's constitutional and statutory protections.

## 9.) PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and grant the following relief:

**9.A) Award compensatory damages in excess of $3,000,000, to be paid by the defendant as follows:**

**9.A.1) A certified check or money order to be placed in an envelope and sent via USPS Certified Mail in the amount of $1,500,000, payable to:**

**"SONOMA ASHRAM FOUNDATION"-**
**Attn: Baba Hari Har Ramji- Epilepsy Initiative**
1087 Craig Avenue
Sonoma, California 95476
**Phone: (707) 996-8915   info@sonomaashram.org**

**9.A.2) A certified check or money order in the amount of $750,000 payable to:**

**"Joseph P. Hart"**

**To be placed in an envelope and sent via USPS Certified Mail.**

C.                                                                                                          23

**Attn: Joseph P. Hart**
c/o Hon. James P. Gray
ADR Services, Inc.
19000 MacArthur Boulevard, Suite 550
Irvine, California 92612.

**9.A.3) A certified check or money order in the amount of $375,000 to be placed in an envelope and sent via USPS Certified Mail., payable to:**

**"UCSF FOUNDATION"**
Box 45339
San Francisco, California 94145
Attn: Erica Hipp – **(415) 476-0506 | erica.hipp@ucsf.edu**

**9.A.4) A certified check or money order to be placed in an envelope and sent via USPS Certified Mail in the amount of $375,000 payable to:**

**"JOSH PROVIDES EPILEPSY ASSISTANCE FOUNDATION, INC."**
5428 Sundew Drive
Sarasota, Florida 34238
www.joshprovides.org  **Phone # 1-800- 706- 2740**

**9.B) Award additional punitive damages, in the form of a certified check or money order, against defendants in their personal capacities for willful, malicious, and reckless misconduct, payable to: Joseph P. Hart**

**To be enclosed in an envelope and sent via USPS Certified Mail to:**
**Attn: Joseph P. Hart**
c/o Hon. James P. Gray
ADR Services, Inc.
19000 MacArthur Boulevard, Suite 550
Irvine, California 92612

**9.C) Award full restitution for personal property unlawfully seized or destroyed, valued at no less than $75,000 in the form of a certified check or money order in the amount of $75,000 payable to: Joseph P. Hart**

**To be placed in an envelope and sent via USPS Certified Mail addressed:**

**Attn: Joseph P. Hart**
c/o Hon. James P. Gray
ADR Services, Inc.
19000 MacArthur Boulevard, Suite 550
Irvine, California 92612

C.

**9.D) Award reasonable attorney's fees and litigation costs** pursuant to **42 U.S.C. § 1988**, should Plaintiff retain counsel, or incur reasonable costs related to this case.

**9.E) Issue declaratory and injunctive relief that would require Federal Oversight of Mendocino County Jail and require its Sheriff's Department to implement strict ADA-compliant training and department policy reforms pertaining to epileptic patients.**

**9.F) Order the preservation and production of all surveillance footage, incident reports, and relevant records pertaining to Plaintiff's confinement from March 30, 2020 through July 3, 2024 for discovery purposes, as has been requested by the Defendant on numerous occasions.**

**9.G) Forward to the United States Department of Justice for consideration of federal prosecution of Defendants as warranted by law for actions committed against the Plaintiff.**

 **9.H) Grant such further relief as this Court deems just, equitable, and appropriate under the circumstances.**

## 10.)   PLAINTIFF DEMANDS IF SETTLEMENT NOT REACHED

**-Plaintiff demands trial on all claims triable by jury or court of law if demands are not met, or if reasonable effort is not made to settle by the defense within a 90day notice of these actions.**

## 11.)  That a duplicate copy of court stamped mail may be enclosed in an envelope and sent via USPS Certified Mail to:

> **A) Attn: JOSEPH P. HART**
> c/o Hon. James P. Gray
> ADR Services, Inc.
> 19000 MacArthur Boulevard, Suite 550
> Irvine, California, 92612
>
> **B) Attn: Joseph P. Hart**
> P.O. Box 1093
> Covelo, CA 95428-1093

## 12) CONCLUSION

The actions of the Defendants, both individually and collectively, represent serious violations of constitutional and statutory protections. These acts were not merely administrative oversights or isolated incidents—they were systemic, deliberate, and carried out with malicious intent and a reckless disregard for Plaintiff's health, dignity, and federally protected rights.  Such conduct must not go unaddressed. Justice requires that those responsible be held accountable under the law.

C.                                                                                                                      25

Plaintiff, fears even further retribution by defendants, but enthusiastically looks forward to this court reviewing this complaint and reading the exhibits, and the discoveries.

 Plaintiff respectfully requests this Honorable Court to provide the relief sought in this Complaint thru summary judgement, partial judgement, and/or date for trial to ensure that the misconduct outlined herein is not repeated against any other individual.


Respectfully Submitted,
Joseph P. Hart

_____DATE 5 /22 / 2025

Mailing Address:

**Attn: Joseph P. Hart**
**c/o  Hon. James P. Gray.**
**ADR Services, Inc.**
**19000 MacArthur Boulevard, Suite 550**
**Irvine, California 92612**
**josephhart1188@gmail.com**
**(707) 671-8945**

C.                                                                                                                26

MOTION FOR SUMMARY JUDGMENT

Plaintiff, Joseph P. Hart, respectfully moves this Court for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the grounds that there exists no genuine issue as to any material fact and Plaintiff is entitled to judgment as a matter of law on all causes of action set forth in the complaint.

This motion is based upon:

1. The accompanying Statement of Undisputed Material Facts;
2. Supporting declarations, medical records, jail documents, court transcripts, and official reports;
3. The legal memorandum outlining clearly established constitutional and statutory rights that were violated by the Defendants;
4. The failure of Defendants to provide constitutionally adequate medical care, safeguard Plaintiff's property, or ensure humane and lawful conditions of confinement;
5. The absence of any legitimate penological or governmental justification for the prolonged isolation, physical endangerment, or false representations presented to the court;
6. The objective confirmation of Plaintiff's disability and medical condition by external medical professionals and corroborating evidence.

**WHEREFORE,** Plaintiff respectfully requests this Court grant summary judgment in favor of Plaintiff and issue:

- A declaratory judgment that the Defendants violated Plaintiff's rights under federal and state law;
- An award of compensatory and punitive damages as detailed in the complaint;
- Injunctive relief ordering the County of Mendocino to adopt policies that prevent future violations;
- Attorneys' fees, costs, and pre- and post-judgment interest;
- And such other relief as the Court deems just and proper.

Dated: _MAY 22_, 2025

Respectfully submitted,

Joseph P. Hart _____
Plaintiff Pro Se

C.

04-01-20 10:05 FROM- MCSO Records        7074676009              T-562  P0023/0059 F-750

# U.S. BIA OJS- CAHTO RANCHERIA POLICE DEPARTMENT
## SUPPLEMENTARY REPORT

*[handwritten: JASON UNLUATA]*

**CASE NUMBER: 20-021**
**OFFENSE and DESCRIPTION:** 245 PC Assault w/ deadly weapon
**LOCATION:** Hwy 101 off Ramp in Willits
**VICTIM/SUSPECT:** Jairen SYLVESTER /Joseph Phillip Hart
**DATE:** 03/30/2020
**REPORTING OFFICER:** K. Unluata        **REVIEWER**

1  I told HART to relax that we were trying to figure out what is going on. I told him I was going
2  to place him in the back of my patrol vehicle. HART said it was fine. *[handwritten: ← Did I have a choice?]*
3
4  I placed HART in the back of my patrol vehicle and told him that I was going to talk with the
5  CHP Officer and the MCSO Deputy very quick and be right back. HART stated that it was
6  fine. HART then asked for some water, which I gave him some.
7
8  I made contact with MCSO Deputy KERMARKI, who stated that it was going to be CHP's
9  case. I then made contact with CHP Officer GONZALEZ and told him that HART was in the
10 back of my patrol vehicle.
11
12 CHP Officer GONZALEZ, after talking with Deputy KERMARKI, went over to my patrol
13 vehicle and talked with HART.
14
15 During this time, I saw CHP Officer JESSUP arrive also on scene along with 2 other
16 deputies and 2 Officers from the Willits Police Department.
17
18 While CHP Officer GONZALEZ was talking with HART, I assisted in setting up the crime
19 scene then went back over to my patrol vehicle.
20
21 As CHP Officer GONZALEZ walked away, I heard HART stated that everything in the
22 Toyota truck where the fight had taken place belong to him. HART then stated that the knife
23 used during the fight was in the bed of the truck above the wheel well.  *[handwritten: ← From Day 1 - they knew that stuff was mine]*
24
25 I walked over to the truck where HART had stated that the knife was and found it on the
26 well, inside the truck bed, covered with parts of a black trash bad.
27
28 Seeing this, I called CHP Officer GONZALEZ and told him of the find. Officer GONZALEZ
29 took custody of the knife.
30
31 I then went back to my patrol vehicle. As soon as I approached I saw that HART was having
32 difficulty of breathing, was sweating. I took HART out of my patrol and sat him on the
33 ground.
34

*[handwritten: WAS HAVING A SEIZURE bassing as he hit ASIT started]*

3

*[handwritten: Exhibit C.1 - pg]*

This transcript was exported on Aug 17, 2020 - view latest version here.

All right, bye.

Speaker 1:
Call 25, client ID is...

Dispatch:
[inaudible 00:31:49] 95 L stay with this one please. 1622 boy Humboldt, 415 at Fort Humboldt.

Speaker 22:
1622 boy, go ahead.

Dispatch:
1622 boy, 415 at Fort Humboldt. It's a male, female 415. A male named Skeeter that's chasing a female. He's described as a white male, 35 to 40. 5'11, 200. A light colored t-shirt and jeans. And the female's described as a white female in her 20s, red curly hair, white jacket, and green and white and black backpack.

Speaker 22:
1622 boy, copy that. show me en route from [inaudible 00:32:32] 101.

Dispatch:
22 boy from [inaudible 00:32:33] 101. 10551 Humboldt to confirm 1141.

Speaker 13:
[inaudible 00:32:36] en route the back from [inaudible 00:32:41]. Some type of epileptic episode. Requesting 1141.

Dispatch:
10-4. Male or female?

Speaker 13:
Male subject.

Dispatch:
10-4, 1141, for a male having an epileptic episode. 1631 boy, I copy you're en route to assist from [inaudible 00:33:03].

Speaker 28:
10517 10-10 R. Have a good night.

Dispatch:
10517 10-10 R. Goodnight.

HCC-20-164 HART, JOSEPH PHILLIP SCUK-CRCR-20-347... (Completed  08/15/20)    Page 30 of
Transcript by Rev.com                                                               42.180.



Exhibit
C-1  pg. 2

This transcript was exported on Aug 17, 2020 - view latest version here.

Speaker 21:
1644 CJ.

Dispatch:
1644 and CJ.

Speaker 1:
Call 26, client ID is...

Speaker 9:
Howard medical.

Dispatch:
Hi, this is CHP. I need a medical at the stabbing that has occurred by the Willits exit. So there's a male that's having an epileptic episode.

Speaker 9:
Okay. Same place?

Dispatch:
Yes, correct.

Speaker 9:
Okay. Okay, we'll send them back out. Thank you.

Dispatch:
Thank you.

Speaker 9:
You're welcome, bye.

Speaker 1:
Call 27, client ID is...

Dispatch:
Highway patrol.

Speaker 12:
Hey it's 59.

Dispatch:
Hello.

*Exhibit C-1*

*ps. 3*

This transcript was exported on Aug 17, 2020 - view latest version here.

Speaker 24:
As best they can.

Dispatch:
To have them separated.

Speaker 24:
Cool, thank you.

Dispatch:
Okay thank you. Bye.

Speaker 24:
All right, bye.

Speaker 1:
Call 31, client ID is...

Speaker 9:
Howard Medical.

Dispatch:
Hi, this is Rosenau with the CHP.

Speaker 9:
Yes.

Dispatch:
So my sergeant's requesting to let you guys know that... so we're getting the epileptic request that I got called for.

Speaker 9:
Mm-hmm (affirmative).

Dispatch:
And so both the victim and the suspect are on scene, and so he's requesting both parties to be separated as much as possible.

Speaker 9:
Okay, they both need attention?

Dispatch:
Yes.

HCC-20-164 HART, JOSEPH PHILLIP SCUK-CRCR-20-347... (Completed 08/15/20)    Page 36 of
Transcript by Rev.com                                                        42-186..



Exhibit C - 1

pg.4

This transcript was exported on Aug 17, 2020 - view latest version here.

Speaker 9:

Okay, do you think both will need to be transported? I mean, do we need to send a second medic unit?

Dispatch:

Let me... most likely because he wants them separated as much as possible. Hold on one second actually.

Speaker 9:

Please, thank you.

Speaker 1:

Call 32, client ID is...

Dispatch:

Hello?

Speaker 9:

Yes.

Dispatch:

Sorry about that, so yeah I believe the victim has already been transported. But my sergeant's requesting when they get to the hospital, if they could be separated there as much as possible.

Speaker 9:

Oh, okay. Okay, so is this for the suspect now?

Dispatch:

Yes. So the suspect is the one that's having the epileptic... sorry. The one that's having the episode.

Speaker 9:

That's okay. All right, thank you.

Dispatch:

Thank you. Bye.

Speaker 9:

You bet. Bye.

Speaker 1:

Call 33, client ID is...

Dispatch:

Highway patrol.

HCC-20-164 HART, JOSEPH PHILLIP SCUK-CRCR-20-347... (Completed  08/15/20)     Page 37 of
Transcript by Rev.com

*(handwritten)* TONE CHANGED

*(handwritten)* Exhibit C-1     Pg 5.

*(handwritten notes, top margin):*

WAS ON 4/14/2020 INT UNCONTRABLE MANIA
eurygin'je SLIPt Notown Adjust to stop
a serual Since 4-3-20.

♯ Nou say Dr — 4/27/20 still—
4/20/20 — last time saw Nurse
→ Med — Nou — came
with Dr.

# Exhibit C. 4

---

**MENDOCINO COUNTY SHERIFF'S OFFICE**
CORRECTIONS DIVISION

## REQUEST FOR MEDICAL / MENTAL HEALTH SERVICES
*SOLICITUD DE SERVICIOS MEDICOS / DE SALUD MENTAL*

DATE: 4/14/20    LOCATION: WWS4-cell 51
FECHA               LOCALIDAD

NAME: HART    Joseph    P
NOMBRE  LAST / APELLIDO    FIRST / PRIMERO    MIDDLE / SEGUNDO

"A" NUMBER: 39961    DATE OF BIRTH: 5-5-77
NUMERO DE ARCHIVO              FECHA DE NACIMIENTO

```
OFFICE USE ONLY

_____
Medical Staff's SIGNATURE

_____          I.D.#
Account Specialist's SIGNATURE (making withdrawal)

DATE: _____

DATE: _____
```

I UNDERSTAND THAT BY MAKING THIS REQUEST, I AUTHORIZE THE WITHDRAWAL OF $3.00 FROM MY ACCOUNT FOR THE COST OF MEDICAL/MENTAL HEALTH SERVICES PROVIDED FOR BY THE CO-PAYMENT SYSTEM.

*ENTIENDO QUE HACIENDO ESTA PETICIÓN, AUTORIZO EL RETIRO DE $3.00 DE MI CUENTA PARA EL COSTE DE SERVICIOS MÉDICOS DE MEDICAL/MENTAL PROPORCIONADOS POR EL SISTEMA DEL CO-PAGO.*

SERVICES WILL BE PROVIDED REGARDLESS OF ABILITY TO PAY.
NOTE THAT BALANCE DUE WILL BE CARRIED ON THE BOOKS INDEFINITELY.

*LOS SERVICIOS SERAN PROVEIDO SIN IMPORTER COPACIDAD ALA PAGA.*
*OBSERVE QUE EL BALANCE DEBIDO SERÁ CONTINUADO LOS LIBROS INDEFINIDAMENTE.*

COMPLAINT / *Queja:* I have to stop. I need
Clozepines the last two days I stared to
see a doctor who can set me to a
Physicist for serous problems. The
law has violated medical doctrine for
weeks why? Victor no medication 1/4/2013

NAME: HART    Joseph    P
NOMBRE  LAST / APELLIDO    FIRST / PRIMERO    MIDDLE / SEGUNDO

DATE: 4-14-20
INMATE'S SIGNATURE / FIRMA DEL PRISIONERO

Form 405                                    04/26/07

1              SUPERIOR COURT OF CALIFORNIA

2                COUNTY OF MENDOCINO

3              HON. CARLY DOLAN, JUDGE

4

5                      . . .

6

7    THE PEOPLE OF THE          )
     STATE OF CALIFORNIA,       )
8                               )
                                )
9              PLAINTIFF,)
                                )
10                              )
     VS.                        )   CASE NO. SCUKCRCR 2020-34746
11                              )
                                )
12   JOSEPH PHILLIP HART,       )
                                )
13             DEFENDANT.)
                                )
14   _____)

15

16              REPORTER'S   TRANSCRIPT

17                      OF

18           PREPRELIMINARY HEARING

19                    . . .

20           FRIDAY, APRIL 17, 2020

21         REPORTED IN UKIAH, CALIFORNIA
            MENDOCINO COUNTY COURTHOUSE
22                    . . .

23

24              A P P E A R A N C E S

25   For the People:            For the Defendant:

26   David Eyster              Jeffrey Aaron
     District Attorney         Public Defender
27   100 North State Street    175 South School Street
     Ukiah, CA  95482          Ukiah, CA  95482
28   BY:  SCOTT MCMENOMEY, ESQ.  BY:  JAN COLE-WILSON, ESQ.
     Deputy District Attorney   Assistant Public Defender

ExhibiT C.5 - Pg1

1   information.  I want to do the investigation, I do not

2   believe we will be prepared adequately by the 12th.

3            And so I know you are anxious to have this go,

4   but it's very serious charges.  And I think that we need

5   to continue this.  I won't be prepared by the 12th.  I

6   want to discuss this further with you, which I will.  But

7   I am going to be requesting additional time to be fully

8   prepared for the preliminary hearing.

9            THE DEFENDANT:  Well, the only thing I would like

10  to bring up and I -- if that's what you --

11           MS. COLE-WILSON:  We are not -- we are not going

12  to talk about the merits of your case or any of the

13  evidence.  So that is going to be what I think that we

14  need to do.

15           MS. HOAGLAND:  If I can have just a moment,

16  please.  He would like to put something on the record

17  that's not relevant, but he has concerns.

18           MS. COLE-WILSON:  That's fine.  Is it about his

19  medical condition?

20           MS. HOAGLAND:  It is.

21           MS. COLE-WILSON:  Okay.

22           MS. HOAGLAND:  And --

23           THE DEFENDANT:  Your Honor --

24           THE COURT:  Yes.

25           THE DEFENDANT:  First off, I have two things that

26  I am concerned.  Ms. Cole-Wilson knows that the -- the

27  facts of the case here.  The second is that I have been

28  said that I have a second charge, which is false.

Exhibit
C 5 -B2

PEOPLE vs JOSEPH PHILLIP HART
Case No. SCUK-CRCR-20-34746                    Vol 2 of 23                                    26

4-17-2020

1          MS. HOAGLAND:  Okay.  That --

2          MS. COLE-WILSON:  No.  Right now --

3          THE DEFENDANT:  Your Honor --

4          THE COURT:  Yes.

5          THE DEFENDANT:  I have been up here, I have been

6    denied medical.  Your Honor, they have me up in here, the

7    officer have put me in a little room with sewage.  Little

8    hole with sewage, when I have asked for help.  I have had

9    no disciplinary points.  They have me treated here like a

10   max 3, partly because of the false second act they is on

11   my back.  I have had Sgt. Johnson tell other inmates that

12   I am here for sexual offenses, when I am not.

13          Your Honor, I would ask you to have the state

14   police come and see me.  I would ask that you pull the

15   videos of this incidents.  I have written -- I have

16   written grievances on this and the next thing I know I am

17   in a little hole with sewage coming out of the ground,

18   being held in there.  If you pull the video you will see

19   that I was having seizures in this room.  4-15-20

20          Don't let her turn it off, let me talk with her.

21   The judge needs to hear this.  Why would you want to

22   turn --

23          MS. HOAGLAND:  I have not turned it off.

24          THE DEFENDANT:  Your Honor --

25          MS. COLE-WILSON:  Mr. --

26          THE COURT:  Thank you, Mr. Hart.  I hear what you

27   are saying.  You are represented by experienced counsel.

28   And if your rights are being violated, she does have

Exhibit
C.5, -B3

PEOPLE vs JOSEPH PHILLIP HART
Case No. SCUK-CRCR-20-34746          Vol 2 of 23                              27

```
1   remedies, but there needs to be some type of motion filed
2   with the Court before the Court address your concerns.
3            MS. COLE-WILSON:  Okay.  What we are going to do
4   to is I am going to request a continuance of the
5   preliminary hearing.  We will discuss the other concerns
6   of your of confinement, okay?  I am going to try and do
7   something about that.
8            THE DEFENDANT:  For what?
9            MS. COLE-WILSON:  We will try to address the
10  confinement, okay?
11           THE DEFENDANT:  What about this super high bond,
12  because of the extra X.  I have this super high bond
13  and --
14           MS. COLE-WILSON:  I understand.  We will talk
15  about that.  We can't do that right now.
16           THE COURT:  Ms. Cole-Wilson, time was not waived.
17  And I misspoke earlier, it is not ten plus 30 court days.
18  It's 30 court days.  I think we are set on the 27th day at
19  this time.
20           Is Mr. Hart prepared to waive time at this point?
21           MS. COLE-WILSON:  Mr. Hart, are you willing to
22  give up your -- are you -- are you willing to waive time
23  so that I can have more time to prepare for your
24  preliminary hearing?
25           THE DEFENDANT:  I really don't want to, you know.
26  I really don't want to.  I -- I it's -- if you look at the
27  reports there's so many direct contradictions.
28           MS. HOAGLAND:  Okay, Mr. Hart.
```

Exhibit
C.5-P.4

Superior Court of the State of California
County of Mendocino                          January 11, 2021 11:20AM

PEOPLE vs JOSEPH PHILLIP HART
Case No. SCUK-CRCR-20-34746              Vol 2 of 23                              28

1        MR. MCMENOMEY:  If I can interject at this time,
2   he does have a right to a preliminary hearing within 30
3   days; however, given the serious nature of the strike
4   allegations, the voluminous nature of discovery, the
5   additional investigation that defense counsel has
6   indicated to the Court that needs to be conducted, despite
7   the defendant's desire to have his preliminary hearing in
8   30 days the Court can find good cause to continue over his
9   objection.
10       THE COURT:  Thank you, Mr. McMenomey, I recognize
11  that.  My only concern is the preliminary hearing
12  isn't for three weeks, so I don't know that I can find
13  good cause.
14       MS. COLE-WILSON:  That's fine.
15       MR. MCMENOMEY:  Okay.  Go ahead and confirm it.
16       MS. COLE-WILSON:  All right.  We will go ahead
17  and confirm.
18       THE COURT:  I can bring the matter back for
19  prepreliminary hearing, and if there's a representation
20  prior to the preliminary hearing that -- what needs to be
21  done to adequately represent Mr. Hart hasn't been done,
22  even -- despite due diligence, the Court would find good
23  cause.
24       My only concern is we are -- I find it is a
25  little premature.
26       MS. COLE-WILSON:  All right.  Thank you.
27       MR. MCMENOMEY:  That's fine.  I would ask for
28  another prepreliminary hearing next Wednesday.

Exhibit
C.5-B5

Superior Court of the State of California
County of Mendocino                      January 11, 2021 11:20AM



PEOPLE vs JOSEPH PHILLIP HART
Case No. SCUK-CRCR-20-34746          Vol 4 of 23                    58

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2             COUNTY OF MENDOCINO, UKIAH BRANCH

3  PEOPLE OF THE STATE OF                )
   CALIFORNIA,                           )
4                                        )
                        PLAINTIFF,       )
5                                        )
       VS                                )
6                                        )
                                         )
7  JOSEPH HART,                          )
                                         )
8                     DEFENDANT,         ) CASE NO.
                                         )
9  _____) SCUK CRCR 20-34746

10

11          RESCHEDULE PRELIMINARY HEARING

12   HELD AT THE MENDOCINO COUNTY COURTHOUSE, UKIAH,
        CALIFORNIA, ON MAY 12, 2020, BEFORE
13      HONORABLE CARLY DOLAN, JUDGE, REPORTED BY
              ELAINE E. SHORE, CSR 9853

14

15  APPEARANCES OF COUNSEL

16

17    FOR THE PLAINTIFF:          ELIZABETH NORMAN
                                  DEPUTY DISTRICT ATTORNEY
18                                100 NO STATE STREET
                                  UKIAH, CA  95482

19

20    FOR THE DEFENDANT:          JAN COLE-WILSON
                                  ASST PUBLIC DEFENDER
21                                MENDOCINO COUNTY
                                  175 SO SCHOOL STREET
22                                UKIAH, CA  95482

23                   --00--

24

25         ELAINE E. SHORE, C.S.R. 9853
              OFFICIAL COURT REPORTER
26             100 NO STATE STREET
                UKIAH, CA  95482
27               (707)961-6209

28

Exhibit C.6, pg1

MAY 388

1      THE COURT:  PEOPLE VERSUS JOSEPH HART --
2  JOSEPH PHILLIP HART.  34746.
3      MR. HART IS APPEARING VIA VIDEO FROM THE
4  JAIL DUE TO THE COVID-19 PANDEMIC.
5      MS. NORMAN:  ELIZABETH NORMAN FOR THE
6  PEOPLE.
7      THE COURT:  THE MATTER COMES ON -- WE HAVE
8  A PRELIMINARY HEARING SCHEDULED TODAY AT 1:30.  WHAT'S
9  THE STATUS?
10      MS. COLE-WILSON:  JAN COLE-WILSON.  WE WERE
11  GOING TO GO FORWARD TODAY AT 1:30.  I DID GET A CALL
12  FROM MR. HART THIS MORNING -- I RECEIVED A PHONE CALL
13  FROM MY CLIENT.  HE INDICATED THAT HE HAD PREVIOUSLY
14  WAIVED HIS RIGHT TO BE PRESENT IN COURT AND WE WERE
15  GOING TO GO FORWARD WITH THE PRELIMINARY HEARING.
16      I RECEIVED A CALL FROM HIM INDICATING THAT
17  HE DID NOT WANT TO WAIVE HIS RIGHT TO BE PRESENT.  AND
18  AT THAT POINT I LET THE DISTRICT ATTORNEY KNOW THAT HE
19  DID NOT WANT TO WAIVE HIS RIGHT TO BE PRESENT AND WE
20  HAD NOT GIVEN THAT KIND OF NOTICE SO THAT HE COULD BE
21  TRANSPORTED.
22      I HAD SPOKEN WITH MR. HART BEFORE AND
23  INDICATED TO HIM THAT THERE WAS STILL DISCOVERY
24  OUTSTANDING THAT I NEEDED TO GET IN ORDER TO PROCEED
25  WITH HIS PRELIMINARY HEARING SO THAT ALL OF HIS ISSUES
26  THAT NEED TO BE PRESENTED AT HIS PRELIMINARY HEARING
27  COULD BE PRESENTED IN AN APPROPRIATE MANNER.
28      HE ALSO INDICATED TO ME THAT HE HAD A

Exhibit C.6 p52

1  SEVERE HEADACHE FROM A SEIZURE THAT HE HAD THIS

2  MORNING AND THAT HE WASN'T RECEIVING PROPER MEDICAL

3  CARE.

4           SO I INDICATED TO THE DISTRICT ATTORNEY

5  THAT WE WOULD NOT BE READY TO PROCEED THIS AFTERNOON,

6  AND MR. MCMENOMEY DID NOT OBJECT TO CONTINUING HIS

7  PRELIMINARY HEARING FROM THIS AFTERNOON.

8           SO WE WOULD BE ASKING TO RESET THE

9  PRELIMINARY HEARING AND RESCHEDULE IT FOR JUNE 2ND.

10          MS. NORMAN:  MR. MCMENOMEY BRIEFED ME ON

11 THE MATTER AND THAT IS THE DATE HE SAID IT WAS

12 SELECTED FOR PRELIM.  JUNE 2ND.  I DON'T THINK WE NEED

13 A FURTHER PRE-PRELIM.

14          MS. COLE-WILSON:  NOT AT THIS POINT.  I'M

15 INVESTIGATING ISSUES AND MAKING FURTHER REQUESTS FOR

16 DISCOVERY ON BEHALF OF MR. HART.

17          THE COURT:  AND, MS. COLE-WILSON, IT'S YOUR

18 PROFESSIONAL OPINION THAT YOU NEED THE -- UNTIL JUNE

19 2ND TO PREPARE AND ADEQUATELY REPRESENT MR. HART?

20          MS. COLE-WILSON:  YES.

21          MR. RENNERT:  YOUR HONOR, MR. HART IS

22 INQUIRING ABOUT HIS BOND.

23          THE DEFENDANT:  I HAVE A BOND HEARING.  WE

24 HAD A COUPLE OF HEARINGS AND NOTHING HAPPENED.  I

25 MEAN, YOU KNOW, I FILE LIKE JUSTICE DELAYED IS JUSTICE

26 DENIED.  YOU GUYS COULD BRING ME OVER TODAY.  I WOULD

27 PREFER THAT.  I DON'T FEEL THAT HAVING THE -- MS.

28 COLE-WILSON SAID SHE DON'T FEEL THAT IT WOULD BE FAIR

Exhibit C.6, p3

PEOPLE vs JOSEPH PHILLIP HART
Case No. SCUK-CRCR-20-34746                Vol 4 of 23                                61

```
 1   TO HAVE THE HEARING LIKE THIS.  I DON'T FEEL LIKE THAT
 2   TOO.
 3           BUT AT THE SAME TIME, YOUR HONOR, I'M
 4   SITTING IN A CELL, I'VE HAD NO TYPE OF DISCIPLINARY
 5   HEARING.  I'VE HAD A COUPLE OF MAJOR SEIZURES AND THEY
 6   DIDN'T EVEN SO MUCH AS LOOK AT MY EYE OR GIVE ME AN
 7   ICE PACK OVER HERE.
 8           AND I'M SITTING HERE.  I'VE TOLD YOU GUYS
 9   IF YOU LOOK AT THE CASE I SAID IT WAS SELF-DEFENSE.
10   WHAT AM I SUPPOSED TO DO IF SOMEONE ATTACKS ME?
11           THE COURT:  MR. HART, EVERYTHING YOU SAY IS
12   BEING RECORDED.
13           MS. COLE-WILSON:  THANK YOU, YOUR HONOR.
14   I'M DOING AS MUCH AS I CAN TO INVESTIGATE THE CASE.
15           THE DEFENDANT:  I'M SITTING IN THE HALL
16   WITH A HALF-MILLION DOLLAR BOND.  I WAS TOLD I WOULD
17   HAVE A BOND HEARING ON THE 17TH OR 12TH OF APRIL AND
18   WE -- THAT DIDN'T HAPPEN, AND I'M SITTING IN HERE,
19   YOUR HONOR.
20           AND IF I DIE IN THE CELL IT'S BECAUSE OF
21   THE MENDOCINO COUNTY SHERIFF'S WHO ROBBED ME WHEN I
22   WAS ARRESTED.  AND I'VE DOCUMENTED THAT TOO.  THEY
23   JUST ROBBED ME.
24           AND NOW I'M SITTING IN THIS CELL AND THEY
25   DON'T CARE.  LOOK AT MY EYE.  I HAVE EPILEPSY AND THEY
26   COME WHENEVER THEY WANT TO COME BY.  I ASKED FOR
27   MEDICAL.  I HAVEN'T SO MUCH AS SAW A DOCTOR SINCE I'VE
28   BEEN UP IN HERE.
```

Exhibit C.6, Pg.4

Superior Court of the State of California
County of Mendocino                    January 11, 2021 11:20AM

PEOPLE vs JOSEPH PHILLIP HART
Case No. SCUK-CRCR-20-34746                Vol 4 of 23                        62

1    AND I'M IN THE CELL.  YOUR HONOR, THEY PUT

2    ME IN THIS LITTLE HOLDING CELL WITH SEWAGE.  WHEN

3    I WAS HAVING A SEIZURE ASKING FOR HELP AND THEY PUT ME

4    IN THERE WITH SEWAGE BECAUSE I WAS HAVING SEIZURES.

5    I THINK THE SHERIFF SHOULD BE IN JAIL IS

6    WHAT HE SHOULD BE, YOU KNOW.  I GOT THE NAMES AND THE

7    PEOPLE.  IF YOU WERE TO LOOK AT THE ACTUAL VIDEOTAPE

8    YOU'LL SEE WHAT I'M SAYING IS TRUE.

9    MR. RENNERT:  DON'T TALK ABOUT THE FACTS.

10    THE COURT:  MR. HART, I HEAR WHAT YOU'RE

11    SAYING AND I UNDERSTAND YOUR FRUSTRATION.  AND WE

12    REALLY ARE IN UNPRECEDENTED TIMES.  THIS HAS NEVER

13    HAPPENED BEFORE WHERE HEARINGS HAVE BEEN DELAYED.

14    HOWEVER, WE HAVE TO FOLLOW THE ORDERS OF

15    THE CHIEF JUSTICE.  THERE IS A CURRENT HEALTH CRISIS,

16    AND BASED ON YOUR ATTORNEY'S REPRESENTATIONS THE COURT

17    WILL FIND GOOD CAUSE TO VACATE TODAY'S PRELIMINARY

18    HEARING BASED ON TWO REASONS.

19    ONE, OUTSTANDING DISCOVERY AND

20    INVESTIGATION.  THIS IS A CASE WITH POTENTIALLY AN

21    EIGHT-YEAR EXPOSURE OR MORE.

22    MS. COLE-WILSON:  IT'S A STRIKE.

23    THE COURT:  YOUR ATTORNEY, WHO IS VERY

24    EXPERIENCED, HAS REPRESENTED THAT SHE NEEDS THIS

25    ADDITIONAL TIME TO EFFECTIVELY DEFEND YOU AND

26    REPRESENT YOU AT THE PRELIMINARY HEARING.

27    ADDITIONALLY, THE COURT DID NOT ARRANGE FOR

28    YOUR TRANSPORT TODAY.  WE ARE ONLY TRANSPORTING


Exhibit C.6, pg. 5

1  INMATES WITH THE EXPRESS AUTHORITY OF THE PRESIDING

2  JUDGE WHICH NEEDS TO BE OBTAINED IN ADVANCE WHICH WAS

3  NOT DONE IN THIS CASE.

4          THE MATTER IS RESET FOR PRELIMINARY HEARING

5  JUNE 2ND AT 1:30.  THERE'S NO FURTHER PRE-PRELIMINARY

6  HEARING.  BAIL REMAINS AS SET.  IT CAN BE REVISITED

7  ONCE THE COURT HEARS THE EVIDENCE INVOLVED.

8          THE DEFENDANT:  YOUR HONOR, THEY'RE SAYING

9  TWO "X'S".  ONE OF THEM IS MADE UP.  IT'S NOT TRUE.

10  YOU HAVE ME SITTING FOR TWO "X'S" AND IT'S NOT THE

11  CASE.  I HAVE SUCH A HIGH BOND, AND IT'S NOT TRUE.

12  YOU GUYS HAVE ME AT TWO "X'S".  IT'S NOT THE CASE.

13          I'VE NEVER BEEN ARRESTED IN CALIFORNIA.  I

14  WAS ARRESTED AT 17 YEARS OLD 25 YEARS AGO.  YOU HAD ME

15  AS A SECOND "X" WHICH IS NOT TRUE.  AND THAT'S ONE OF

16  THE REASONS THE BOND IS SO HIGH.

17          I'M SITTING HERE LIKE THIS AND IT'S TOTALLY

18  UNFAIR.

19          THE COURT:  MR. HART IS NOT WAIVING HIS

20  PERSONAL APPEARANCE.  THE COURT WILL GET AUTHORIZATION

21  FROM THE PRESIDING JUDGE TO HAVE HIM TRANSPORTED JUNE

22  2ND.

23          (PROCEEDINGS CONCLUDED.)

24

25

26

27

28

Exhibit C.6, pg.6

*Exhibit*
*C. 7, PS 1*

| Received Date | Receive Time | Staff Signature |
|---|---|---|
| 6-18 | 2130 | AT |
| Face to Face Date | Face to Face Time | Staff Signature |
| | | |
| Completed Date | Completed Time | Staff Signature |

# MENDOCINO COUNTY SHERIFF'S OFFICE
## CORRECTIONS DIVISION

## REQUEST FOR MEDICAL/MENTAL HEALTH SERVICES
### *SOLICITUD DE SERVICIOS MEDICOS Y/O SALUD MENTAL*

DATE: 6-17-20          LOCATION: Wing 4, Cell 140
*FECHA*                *LOCALIDAD*

NAME: HART   Joseph   Phillip
*NOMBRE*   LAST / *APELLIDO*   FIRST / *PRIMERO*   MIDDLE / *SEGUNDO*

"A" NUMBER: 39961          DATE OF BIRTH: 5/5/77
*NUMERO DE ARCHIVO*          *FECHA DE NACIMIENTO*

```
........................................
: DATE: _____   OFFICE USE ONLY          :
:                    _____ :
:                    Medical Staff's SIGNATURE   :
:                                                 :
: DATE: _____                                :
:                    _____ :
:                    I.D.# _____             :
:                    Account Specialist's SIGNATURE (making withdrawal) :
........................................
```

I UNDERSTAND THAT BY MAKING THIS REQUEST, I AUTHORIZE THE WITHDRAWAL OF $3.00 FROM MY ACCOUNT FOR THE COST OF MEDICAL/MENTAL HEALTH SERVICES PROVIDED FOR BY THE CO-PAYMENT SYSTEM.

*ENTIENDO QUE HACIENDO ESTA PETICIÓN, AUTORIZO EL RETIRO DE $3.00 DE MI EXPLICO EL COSTE DE SERVICIOS MÉDICOS DE MEDICAL/MENTAL PROPORCIONADOS PARA POR EL SISTEMA DEL CO-PAGO.*

---

SERVICES WILL BE PROVIDED REGARDLESS OF ABILITY TO PAY.
NOTE THAT BALANCE DUE WILL BE CARRIED ON THE BOOKS INDEFINITELY.

*LOS SERVICIOS SERAN PROVEIDO SIN IMPORTER COPACIDAD ALA PAGA.*
*OBSERVE QUE EL BALANCE DEBIDO SERA CONTINUADO LOS LIBROS INDEFINIDAMENTE.*

COMPLAINT / *Queja*: Could I receive a "Taurine"
supplement for my Epileptic seizures?
Taurine has been found to be effective
at reducing seizures & has zero
side effects like most seizure medications.
side effects can be worse then seizures. Thank you

NAME: HART   Joseph   Phillip
*NOMBRE*   LAST / *APELLIDO*   FIRST / *PRIMERO*   MIDDLE / *SEGUNDO*

DATE: 6-17-20          Joseph Hart
                       INMATE'S SIGNATURE / *FIRMA DEL PRISIONERO*

Form 405                              04/26/07

Joseph -

No. This is not a medically approved treatment, Also ALL things, including "Natural" things have side effects.

— medical

# MENDOCINO COUNTY SHERIFF'S OFFICE
## Corrections Division
951 Low Gap Road    Ukiah CA 95482-3797

### INMATE GRIEVANCE FORM

*Exhibit*
*C. 8 ps1*

If, while in the custody of the Mendocino County Sheriff's Office - Corrections Division, you have a complaint regarding custody treatment, medical treatment, Mendocino County Jail policies and procedures, or other custody related matters you may complete this form and give it to the on-duty Corrections Deputy. This form SHALL be submitted within five (5) days after occurrence of any specific incident and/or complaint.

Every attempt will be made to resolve your grievance at the lowest possible level, however, it may be necessary to bring your grievance to higher levels for resolution.

Grievances may be filed on all matters EXCEPT decisions issued by a court.

STATE YOUR GRIEVANCE:    Master ID #: 39961

Name: Joseph Hart    Housing Assignment: B - Cell - 1

Location of Occurrence: B - Cell - 1    Date: 7-17-20    Time: 4:30p.

GRIEVANCE: On Friday 7-17-20, I had a seizure in my cell. When I awoke, I was on the floor with a dinner tray in my cell. When I awoke too, my nose was bleeding & my head was bruised and I was alone. I know the c/o e nurse had noticed cause they came to the cell an hour later asking if I'm ok e offering aspirin. I don't know how long or what help I recieved, but do you just drop a dinner-tray e leave someone with a head injury? I have had 5 major seizures since being here and have not seen a Doctor 1 single time. The nurse's have attempted at times to bring me medication I am allergic too e refused me a vitamin that would help "Taurine". Leaving me alone when I am incoherent is dangerous e what seems to be careless. Taurine and a Keto-genic diet would work!

Signature of Inmate: Joseph Hart    Date: 7-20-20    Time: 11:50 pm

Received by: Sousa    I.D.# 2834    Date: 7/21/2020    Time: 0026

Form 305    - OVER -    Rev. 03/2015



PS.2

## REPLY TO INMATE GRIEVANCE

**Level I - Corrections Sergeant**          Date: 7.21.20          Time: 1900

Resolution: _____

~~During meal service, staff noticed you were bleeding from the bridge of your nose and you were unresponsive~~ when they called you name.  Staff called medical to respond to your location.  When medical arrived, they took your blood pressure, cleaned the cut and bandaged it.  Staff continued to check on you approximately every 30 min after the incident until their shift was over.

Medical:  You reported an allergy to Keppra, but you are prescribed phenytoin (Dilantin).  Taurine is not a medically proven treatment for seizure disorders, and will not be administered.  After each reported episode the medical staff evaluated you appropriately, and followed up as ordered buy medical providers.

Corrections Sergeant: S10 Sea ku     I.D.#2629 Date: 7.23.20     Time: 0057

**Level II - Corrections Lieutenant**          Date: _____ Time: _____

Resolution: _____

_____

_____

_____

_____

_____

_____

Corrections Lieutenant: _____ I.D.# _____ Date: _____ Time: _____

**Level III - Corrections Division Commander**          Date: _____ Time: _____

Resolution: _____

_____

_____

_____

_____

_____

_____

Corrections Division Commander: _____ I.D.# _____ Date: _____ Time: _____

*Nurse Stopp'd P-d-d*  *SAW Blood...r* *Dr-New saw* *New came back*

## MENDOCINO COUNTY SHERIFF'S OFFICE
### CORRECTIONS DIVISION

## REQUEST FOR MEDICAL/MENTAL HEALTH SERVICES
*SOLICITUD DE SERVICIOS MEDICOS Y/O SALUD MENTAL*

DATE: 7-31-20                  LOCATION: Bwing - Cell-1
FECHA                          LOCALIDAD

NAME: HART      Joseph        Phillip
NOMBRE  LAST / APELLIDO    FIRST / PRIMERO    MIDDLE / SEGUNDO

"A" NUMBER: 39961    DATE OF BIRTH: 5-5-77
NUMERO DE ARCHIVO    FECHA DE NACIMIENTO

> **OFFICE USE ONLY**
>
> DATE: _____
> _____
> Medical Staff's SIGNATURE
>
> DATE: _____
> _____     I.D.# _____
> Account Specialist's SIGNATURE (making withdrawal)

I UNDERSTAND THAT BY MAKING THIS REQUEST, I AUTHORIZE THE WITHDRAWAL OF $3.00 FROM MY ACCOUNT FOR THE COST OF MEDICAL/MENTAL HEALTH SERVICES PROVIDED FOR BY THE CO-PAYMENT SYSTEM.

*ENTIENDO QUE HACIENDO ESTA PETICIÓN, AUTORIZO EL RETIRO DE $3.00 DE MI EXPLICO EL COSTE DE SERVICIOS MÉDICOS DE MEDICAL/MENTAL PROPORCIONADOS PARA POR EL SISTEMA DEL CO-PAGO.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
SERVICES WILL BE PROVIDED REGARDLESS OF ABILITY TO PAY.
NOTE THAT BALANCE DUE WILL BE CARRIED ON THE BOOKS INDEFINITELY.

*LOS SERVICIAS SERAN PROVEIDO SIN IMPORTER COPACIDAD ALA PAGA.*
*OBSERVE QUE EL BALANCE DEBIDO SERA CONTINUADO LOS LIBROS INDEFINIDAMENTE.*

COMPLAINT / *Queja*: I have had excessive Bleeding of my gums and have been even sp.H of evacting blood daily for the last 3 week's I have been having this every morning I wake and continually throughout the day. I brush & rinse 3x daily, still have.

NAME: HART      Joseph        Phillip
NOMBRE  LAST / APELLIDO    FIRST / PRIMERO    MIDDLE / SEGUNDO

DATE: 7-31-20          Joseph P Hart
                       INMATE'S SIGNATURE / FIRMA DEL PRISIONERO

Form 405                                          04/26/07

Exhibit C.10, P51.

Exhibit
C.11, PS1

# MENDOCINO COUNTY SHERIFF'S OFFICE
## CORRECTIONS DIVISION

### REQUEST FOR MEDICAL/MENTAL HEALTH SERVICES
#### SOLICITUD DE SERVICIOS MEDICOS Y/O SALUD MENTAL

LOCATION: / LOCALIDAD: Wing 4- cell-144

DATE: / FECHA: 10-3-20

NAME: / NOMBRE: LAST / APELLIDO: HART    FIRST / PRIMERO: Joseph    MIDDLE / SEGUNDO: P

"A" NUMBER: / NUMERO DE ARCHIVO: _____

DATE OF BIRTH: / FECHA DE NACIMIENTO: _____

> **OFFICE USE ONLY**
>
> DATE: _____    Medical Staff's SIGNATURE _____
>
> DATE: _____    Account Specialist's SIGNATURE (making withdrawal) _____    I.D.# _____

I UNDERSTAND THAT BY MAKING THIS REQUEST, I AUTHORIZE THE WITHDRAWAL OF $3.00 FROM MY ACCOUNT FOR THE COST OF MEDICAL/MENTAL HEALTH SERVICES PROVIDED FOR BY THE CO-PAYMENT SYSTEM.

ENTIENDO QUE HACIENDO ESTA PETICIÓN, AUTORIZO EL RETIRO DE $3.00 DE MI EXPLICO EL COSTE DE SERVICIOS MÉDICOS DE MEDICAL/MENTAL PROPORCIONADOS PARA POR EL SISTEMA DEL CO-PAGO.

SERVICES WILL BE PROVIDED REGARDLESS OF ABILITY TO PAY.
NOTE THAT BALANCE DUE WILL BE CARRIED ON THE BOOKS INDEFINITELY.

LOS SERVICIOS SERAN PROVEIDO SIN IMPORTER COPACIDAD ALA PAGA.
OBSERVE QUE EL BALANCE DEBIDO SERA CONTINUADO LOS LIBROS INDEFINIDAMENTE.

COMPLAINT / Queja: I'd like to have a copy of the paper/medical file relating to my May, June & July incidents when I had a seizure. I basically need medical proof of my recent episodes. Thank you P

NAME: / NOMBRE: LAST / APELLIDO: HART    FIRST / PRIMERO: Joseph    MIDDLE / SEGUNDO: P

DATE: 10-3-20    INMATE'S SIGNATURE / FIRMA DEL PRISIONERO: Joseph Hart

Form 405    04/26/07

Your attorney can request these or you can upon your release.

Exhibit #C.12

1/29/21

#2
Grieut

Attachment B

NAME    HART, JOSEPH P.          CDCR#  BM4359          CDC 128-C

On this date, I have reviewed the Electronic Health Record for Inmate __J. HART__, CDCR# __BM4359__.
Inmate __J. HART__, was involved in an incident dated ___1/29/21___, Incident Report
#_____, with Inmate __M. HENSON__, CDCR# __BM3588__. During this incident,
Inmate __J. HART__ received the following injuries:

☐ Loss of Consciousness
☒ Concussion ← was actually seizure in medical .
☒ Bone Fracture (Identify Specific Location) _Right 3rd metacarpal._
☒ A wound requiring suturing (Identify Specific Location) _Right hand - 8 stitches._
☐ Loss or impairment of function of any bodily member or organ; including teeth
   (Identify Specific Location) _____
☐ None of the Above

This information is being provided at the request of custody staff for inclusion in the Incident Report
and Rules Violation Reports associated with it.

Ndukwe N. Odeluga, MD MPH
Chief Medical Executive, NKSP
Signature of Medical Personnel

Original:    C-File
cc:    Incident Commander
       Inmate

DATE: _1/29/2021_          MEDICAL EVALUATION          MEDICAL CHRONO

2.B

Revised 12.26.18

* re-Broke my hand during     * 9/28/21 - 10 staples
Seizure on 8/9/21 -              In the head.
All documented !!

CALIFORNIA CORRECTIONAL
HEALTH CARE SERVICES

*EXHIBIT C. 13*

DOCUMENT SUBMITTED BY INMATE

ED Triage and Initial Assess Document

**HART, JOSEPH PHILLIP - 103-545-19**

Result Type:       ED Triage and Initial Assess Document
Result Date:       May 19 2021 18:12 PDT
Result Status:     Auth (Verified)
Result Title:      ED Triage and Initial Assessment
Performed By:      Tucker,Courtney L on May 19 2021 18:12 PDT
Verified By:       Tucker,Courtney L on May 19 2021 18:12 PDT
Encounter Info:    37700919525, 85, Emergency, 05/19/2021 - 05/19/2021

ED Triage and Initial Assessment Entered On: 05/19/2021 18:14 PDT
Performed On: 05/19/2021 18:12 PDT by Tucker,Courtney L

**Reason for Visit**
*Reason for visit history :* BIBA from prison after having a seizure and fall off of his bunk and hitting his head
                                                          Tucker,Courtney L - 05/19/2021 18:12 PDT

DCP GENERIC CODE
*Tracking acuity control :* 3-Urgent
*Tracking group :* 85 ED Tracking Group

                                                          Tucker,Courtney L - 05/19/2021 18:12 PDT

*Admission info from :* Patient
*Preferred language :* English

                                                          Tucker,Courtney L - 05/19/2021 18:12 PDT
                                                          (As Of: 05/19/2021 18:14)

Problems(Active)
No Chronic Problems (Cerner       *Name of Problem:* No Chronic Problems ; *Recorder:* Michalek,
:NKP )                            RN, Heidi A; *Code:* NKP ; *Last Updated:* 09/10/2017 17:19 PDT
                                  ; *Life Cycle Date:* 09/10/2017 ; *Life Cycle Status:* Active ;
*except epilepsy!*                 *Vocabulary:* Cerner


Diagnoses(Active)
Seizure                           *Date:* 05/19/2021 ; *Diagnosis Type:* Reason For Visit ;
                                  *Confirmation:* Complaint of ; *Clinical Dx:* Seizure ; *Classification:*
                                   Medical ; *Clinical Service:* Emergency medicine ; *Code:*
                                  PNED ; *Probability:* 0 ; *Diagnosis Code:*
                                  5E5B0A2A-CED2-4B69-8CE9-A2ED3AB0C906

Triage
*Temperature (F):* 97.9 DegF(Converted to: 36.6 DegC)          Pleasant Valley State Prison
*Temp site :* Temporal
                                                              MAY 20 2021

Printed by:      Sinclair, Joy F                                              Page 1 of 3
Printed on:      05/20/2021 09:14 PDT                         Medical Records Dept



*Never responded

(C.14)

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE**
CDCR 602 HC (Rev. 10/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

| STAFF USE ONLY | Expedited? ☐ Yes ☐ No | Tracking #: |
|---|---|---|

| Staff Name and Title (Print) | Signature | Date |
|---|---|---|

If you think you have a medical, mental health or dental emergency, notify staff immediately. If additional space is needed, use Section A of the CDCR 602 HC A Health Care Grievance Attachment. Only one CDCR 602 HC A will be accepted. You must submit this health care grievance to the Health Care Grievance Office for processing. Refer to California Code of Regulations (CCR), Title 15, Chapter 2, Subchapter 2, Article 5 for further guidance with the health care grievance process.

**Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First, MI): HART, Joseph, Phillip | CDCR #: BM4359 | Unit/Cell #: A-1-148-L |
|---|---|---|

**SECTION A:** Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy:

I have been prescribed Valproic Acid for my Epilepsy - but my original Neurologist Dr. Coni Linn - Queens Medical Honolulu - Told me not to take Keppra or Valproic Acid - I was prescribed Dilantin, but when I've taken, I've felt overwhelmingly suicidal and have had memory loss. C.D.C.R. has sent me to a Neurologist who hasn't followed thru - my last 2 "virtual" meetings he had not looked over my file - said he would re-schedule and didn't. My last seizure - 8/9/21 - I broke a bone in my hand - I was told I'd get a second opinion - it hasn't happened. I was sent to a dietician - "Mason French" by Dr. Gomez to discuss a "Keto-genic" Diet - A well Known & well documented seizure Treatment developed by the State Dept. He said Kitchen staff said No. The Epilepsy Foundation would help if C.D.C.R. is willing - Arreyah

Supporting Documents Attached. Refer to CCR 3999.227 ☑ Yes ☐ No

| Grievant Signature: Joseph P. Hart | Date Submitted: 9/18/21 |
|---|---|

BY PLACING MY INITIALS IN THIS BOX, I REQUEST TO RECEIVE AN INTERVIEW AT THE INSTITUTIONAL LEVEL. JPH

| SECTION B: | HEALTH CARE GRIEVANCE REVIEW INSTITUTIONAL LEVEL: Staff Use Only | Is a CDCR 602 HC A attached? ☐ Yes ☐ No |
|---|---|---|

This grievance has been:

☐ Rejected (See attached letter for instruction): Date: _____ Date: _____

☐ Withdrawn (see section E)

☐ Accepted    Assigned To: _____ Title: _____ Date Assigned: _____ Date Due: _____

Interview Conducted? ☐ Yes ☐ No  Date of Interview: _____  Interview Location: _____

Interviewer Name and Title (print): _____ Signature: _____ Date: _____

Reviewing Authority Name and Title (print): _____ Signature: _____ Date: _____

**Disposition:** See attached letter ☐ Intervention ☐ No Intervention

HCGO Use Only: Date closed and mailed/delivered to grievant: _____

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | |
|---|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ Patient asked questions | |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ Patient summed information | **STAFF USE ONLY** |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | Please check one: | |
| ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached ☐ Reached | |
| ☐ Not Applicable | ☐ Other* | *See chrono/notes | |
| 4.Comments: _____ | | | |

★ Never responded - Just Returned.

J.HART, BM4359
PVSP HC 21000396
Page 2 of 3

*[handwritten: Exhibit-C.15]*

You were seen by PCP on May 24, 2021 for change in seizure medication. Progress note of same date indicates you stopped taking Dilantin due to the side effects it caused. PCP placed order for Valproic acid 250 mg three times daily. Request for Services (RFS) for neurology evaluation approved and pending appointment.

On June 10, 2021 you were seen by PCP via telemedicine regarding seizure history. Progress note of same date indicates you were non-compliant with current treatment plan. You stopped taking your prescribed medication until you speak with the neurologist.

You were seen by PCP via telemedicine on June 25, 2021 for follow-up to neurology appointment and request for single cell. Progress note of same date indicates neurologist recommendation patient should be prescribed AED medications. At this time you are not willing to take any medication for seizure activity. You requested single cell stating that when you are alone you are calm and do not become angry or frustrated which triggers seizures. PCP advised based on California Correctional Health Care Services Guidelines for single cell, your condition does not meet the criteria.

*[left margin handwritten: Keppra → *see Alergy Alert!!]*

*[right margin handwritten: ← FALSE single cell request WAS NOT 11/5/2__ Done 12/9/2_]*

Specialty providers may not order additional diagnostic tests, specialty services, or make referrals directly. The primary care provider is responsible to determine the necessity for all specialist recommendations; however, the primary care provider is under no obligation to provide the recommended treatment and may choose an alternate strategy. In addition, some services require prospective review prior to services being rendered.

*[handwritten arrow →]* On September 29, 2021 you were seen by PCP for follow-up to seizures. Progress note of same date indicates you had a seizure on September 28, 2021 and were transported to outside hospital for evaluation. It was recommended by treating physician to prescribe Topamax extended release 50 mg daily. As a result PCP placed order for Topamax 25 mg twice daily for one week followed by Topamax XL 100 mg daily.

On August 20, 2021, the primary care provider submitted a Request for Service order for neurology evaluation to the institution second level of review. The RFS was denied at the second level on same date. On August 24, 2021, the primary care provider informed you that the request was denied and provided you with alternate treatment strategies per the guidelines outlined in the Health Care Department Operations Manual, Section 3.1.11, Outpatient Specialty Services.

*[left margin handwritten: lie]*

*[right margin handwritten: lie WAS NOT informed w.t.! 8/24/202_]*

You were seen by PCP via telemedicine on November 22, 2021 regarding refusal of medication and seizure disorder. Progress note of same date indicates you refuse to take current prescribed medication Topamax. PCP discontinued order for Topamax, but will continue gabapentin for now. *[handwritten: ← Double Talk! ...]*

*[right margin handwritten: 11/22/202_]*

On December 1, 2021 you were seen by PCP to discuss seizure disorder. Progress note of same date indicates you stated you will continue with ketogenic diet brain vitamins and Mozart music once it arrives. You do not wish to take any medications for seizures at this time. *[handwritten: R.L.O.L. How? - I asked for & refused.]*

*[handwritten: Yet I take Gabapetin]*

An order was placed on December 25, 2021 for gabapentin 300 mg twice daily; open and float one capsule at noon and one capsule in the evening. The Systemwide Pharmacy and Therapeutics Committee (SP&TC) mandates that certain medications be administered "Crush and Float" or "Open and Float" as appropriate per the formulation. Medications which are not on the approved SP&TC "Crush/Open and Float" list referenced in the Health Care Department Operations Manual, Section 3.5.5, Prescription/Order Requirements, may be ordered as "Crush/Open and Float" for individual patients for whom the provider believes this is medically or clinically appropriate, (e.g. due to inability to swallow solid dosage forms or due to non-adherence concerns for a specific patient). *[handwritten: ← No opiate or hardcore drug / no alchohol history]*

*[left margin handwritten: Oct. 15th ↓ Read Date on adaption info]*

*[right margin handwritten: Directions say not to...]*

---

Note 1: The institutional level review is based on records available as of the date the Institutional Level Response is signed by the reviewing authority.

Note 2: The closing date reflects the closed, mailed/delivered date of the health care grievance.

Note 3: Permanent health care grievance document. Do not remove from the health care grievance package.

CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE**
CDCR 602 HC (Rev. 10/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

(*Exhibit CHCO*)

| STAFF USE ONLY | Expedited? ☐ Yes ☒ No | Tracking # PVSP HC 21000346 |
|---|---|---|

G. Lucero, RN

Signature *G. Lucero, RN*    Date 11/09/21

Staff Name and Title (Print) / Signature / Date

If you think you have a medical, mental health or dental emergency, notify staff immediately. If additional space is needed, use Section A of the CDCR 602 HC A Health Care Grievance Attachment. Only one CDCR 602 HC A will be accepted. You must submit this health care grievance to the Health Care Grievance Office for processing. Refer to California Code of Regulations (CCR), Title 15, Chapter 2, Subchapter 2, Article 5 for further guidance with the health care grievance process.

Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

Name (Last, First, MI): HART, Joseph P.    CDCR #: BM4359    Unit/Cell #: A-1-148-L

**SECTION A:** Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy:

I AM seeking help in my Treatment of epilepsy. The Medications That have been prescribed have Terrible side effects. From suicidal feelings To hallucinations, to the Nurses Not even Administering the one Med I can take - Gabapentin. The directions say don't crush, break, etc. When it is done like that (*correct*) at pill call, I got what feels like a fever! Dr. Gomez in June And August told me I'd see Another Neurologist or An epilepsy specialist. There Are Multiple Kinds of seizures And epilepsy is a complex, somewhat elusive disorder that Needs daily And varied Treatment. The head injuries I've received since Arriving at P.V.S.P. Are life Threatening. I Need To see A qualified epilepsy specialist - I Need medication that is Not worse then the seizures, And I Need To Not be ignored when I express these real side effects!

Supporting Documents Attached. Refer to CCR 3999.227 ☒ Yes ☐ No - It's well documented - Med refusals - Requests,

Grievant Signature: *Joseph P. Hart*    Date Submitted: 11/4/21

BY PLACING MY INITIALS IN THIS BOX, I REQUEST TO RECEIVE AN INTERVIEW AT THE INSTITUTIONAL LEVEL. *JPH*

| SECTION B: | HEALTH CARE GRIEVANCE REVIEW INSTITUTIONAL LEVEL: Staff Use Only | Is a CDCR 602 HC A attached? ☐ Yes ☐ No |
|---|---|---|

This grievance has been:

☐ Rejected (See attached letter for instruction): Date: _____ Date: _____

☐ Withdrawn (see section E):

☒ Accepted    Assigned To: G. Lucero    Title: HCARN    Date Assigned: 11/9/21  Date Due: 1/4/22

Interview Conducted? ☒ Yes ☐ No   Date of Interview: 01/05/22   Interview Location: Face To Face - A2

Interviewer Name and Title (print): G. Lucero, RN    Signature: *G. Lucero, RN*    Date: 01/05/22

Reviewing Authority Name and Title (print): O. ONYEJE    Signature: *O. Onyeje*    Date: 1-6-22

Disposition: See attached letter    ☐ Intervention    ☒ No Intervention

HCGO Use Only: Date closed and mailed/delivered to grievant: JAN 1 1 2022

RECEIVED PVSP NOV 09 2021    COMPLETE PVSP JAN 1 1 2022    STAFF USE ONLY

HCGO    HCGO

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: |
|---|---|---|
| ☐ TABE score ≤4.0 | ☐ Additional time | ☐ Patient asked questions |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ Patient summed information |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | Please check one: |
| ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached* ☐ Reached |
| ☐ Not Applicable | ☐ Other* | *See chrono/notes |

4. Comments: Tube 10.0

My Copy (EXHIBIT "T")

# MENDOCINO COUNTY SHERIFF'S OFFICE
## Corrections Division
951 Low Gap Road  Ukiah  CA  95482-3797

### *INMATE GRIEVANCE FORM*

If, while in the custody of the Mendocino County Sheriff's Office - Corrections Division, you have a complaint regarding custody treatment, medical treatment, Mendocino County Jail policies and procedures, or other custody related matters you may complete this form and give it to the on-duty Corrections Deputy. This form SHALL be submitted within five (5) days after occurrence of any specific incident and/or complaint.

Every attempt will be made to resolve your grievance at the lowest possible level, however, it may be necessary to bring your grievance to higher levels for resolution.

Grievances may be filed on all matters EXCEPT decisions issued by a court.

STATE YOUR GRIEVANCE:                    Master ID #: A 39961

Name: Joseph Hal T          Housing Assignment: 400 - cell 145

Location of Occurrence: B-19      Date: 10-22-     Time: Approx 10A

GRIEVANCE: On 10-22-23 in the AM. I had a seizure, As I was "Out of it" I remember the nurse asking me to lie down How Long? I do not know. I know when I woke up - on the floor I was alone - I was told that the c/o e nurse called for Sgt. Johnston, and that they came e "watched" me for 10 mins or so, Apparently Sgt. Johnston told them I was "Faking" e told them to leave me, when I was asked by the nurse 2 days later how I was feeling, I asked what happened she said "she was just doing what she was told". They left me in the cell didn't call a Dr nor even opened the cell to pad my head from the concrete floor or check my pulse I have well documented Epilepsy e leaving me on the floor is dangerous se Avoidation of the A.D.A Sgt. Has No medical Training - who is he to leave me on the floor? On 10/25 I asked him why. he said "Cause I Don't care".

Signature of Inmate: [signature]      Date: 10-22-23  Time: 10:22

Received by: Sgt. Hardman      I.D.#    Date:    Time:

Form 305                - OVER -                Rev. 03/2015

Exhibit C. 18
85.

Name: Joseph Hart | DOB: 5/5/1977 | MRN: 92020550 | PCP: Not Confirmed Provider | Legal Name: Joseph Hart

# Note From Your Admission on 06/27/24

## Discharge Summary by Benjamin Meyer at 6/29/2024  2:40 PM

### Attestation signed by Lauren Patrick at 6/29/2024  8:00 PM (Updated)

**Attending Attestation**

My date of service is 06/29/24.

I was either virtually or physically present for key portions of the encounter and am personally involved in the management of the patient. I reviewed, verified, and revised the note as necessary.

My personal examination findings include: Alert, fluent speech, briskly follows commands. EOMI with direction changing horizontal nystagmus, left subtle facial droop, no dysarthria. No pronator drift, fast finger taps, full strength in bilateral finger extensors and TAs.

**Brief Hospital Course**

Joseph Hart is a 47 y.o. man with a history of epilepsy, pulsatile tinnitus found to have a high-risk ethmoid dural AV fistula s/p embolization with small residual ACA supply from prior embolization 2/2024 presenting for repeat embolization.

**#High-risk ethmoid dAVF s/p prior embolization now with embolization of residual shunting lesion from left ACA orbitofrontal branch**
Pre-procedure imaging performed for indication of pulsatile tinnitus following traumatic brain injury in 11/2023 notable for high-risk ethmoidal dural arteriovenous fistula. Catheter angiogram 6/27 notable for persistent shunting lesion suppled by left ACA orbitofrontal branch; patient underwent transvenous coil embolization and transarterial EVOH embolization which was complicated by venous perforation causing subarachnoid hemorrhage. Follow up CT brain showed significant improvement in subarachnoid space hyperdensities (majority attribute to contrast). The patient did have a witnessed seizure (see below) on PPD1. Patient discharged after two nights of observation.
- Follow-up with neuro-interventional radiology

**#Epilepsy**
Patient had a witnessed focal seizure (figure 4 posturing) with secondary generalization and severe post-ictal agitation. EEG monitoring showed only mild diffuse slowing without evidence of seizures or epileptiform discharges (final read pending). He was loaded with fosphenytoin (though not continued as maintenance medication), and after extensive discussion he was started oxcarbazepine 150 mg BID. Avoid lacosamide given prior 1st degree AV block, avoid additional phenytoin and valproic acid given subjective suicidality. Patient expressed interested in decreasing gabapentin as he believes it is causing palpitations. He states he was recently prescribed epidiolex but is making his own CBD to treat seizures.
- Started oxcarbazepine 150 mg BID, continue for one week, then increase to 300 mg qAM/150 mg qPM for one week, then increase to 300 mg BID and continue.
- Decrease gabapentin to 300 mg qAM/600 mg qPM given subjective palpitations
  Follow up in epilepsy clinic

*EXHIBIT*
*C. 1 Pg. 2*

Treated with precedex for known post-anesthesia agitation.

Rest of plan per housestaff note.

I spent a total of 40 minutes on discharge related care, coordination, and/or communication.

Lauren B Patrick, MD

---

## UCSF MEDICAL CENTER - DISCHARGE SUMMARY

Patient Name: Joseph Hart
Patient MRN: 92020550
Date of Birth: 5/5/1977

Facility: Parnassus
Attending Physician: LAUREN B PATRICK, MD
Service: Neurology

Date of Admission: 6/27/2024
Date of Discharge: 6/29/2024

Admission Diagnosis: Dural arteriovenous fistula [I67.1]
DAVF (dural arteriovenous fistula) [I67.1]
Discharge Diagnosis: (G40.119) Partial epilepsy with intractable epilepsy (CMS code)  (primary encounter diagnosis)
(I67.1) Dural arteriovenous fistula
(G40.119) Partial epilepsy, with intractable epilepsy, pharmacoresistant (CMS code)

Discharge Disposition: Home

Interpreter Use Documentation
Preferred language: English
If non-English, interpreter modality: N/A - patient's preferred language is English
If interpreter used, document name/ID. If no interpreter used, specify why: N/A - patient's preferred language is English

### History (with Chief Complaint)
Joseph Hart is a 47 y.o. male with a history of reported seizures (followed by UCSF epilepsy), previous ethmoid dAVF s/p embolization in 02/2024 who now presents with recurrence, s/p embolization with NIR c/b venous perforation causing SAH and SDH.

### Brief Hospital Course by Problem
#Ethmoid dAVF
History of prior embolization in 2/23/24. Now with recurrence of dAVF s/p transvenous coil and transarterial EVOH embolization c/b venous perforation causing SAH and SDH. Admitted to the ICU postoperative for close neurologic monitoring. Repeat NCHCT 6/28 stable from prior.
- OP follow up with NIR (scheduled for 7/15)

#Focal Epilepsy
Followed in epilepsy clinic with Dr. Hegde. Suspected focal epilepsy with modest response to gabapentin monotherapy. Trials of multiple ASMs limited by side effects and now with bradycardia/first degree AV block further reducing available options. Focal seizure with secondary generalization on 6/28, which self-terminated after 2 minutes. Was initially loaded with fosphenytoin then started on oxcarbazepine. Per last note has multiple seizures per week. Seizure during this hospitalization may be c/w current baseline frequency however given new SAH, this can also increase risk for seizures. VEEG while inpatient showed diffuse slowing but no epileptiform discharges or seizures (had one episode of lip smacking and confusion).
    titrate Oxcarbazepine
        - Week 1 (6/29 - 7/7): Start oxcarbazepine (Trileptal) 150 mg twice a day for one week
        Week 2 (7/8 - 7/14): Increase oxcarbazepine to 300 mg in the morning, and 150 mg in the evening

Exhibit C.18

Brain AVM (Arteriovenous Malformation) Repair: Post-op (English)

# Brain Arteriovenous Malformation Repair: What to Expect at Home

## Your Recovery

A brain arteriovenous malformation repair is surgery to remove a tangled bunch of blood vessels, called an arteriovenous malformation (AVM). The doctor removed the AVM through a cut (incision) in your scalp and the bone surrounding your brain (the skull).

The incision in your scalp may be sore for about a week after surgery. You may also have numbness near the incision, or swelling and bruising around your eyes. The incision may itch as it starts to heal. Medicine and ice packs can help with headaches, pain, swelling, and itching. You may feel more tired than usual for several weeks.

You may be able to do many of your usual activities after 4 to 6 weeks. But you will probably need 2 to 6 months to fully recover.

This care sheet gives you a general idea about how long it will take for you to recover. But each person recovers at a different pace. Follow the steps below to feel better as quickly as possible.

## How can you care for yourself at home?

 **Activity**

- Rest when you feel tired. You may feel sleepy more often than you did before the surgery. Plan to take a nap every day. Getting enough sleep will help you recover.
- When you sit up after lying down, bring your head up slowly. This can prevent headaches or dizziness.
- Try to walk each day. Start by walking a little more than you did the day before. Bit by bit, increase the amount you walk. Walking boosts blood flow and helps prevent pneumonia and constipation.
- Avoid strenuous activities, such as bicycle riding, jogging, weight lifting, or aerobic exercise, for 2 to 4 weeks or until your doctor says it is okay.
- For 3 weeks, avoid lifting anything that would make you strain. This may include a child, heavy grocery bags and milk containers, a heavy briefcase or backpack, cat litter or dog food bags, or a vacuum cleaner.
- Do not play any rough or contact sports until your doctor says it is okay.
- You can wash your hair 2 to 3 days after your surgery. But do not soak your head or swim for 2 to 3 weeks.
- You will probably need to take at least 6 weeks off from work. It depends on the type of work you do and how you feel.

**Diet**

- You can eat your normal diet. If your stomach is upset, try bland, low-fat foods like plain rice, broiled chicken, toast, and yogurt.
- Follow your doctor's instructions about drinking fluids.

EXHIBIT C. 18y

## Future Appointments and Other Follow-up

JUL
15

**Video Visit (Video Visit) with Kazim Narsinh**
Monday Jul 15, 2024 1:00 PM
We have scheduled a Video Visit for you. By accepting this invitation you consent to hold this visit by video. **Most video visits are billed the same as an office visit; the terms of your deductible and copay still apply. If you have any questions, contact your clinic.** You always have the option to request an in-person appointment instead of, or following, a video visit. You must be in California at the time of the visit.

Zoom Meeting Link: https://ucsf.zoom.us/j/7689666938
Zoom Meeting ID: 768 966 6938
Provider: Kazim H Narsinh
Date: Monday July 15, 2024        Time: 1:00 PM

For more details, view our website for how-to videos and instructions
UCSF Video Visit Webpage

UCSF Radiology Outpatient Clinic at Parnassus
415-353-1869

8897

Justin

## Allergies as of 6/29/2024

| | Reactions |
|---|---|
| Phenytoin | Confusion |
| Topiramate | Dizziness |
| Valproic Acid | Vertigo |
| Hallucinations | |
| Levetiracetam | |
| Penicillins | |

## Medication List

ⓘ Based on the information you provided to us and medication changes made during this visit, your complete medication list is below. Any new medications, new doses, and refills should have been sent to the pharmacy or given to you as a paper prescription. Please carefully compare this list with any medication bottles you have at home and those you pick up from the pharmacy. If you notice any missing or duplicate medications, please contact your primary care physician or a specialist. Please bring a copy of this list to all medical appointments.

*Exhibit C·19*

## Medication List (continued)

# START taking these medications

| | Morning | Afternoon | Evening | Bedtime | As Needed |
|---|---|---|---|---|---|
| **OXcarbazepine** 150 mg tablet<br>Commonly known as: TRILEPTAL<br>Week 1 (6/29 - 7/7): Start oxcarbazepine (Trileptal) 150 mg twice a day for one week Week 2 (7/8 - 7/14): Increase oxcarbazepine to 300 mg in the morning, and 150 mg in the evening for one week Week 3 (7/15 - 7/21): Increase oxcarbazepine 300 mg twice a day. Continue 300 mg twice a day going forward.<br>Last time this was given: 150 mg on June 29, 2024  8:38 AM | ✓ | | ✓ | | |

# CHANGE how you take these medications

| | Morning | Afternoon | Evening | Bedtime | As Needed |
|---|---|---|---|---|---|
| **gabapentin** 600 mg tablet<br>Commonly known as: NEURONTIN<br>Take 1 tablet (600 mg total) by mouth every morning, afternoon, and evening.<br>Dose: 600 mg<br>Last time this was given: Ask your nurse or doctor<br>You were taking this medication differently than prescribed.<br>What changed: **when to take this** | ✓ | ✓ | ✓ | | |

# CONTINUE taking these medications

| | Morning | Afternoon | Evening | Bedtime | As Needed |
|---|---|---|---|---|---|
| **CREATININE (BULK) MISC**<br>Take 15 mL by mouth daily<br>Dose: 15 mL | ✓ | | | | |
| **multivitamin** tablet<br>Take 1 tablet by mouth daily<br>Dose: 1 tablet | | ✓ | | | |
| **taurine** 500 mg capsule<br>Take 1 capsule (500 mg total) by mouth daily<br>Dose: 500 mg | ✓ | | ✓ | | |

# STOP taking these medications

**lamoTRIgine** 25 mg tablet
Commonly known as: LaMICtal

Exhibit C.19 p52

STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS AND REHABILITATION
NOTICE AND REQUEST FOR ASSISTANCE WHILE IN A COUNTY JAIL | DIVISION OF ADULT PAROLE OPERATIONS
CDCR 2271 (Rev. 08/16) | PAGE 1 of 1

## I. PRE-INTERVIEW FILE/DECS REVIEW  (STAFF ONLY)

I acknowledge that I have reviewed all relevant and reasonably available electronic central file and/or field file information and the Disability and Effective Communication System (DECS) prior to the first contact with the inmate/parolee involved in this parole proceeding.

STAFF PRINTED NAME: Jeffrey Llapis    SIGNATURE: _____    DATE: 7/3/2024

## IDENTIFIED DISABILITIES - Information obtained from DECS only, unless a date is next to the listed source document:

☐ Mental Health Concerns – Check one: ☐ CCCMS  ☐ EOP    Verified on form CDC 128C or CDCR 128-MH1 dated: _____
☐ Developmental Disability – Check one: ☐ DD1 ☐ DD2 ☐ DD3    Verified on form CDC 128C-2 dated: _____

☐ Physical Disability - Check all that apply:    Verified on form CDCR 1845 dated: _____
**MOBILITY:** ☐ DPW ☐ DPO ☐ DPM ☐ DNM ☐ DLT  **VISION:** ☐ DPV  **HEARING:** ☐ DPH ☐ DNH  **SPEECH:** ☐ DPS  **KIDNEY:** ☐ DKD

☐ Learning Disability, documented on: _____    Dated: _____
☑ No Disabilities Identified (From review of the field file and DECS).

## OTHER POTENTIAL ASSISTANCE NEEDS:

☑ Reading Level: 10    Total Grade Point Level: NA    (If not available, write "N/A")
☐ Non-English Speaking - List language(s) the inmate/parolee speaks and understands: _____

## II. INMATE/PAROLEE SELF-IDENTIFICATION

**WHILE YOU ARE HOUSED IN A COUNTY JAIL,** you have the right to receive help with reading, hearing, understanding, communicating, or seeing during your parole proceeding.  If you do not speak English, you have a right to an interpreter.  If you are deaf and use sign language, you have a right to a sign language interpreter.  If you cannot read, the CDCR must provide you with help to read documents. You also have the right to request assistance with housing, healthcare, communicating, or getting around.  If you do not get help, or you do not think you received the kind of help you need, you may ask a deputy at the jail for help or a county jail grievance form.  If you need further assistance, you may ask the Parole Agent who is providing you with your Notice of Charges for a form CDCR 2275-CJ (04/14), *Request for Reasonable Modification or Accommodation for Access To Housing and/or Program(s) in a County Jail.*

CHECK ALL THAT APPLY:

☐ I need help reading my documents.    ☐ I need to communicate in writing.    ☐ I need a sign language interpreter.
☑ I need help understanding the procedures and forms.
☐ I need the following help to hear: _____    ☐ I do have it  ☐ I do not have it.
☐ I need the following help to see: _____    ☐ I do have it  ☐ I do not have it.
☐ I need a wheelchair and ☐ I do have one  ☐ I do not have one.
☐ I need a: _____    (appliance/equipment) to get around and ☐ I do have it ☐ I do not have it.
☐ I do not speak English and need an interpreter in _____    (language).
☐ I need a housing accommodation (specify): _____    and ☐ I do have it  ☐ I do not have it.
☐ I have a health problem and I need: ☐ Medical Evaluation    ☐ Mental Health Evaluation    ☑ Medication.
**☐ I do not need an accommodation or assistance at this time.**

INMATE/PAROLEE SIGNATURE:    CDC NUMBER:    DATE SIGNED:
X  Unable to sign. Housing Unit    BM4359

## III. INITIAL SERVICE (STAFF ONLY)

☐ No Accommodation Requested.
☑ I have requested an accommodation/effective communication from the county jail staff on behalf of the parolee:
**TYPE:** ☐ Mobility  ☐ Vision  ☑ Communication  ☐ Housing  ☑ Medical/Mental Health  ☐ Other - Specify: _____
County Jail Facility Name: Mendow CJ    Date Jail Staff Notified: 7/3/24

Accommodation(s) provided/effective communication method used:
☐ Foreign Language Interpreter – Telephonic    ☐ Foreign Language Interpreter/Contractor - In-Person    ☐ Sign Language Interpreter
☐ Foreign Language Interpreter/Certified DAPO Staff    ☐ Assistive Hearing Device    ☐ Assistive Visual Device    ☐ Read Lips
☑ Read/Spoke Slowly/Loudly    ☑ Simple English    ☐ Other - Specify: _____

☐ Parolee has requested and I have provided a form CDCR 2275-CJ, and a pre-addressed, postage-paid envelope.

I have informed the inmate/parolee of his or her right to reasonable accommodations and charges if any, and have determined that he or she:
☐ Appears to understand.    ☑ Appears to have difficulty understanding.

ADDITIONAL COMMENTS: NA conducted serve but Hart did not want to read and was not receptive to participation of serve. NA attempted to explain purpose of serve but he was not inclined

STAFF NAME AND TITLE: J Llapis  PA I    SIGNATURE: _____    DATE: 7/3/24

CDC NUMBER: BM4359    INMATE/PAROLEE NAME: HART, Joseph Phillip    COUNTY JAIL/LOCATION: Mendow CJ
to participate. Copy of 1502 + 2271 issued. 2275 CJ explained. He was not receptive.

DISTRIBUTION:  WHITE - PAROLE AGENT (FIELD FILE); CANARY - NOTICE AGENT; PINK - INMATE/PAROLEE

EXHIBIT C-20

STATE OF CALIFORNIA
**PROBABLE CAUSE DETERMINATION**
CDCR 1502-B PCD
(Rev. 04/22)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
DIVISION OF ADULT PAROLE OPERATIONS
Page 1 of 2

PVDTS # : 1158692

| CDC NUMBER | PAROLEE NAME (LAST, FIRST, MI) | PAROLE UNIT | REGION | AGENT OF RECORD |
|---|---|---|---|---|
| BM4359 | HART, JOSEPH | SANTA ROSA 2 | N | CARPE, GARRETT |

| AGE | DOB | SEX | RACE | HEIGHT | WEIGHT | EYES | HAIR |
|---|---|---|---|---|---|---|---|
| 47 | 05/05/1977 | [X] M [ ] F | WHI | 6' 1" | 249 | GRN | BRO |

| LAST KNOWN ADDRESS | RESIDENTIAL PATTERN | CONTROLLING DISCHARGE DATE |
|---|---|---|
| 1240 S DORA ST , UKIAH, CA, 95482-6337 | STABLE | 07/16/2024 |

RETURN TO PRISON PROCEEDING REQUIRED: [ ] YES [X] NO   PC3000.1 [ ] YES [X] NO   PC3000 (b)(4) [ ] YES [X] NO

| ARREST DATE | HOLD DATE | HOLD REMOVED DATE | COUNTY IDENTIFIER |
|---|---|---|---|
| 07/01/2024 | 07/01/2024 | | |

| ARRESTING AGENCY | NAME BOOKED AS | BOOKING NUMBER | BOOKING LOCATION |
|---|---|---|---|
| UKIAH POLICE DEPARTMENT | HART, JOSEPH | | Mendocino County Jail |

REASON FOR RETAINING PAROLE HOLD: PAROLEE DANGER TO:
[ ] Abscond   [ ] Property-Others   [X] Safety-Others

**COMMITMENT OFFENSE(S)**

| OFFENSE CODE | OFFENSE DESCRIPTION | CONTROLLING OFFENSE |
|---|---|---|
| PC245(a)(1)[01] | Assault with a Deadly Weapon | Y |

DEC SYSTEM CHECKED? [X] YES
**DISABILITY / EFFECTIVE COMMUNICATION (DEC) INFORMATION:**
DDP Code: NCF
Effective Date: 11/09/2020
DPP Codes: N/A
1845 Date: 11/08/2021
MHSDS Code: N/A
SLI: N/A
Primary Method: N/A
Alternate Method: N/A
Learning Disability: N/A
TABE (Read): 10
TABE Date: 12/23/2020
Durable Medical Equipment: Compression Stockings,Other
Last Accommodation: Read documents to offender, Spoke loudly & clearly, Simple language spoken slowly & clearly
Spoken Languages: N/A

**VIOLATION :**

1 Resisting arrest

**CIRCUMSTANCES OF CHARGE:**

On 04/27/24, HART signed his Notice and Conditions of Parole to include General Condition #4, which states, "CRIMINAL CONDUCT: You shall not engage in conduct prohibited by law (state, federal, county, or municipal). You shall immediately inform your parole agent if you are arrested for any felony or misdemeanor crime. Be advised, your conduct, if prohibited by law, may result in parole revocation with or without a criminal conviction."

On 07/01/24, HART was detained by UPD Officer Perez (90) and ultimately arrested for Resisting Arrest. HART was transported and booked (24-1344) into the Mendocino County Jail. A PC3056 hold was placed.

**COURT STATUS:**

Mendocino

DISTRIBUTION:  COPY TO PAROLEE    COPY RETAINED IN FIELD FILE

*Exhibit C. 20 p5. 2*



# MENDOCINO COUNTY SHERIFF'S OFFICE
## CORRECTIONS DIVISION
### *Bail Payment*

Inmate Name: HART, JOSEPH PHILLIP

MID# 39961

## CHARGES

| Warrant # | Code Section | M/F | Description | | |
|-----------|--------------|-----|-------------|---|---|
| 24CR04775 | 3000.08 | | F | ₀ | PC |

Court: MENDOCINO COUNTY SUPERIOR COURT-UKIAH
Address: 100 N STATE ST UKIAH, CA 95482
Department: TBA
Phone: 707-463-4794

APPEARANCE DATE: 7/10/2024                TIME: 0900

Bail Amount:  $15,000                          Bail Type: BB
Bail Received by: SST VARGAS 2939
Posted By: ALADDIN BAIL BONDS
Address: 118 S State St, Ukiah, CA 95482
Phone: 707-462-6401
Bail Bond Number: SV25-5397145

COPY - COURT            COPY - INMATE            COPY  - FILE

*[handwritten annotations at top:]* 3rd ETH Kin son of 6/16 Cards MR-11A
3rd medical NOW MAD jobed previous (C/O HErNANDEZ WiTNESS
Pleaded w/ 7/18 m
7/2/Am

# MENDOCINO COUNTY SHERIFF'S OFFICE
## CORRECTIONS DIVISION

## REQUEST FOR MEDICAL/MENTAL HEALTH SERVICES
### SOLICITUD DE SERVICIOS MEDICOS Y/O SALUD MENTAL

DATE: 7-2-24       LOCATION: _____
FECHA              LOCALIDAD

NAME: HART          Joseph        P
NOMBRE   LAST / APELLIDO   FIRST / PRIMERO   MIDDLE / SEGUNDO

"A" NUMBER: A-39961      DATE OF BIRTH: 5-5-77
NUMERO DE ARCHIVO        FECHA DE NACIMIENTO

*[handwritten vertical text in left margin:]* ExhibiT C.20 PS3

---

**OFFICE USE ONLY**

DATE: _____

_____
Medical Staff's SIGNATURE

DATE: _____

_____
Account Specialist's SIGNATURE   I.D.# _____
(making withdrawal)

---

I UNDERSTAND THAT BY MAKING THIS REQUEST, I AUTHORIZE THE WITHDRAWAL OF $3.00 FROM MY ACCOUNT FOR THE COST OF MEDICAL/MENTAL HEALTH SERVICES PROVIDED FOR BY THE CO-PAYMENT SYSTEM.

*ENTIENDO QUE HACIENDO ESTA PETICIÓN, AUTORIZO EL RETIRO DE $3.00 DE MI EXPLICO EL COSTE DE SERVICIOS MÉDICOS DE MEDICAL/MENTAL PROPORCIONADOS PARA POR EL SISTEMA DEL CO-PAGO.*

---

SERVICES WILL BE PROVIDED REGARDLESS OF ABILITY TO PAY.
NOTE THAT BALANCE DUE WILL BE CARRIED ON THE BOOKS INDEFINITELY.

*LOS SERVICIOS SERAN PROVEIDO SIN IMPORTER COPACIDAD ALA PAGA.*
*OBSERVE QUE EL BALANCE DEBIDO SERA CONTINUADO LOS LIBROS INDEFINIDAMENTE.*

COMPLAINT / *Queja*:

I have been Taking GabapeTin for my epilepsy for Almost 4 years - ON 6-28-24 Dr.'s at UCSF prescribed me addiTionally A medicaTion That kepT me up for 4 days - I AM NOW refused Medicated

NAME: HarT          Joseph        P
NOMBRE   LAST / APELLIDO   FIRST / PRIMERO   MIDDLE / SEGUNDO

DATE: 7-2-24        Joseph P. Hart
                    INMATE'S SIGNATURE / FIRMA DEL PRISIONERO

Form 405                              04/26/07

*[handwritten at bottom:]* Here AT The Jail - SINcc 7-1-24 Medical refused me my meds!

| | | | |
|---|---|---|---|
| **FOR BILLING INQUIRIES CALL:** 1(800) 906-6552 PST - 8:00am to 4:30pm | | | |

| RUN NUMBER | STATEMENT DATE | DUE DATE | AMOUNT DUE |
|---|---|---|---|
| 24-575395 | 10/07/2024 | 10/27/2024 | 2,532.48 |
| | | **AMOUNT PAID** | |
| | | $ | |

**RUN NUMBER:** 24-575395
**INCIDENT NO:** MEU2024008705
**DATE OF SERVICE:** 07/01/2024

**ADDRESSEE:**

WMN1007A  2434 1 AB 0.593
7000002459 00.0010.0213 2434/1



JOSEPH P HART
1240 S DORA ST
UKIAH CA 95482-6337

**PLEASE REMIT TO:**

MEDSTAR AMBULANCE OF MENDOCINO COUNTY INC
PO BOX 277
UKIAH CA 95482-0277

PLEASE RETURN THIS PORTION WITH YOUR PAYMENT

SEE REVERSE SIDE FOR ADDITIONAL INFORMATION

# INVOICE

RUN NUMBER: 24-575395

INCIDENT NO: MEU2024008705

Page 1 of 1

DATE OF SERVICE: 07/01/2024

| DESCRIPTION | CHECK # | QUANTITY | COST PER UNIT | DATE | TOTAL CHARGE |
|---|---|---|---|---|---|
| Payment-Check QAF/PPGEMT | 0002161294 | | | 09/24/2024 | -395.52 |
| Advanced Ambulance Service | | 1 | 2,675.00 | | 2,675.00 |
| Mileage | | 2 | 39.00 | | 78.00 |
| EKG Cardiac Monitor | | 1 | 175.00 | | 175.00 |

| | |
|---|---|
| **TOTAL AMOUNT DUE** | **2,532.48** |

**DO NOT PAY FROM THIS INVOICE. We filed a claim with your insurance company and they have not responded. Please call your insurance regarding payment of this claim. Contact our customer service with your insurance payment status. Thank you!**

MEDSTAR AMBULANCE OF MENDOCINO COUNTY INC
PO BOX 277
UKIAH CA 95482-0277



**FOR BILLING INQUIRIES CALL TOLL FREE 1(800) 906-6552 PST - 8:00am to 4:30pm.**

primary care physician before taking

- Please keep a copy of this medication list with you at all times in the event of an emergency
- Please update this medication list whenever there are any changes.
- Please give your doctor(s) a copy of your current medication list.
- Do not let anyone else take your medications.
- Read labels on your medications carefully for special instructions.

## Orders and Procedures This Visit

| Order | Type |
|-------|------|

## Patient Education Materials/Medication Leaflet

**Epilepsy, Easy-to-Read**

Neurology

# Epilepsy

Epilepsy is when a person keeps having seizures. A seizure is a burst of abnormal activity in the brain.

This condition can cause problems such as:

- A change in how you think or behave.
- Trouble knowing what is happening.
- Falls, accidents, and injury.
- Sadness (depression).
- Poor memory.

In rare cases, this condition can be life-threatening. But most people with epilepsy lead normal lives.

## What are the causes?

- A head injury or an injury that happens at birth.
- A high fever during childhood.
- A stroke.
- Bleeding into or around the brain.
- Some medicines and drugs.
- Having too little oxygen for a long time.
- Abnormal brain development.
- Conditions such as:
  - Brain infection.
  - Brain tumors.
  - Conditions that are passed from parent to child.

Name HART, JOSEPH PHILLIP
FIN 50701082160
MRN 103-545-19



Exhibit #

C. 22 PS. 2

Many times, the cause is not known.

## What are the signs or symptoms?

Symptoms of a seizure vary from person to person. They may include:

**Symptoms during a seizure**

- Shaking with fast, jerky movements of muscles (convulsions).
- Stiffness of the body.
- Breathing problems.
- Being mixed up (confused).
- Staring or being hard to wake up (being unresponsive).
- Head nodding, eye blinking, eye twitching, or fast eye movements.
- Drooling, grunting, or making clicking sounds with your mouth.
- Not being able to control when you pee or poop.

**Symptoms before a seizure**

- Feeling afraid, worried, or nervous.
- Feeling like you may vomit.
- Vertigo. This feels like:
  - You are moving when you are not.
  - Things around you are moving when they are not.
- Déjà vu. This is a feeling of having seen or heard something before.
- Odd tastes or smells.
- Changes in how you see, such as seeing flashing lights or spots.

**Symptoms after a seizure**

- Being confused.
- Being sleepy.
- A headache.
- Sore muscles.

## How is this treated?

Treatment can control seizures. It may include:

- Taking medicines.
- Having a device put in the chest (vagus nerve stimulator).
- Brain surgery.
- Having blood tests often.
- Eating foods that are low in carbohydrates and high in fat (ketogenic diet).

If you are diagnosed with this condition, you should start treatment as soon as you can.

## Follow these instructions at home:

Name HART, JOSEPH PHILLIP
FIN 50701082160
MRN 103-545-19

③

04-01-20 10:05 FROM- MCSO Records    7014800962    0059. F-750

*Exhibit C.23* [handwritten]

Jesan
Unluata [handwritten, right margin]

# U.S. BIA OJS - CAHTO RANCHERIA POLICE DEPARTMENT
## SUPPLEMENTARY REPORT

**CASE NUMBER:** 20-021
**OFFENSE and DESCRIPTION:** 245 PC Assault w/ deadly weapon
**LOCATION:** Hwy 101 off Ramp in Willits
**VICTIM/SUSPECT:** Jairen SYLVESTER /Joseph Phillip Hart
**DATE:** 03/30/2020
**REPORTING OFFICER:** K. Unluata                **REVIEWER** _____

1  I told HART to relax that we were trying to figure out what is going on. I told him I was going
2  to place him in the back of my patrol vehicle. HART said it was fine.  ← *Did I have a choice?* [handwritten]

3
4  I placed HART in the back of my patrol vehicle and told him that I was going to talk with the
5  CHP Officer and the MCSO Deputy very quick and be right back. HART stated that it was
6  fine. HART then asked for some water, which I gave him some.

7
8  I made contact with MCSO Deputy KERMARKI, who stated that it was going to be CHP's
9  case. I then made contact with CHP Officer GONZALEZ and told him that HART was in the
10  back of my patrol vehicle.

11
12  CHP Officer GONZALEZ, after talking with Deputy KERMARKI, went over to my patrol
13  vehicle and talked with HART.

14
15  During this time, I saw CHP Officer JESSUP arrive also on scene along with 2 other
16  deputies and 2 Officers from the Willits Police Department.

17
18  While CHP Officer GONZALEZ was talking with HART, I assisted in setting up the crime
19  scene then went back over to my patrol vehicle.

20
21  As CHP Officer GONZALEZ walked away, I heard HART stated that everything in the
22  Toyota truck where the fight had taken place belong to him. HART then stated that the knife
23  used during the fight was in the bed of the truck above the wheel well.

24
25  I walked over to the truck where HART had stated that the knife was and found it on the
26  well, inside the truck bed, covered with parts of a black trash bag.

27
28  Seeing this, I called CHP Officer GONZALEZ and told him of the find. Officer GONZALEZ
29  took custody of the knife.

30
31  I then went back to my patrol vehicle. As soon as I approached I saw that HART was having
32  difficulty of breathing, was sweating. I took HART out of my patrol and sat him on the
33  ground.
34

*From Day 1 - they knew th stuff was mine* [handwritten, right margin]

*Was having a seizure bassing so help* [handwritten, bottom]

3



BY MS. COLE-WILSON:

Q    One quick question.  The truck that both
Mr. Sylvester and my client were riding in, driving, that
truck, was it totally searched and inventoried to your
knowledge?

A    I believe so.

Q    You don't know for sure?

A    A search warrant was written to search that
vehicle.  So normally when we do, that we do a complete
search of the vehicle that's in the search warrant.

Q    But that wasn't part of your job nor were you the
lead investigator of any of that were you?

A    I was not.

Q    And as far as you know, that truck was loaded in
the back with the property belonging to my client,
correct?

A    Yes.

Q    So if a gun had been there during all that time,
and had been disposed of in some way, you would not know
that, would you?

MR. MCMENOMEY:  Objection.  Calls for
speculation.

MS. COLE-WILSON:  Just asking.

THE COURT:  Overruled.

THE WITNESS:  If my partners would have found a
gun they would have told me about it.

BY MS. COLE-WILSON:

Q    Right.  If they had found one?

```
 1   bed of the truck?
 2        A.    We did go through some of them.
 3        Q.    Did you go through all of them?
 4        A.    There were several bags.
 5        Q.    I understand.  Did you go through all of them?
 6        A.    We did not.
 7        Q.    So in testifying today that the Toyota was
 8   searched for the firearm, every item on the truck was not
 9   searched for the firearm?  For a firearm?
10        A.    Correct.  The items in the bed of the truck -- I
11   believe there was a backpack that had items in it that led us
12   to believe it was the suspect's.
13        And I believe the information I had at the time was that
14   he had loaded a bunch of his items into the bed.
15        And when we went through some of the items, there was a
16   lot of clothing.  So we did not dump out all of the bags to
17   see what was in the bags.
18        Q.    So if Mr. Sylvester had come out with a firearm,
19   he could have while he was waiting for -- well, there could
20   have been a firearm in one of those bags that you would not
21   have located simply because you didn't search everything in
22   the bed of the truck, correct?
23        A.    It could have.
24        Q.    Okay.  So you didn't do a thorough check of
25   everything in the truck?
26        A.    The items in the bed of the truck -- there was a
27   lot of clothing.  It was raining.  We didn't want to make a
28   mess, so we didn't dump out everything.
```

Exhibit C.24, p.3

PEOPLE vs JOSEPH PHILLIP HART
Case No. SCUK-CRCR-20-34746                Vol 17 of 23

323

```
 1              MS. COLE-WILSON:  I'm sorry.  My voice is --
 2              THE COURT:  No, I don't think it was your voice.
 3  BY MS. COLE-WILSON;
 4       Q.    The items in the Toyota -- all of Mr. Hart's items
 5  in the Toyota, were they taken into evidence?
 6       A.    They were not.
 7       Q.    What happened to his items?
 8              MR. McMENOMEY:  Objection, relevance.
 9              THE COURT:  Overruled.
10              THE WITNESS:  The vehicle was locked once we were
11  done, and left in place.
12  BY MS. COLE-WILSON:
13       Q.    Well, it's not still there, right?
14       A.    No, it's not.
15       Q.    What happened to the vehicle and his items?
16       A.    I do not know.
17              MS. COLE-WILSON:  Thank you.  If I can just have
18  one more minute?
19              THE COURT:  Yes.
20  BY MS. COLE-WILSON:
21       Q.    I am going to show you People's No. 22 again.  Can
22  you tell us what that is?
23       A.    It's the inside passenger door of the older
24  Toyota.
25       Q.    That shows where the window crank is missing,
26  right?
27       A.    Correct.
28       Q.    Doesn't that also show where the door apparatus is
```

```
 1   this time.
 2        Q.    Okay.  So you say you paid the mortgage for him
 3   there.  How did you accomplish that?
 4        A.    I had given Mr. Sylvester a pound of marijuana.
 5        And he the second day that I was there went into Covelo.
 6   And, apparently, he sold the pound of marijuana to somebody,
 7   and he paid Russ.
 8        Q.    Okay.  Now, there was marijuana in the back of the
 9   truck when you came down off the hill, right?
10        A.    There was another six-pound in my bag, along
11   with --
12        Q.    Okay.  That's just the answer?
13        A.    Yes, there was.
14        Q.    You still had marijuana, right?
15        A.    Yes, I did.
16        Q.    Okay.  Now -- so you packed up your things, or as
17   much as you could in the hour or so that Mr. Sylvester gave
18   you, right?
19        A.    Yes.
20        Q.    And put it in that truck that didn't belong to
21   him, right?
22        A.    Yes, I did.  He did come back one other time at
23   the hour when I was not finished packing things up.
24        Q.    He came into the dome that you were staying in?
25        A.    Yeah.  He came into the dome.
26        Q.    Did you see the gun then?
27        A.    I did not see the gun then.  He had his hands in
28   his pocket, and was screaming and yelling that he was not
```

1    MS. COLE-WILSON:  Oh, my client does not have --

2    he's been in custody since he was arrested.  I think this

3    was in March.  And he's going to be in custody, obviously.

4    And he's not able to run his business.  At the time of

5    this arrest, all of hits items were -- at the time of his

6    arrest of all his belongings were in the vehicle, the

7    truck.  Including his business papers and documents, his

8    computer, all of those items.  The vehicle was towed.  It

9    was never recovered.  The towing company had a lien on the

10   truck.  The items were disposed of.  So he's not even able

11   to recoup his business documents, computer any of those

12   things.  So he's right now pretty much without funds.

13        THE COURT:  Submitted?

14        MS. COLE-WILSON:  Yes.

15        MR. MCMENOMEY:  Just to address a little bit,

16   your Honor, it's certainly not a mitigated 245.  And, in

17   fact, for 245 you don't even have to have an injury.  You

18   know, this is clearly in my opinion an aggravated one.

19   When you stick somebody at least three separate times and

20   then again and punctured a lung, that's an aggravated 245

21   any way you look at it.  So, you know, I appreciate the

22   fact that the Judge, your Honor weighed and considered the

23   new trial motion, denied that, weigh and considered the

24   strike and denied that.  But that should in no way impact

25   the Court's analysis as to what the appropriate sentence

26   is for someone who has been convicted of a 245 that

27   occurred in the fashion that this one did.  I just don't

28   see the justification for this to be anything other than



state had no other evidence as to what caused appellant to get into the truck on March 30.

In contrast, appellant testified to threats from Mr. Sylvester if appellant did not obey his order to leave. (17 R.T. p. 417.) As Ms. Cole-Wilson explained, the evidence about what happened at Spy Rock, was evidence that corroborated appellant's testimony that the parting was hostile and that he entered the truck because of Mr. Sylvester's threats and was then held in the truck against his will.

> "There was some kind of threat—otherwise he wouldn't have left. And that – it would have added credence and credibility to Mr. Hart's . . . defense that he was under coercion. He was threatened, he was forced to stay in the vehicle. And his self-defense theory was substantiated from the very beginning."

(23 R.T. p. 672.)

The newly discovered evidence, if offered at trial, would render it reasonably probable that appellant would achieve a better result because it supported appellant's testimony that he left because of a credible threat from Mr. Sylvester to harm him. (17 R.T. p. 419.) As Ms. Cole-Wilson observed, the jury focused on the testimony of Mr. Sylvester and appellant. (1 C.T. p. 245.) The jury's guilty finding demonstrates that they believed Mr. Sylvester's highly unlikely story that appellant voluntarily abandoned his financial investment at Spy Rock merely because Mr. Sylvester asked him to, put all of his belongings into trash bags and loaded them in the back of a truck that was low on gas and not running well, and left Spy Rock in pouring rain without any arrangements for shelter elsewhere. The key point that the jury overlooked in evaluating this incredible story is that appellant would not have done any of these things absent a

14

Appellants Reply Brief

Exhibit C.26B

**Expenses:**
- Mortgage; or ☒ Rent: $750.00 in HI.
- ☐ Cable/Satellite: $_____
- ☐ Medical Bills: $_____
- ☒ Credit Card: $3,000.00 (total) debt.
- ☒ Cell Phone: $110.00
- ☒ Utilities: $300.00
- ☒ Food: $1,000.00
- ☐ Auto Payment: $_____
- ☐ Alimony: $_____
- ☐ Storage Unit: $_____
- ☐ Internet: $_____
- ☐ Medical Insurance: $_____
- ☐ Auto Insurance: $_____
- ☒ Child Support: $600.00
- ☒ Other: $2,000.00, traveling

**Assets:**
- ☐ Home: $_____ Comment: _____
- ☐ Rental Prop. : $_____ Comment: _____
- ☐ Checking Account: $_____
- ☐ Savings Account: $_____
- ☐ Auto: Year _____ Make _____ Model _____
- ☐ Other: Year _____ Make _____ Model _____
- ☒ Real Estate: 76 acres with 2 cabins, located on Mina Road in Covelo, Calif. Defendant and partners bought property and are making payments to owner.
- ☒ Other: Kenco Industries HI, Inc. valued at $6,000,000.00.

## RESTITUTION:
It is recommended restitution be reserved for the victim, Jairen Sylvester, in an amount to be determined.

## RESTITUTION FINE:
A fine in the amount of $2,400.00 is recommended.

## PENAL FINE:
None recommended.

## PROBATION FEES:
It is recommended the defendant pay the $712.00 Pre-Sentence Investigation Fee.

## ALCOHOL/DRUG TESTING FEE:
None recommended.

## REFERENCES:
The defendant was given an opportunity to submit references; however, as of this date, none have been received.

## CRITERIA AFFECTING PROBATION ELIGIBILITY (Rule 4.413):
Section 1203(e)(4) of the Penal Code declares the defendant presumptively ineligible for probation because of two prior felony convictions, except in unusual cases where the interests of justice would best be served (4.413-b).

Pursuant to Sections 1170.12/667(c)(2) of the Penal Code, probation shall not be granted, nor shall execution or imposition of sentence be suspended.

## CRITERIA AFFECTING PROBATION (Rule 4.414):
Applicable factors affecting the decision to grant or deny probation are marked:

☐ Not Applicable.

Exhibit C.26
B2

**Siblings:** One sister.

| Name | Age | Occupation | Residence |
|------|-----|-----------|-----------|
| Tricia Duerig | 46 | Unknown | Lowell, Indiana |

## EDUCATIONAL BACKGROUND:

**Grade Level/Last School Attended:** The defendant last attended 10th grade at Bogan High School in Chicago, Illinois. He later earned his High School Equivalency Certificate while in prison.

**Advanced Schools/Training:** While in prison, and through Illinois Valley Community College, the defendant earned certificates in Building Trades and Culinary Arts in 2000 and 2001, respectively. He went on to enter the Laborers Union (Local 96) and complete a two-year apprenticeship program to become a journeyman.

## MARITAL STATUS:

**Current Status:** Single.

**Prior Marriages/Relationship(s):** The defendant had a previous three-year relationship with Grace Varsos.

**Children:** They have one son in common, Ryan (age 16). Ryan lives with Ms. Varsos in Chicago, Illinois. The defendant stated it has been over one year since he last saw his son, and he last spoke with him in February of 2020. He reported Ms. Varsos has made it difficult for him to see Ryan in the past.

## MILITARY RECORD:
None.

## EMPLOYMENT RECORD:

The defendant reported he has been self-employed since 2010, and owns a business called Kenco Industries HI, Inc, which specializes in agricultural biotechnology. He reported having numerous business partners (including farmers) from various states. He has been manufacturing Kenaf (hibiscus cannabinus) in Hawaii, and then selling it to other regions.

| Past Employer & Address | Dates Employed | Position Held |
|------------------------|----------------|---------------|
| Lean Construction Institute Stanford, Calif. | 2007 - 2010 | Administrative Assistant |
| Association of Manufacturing Excellence Hondo, Texas | 2006 | Asst. Researcher in Chicago |
| Alright Construction Chicago, Illinois | 2004 - 2006 | Journeyman Laborer |

## FINANCIAL STATUS (marked if applicable):
☐ Present    ☒ Prior to Incarceration

**Income:**
☐ Hourly Wage: $_____
☐ General Assistance: $_____
☐ Tribal Per Capita: $_____
☐ Cal Fresh Benefits: $_____

☒ Monthly Net: Approx. $5,000.00
☐ SSI/SSDI: $_____
☐ Child Support; or ☐ Alimony: $_____
☐ Other: $_____; Comment: _____

Exhibit
C.27, ps. 1

**PROOF OF SERVICE BY MAIL**

I, Joseph P. HART _____, declare:

I am at least 18 years of age, and a party / am not a party to the

attached herein cause of action. My mailing address is: PleasanT Valley

STaTe Prison _____, Post Office Box 8500, Cell A-148.L,

Coalinga, California 93210-8500.

On ___9-1___, 20 21, I delivered to prison officials at

Pleasant Valley State Prison at the above address the following documents for

mailing via the United States Mail.

1. Request for ProperTy DocumentaTion
2. Request for CourT order-- 23 R.T. pg 686
3. Request for verdict forms

In a sealed envelope (s) with postage fully prepaid, addressed to:

1. Attorney JAN Cole - Wilson
   175 S. School ST. Ukiah, CA - 95482
2. Attorney Jeffrey AAron
   175 S. School ST. Ukiah CA - 95482
3. _____
   _____
   _____
4. _____
   _____
   _____
5. _____
   _____
   _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __1st__ day of __September__, 20 21 at Coalinga, CA.

_Joseph P. Hart_
Declarant / Petitioner IN PRO PER

Exhibit
C.27, B.2

Joseph Hart  BM 4359
c/o Pleasant Valley State Prison
P.O. Box 8500
Coalinga, Ca. 93210

In Propria Persona


SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR
THE COUNTY OF MENDOCINO

| | |
|---|---|
| Joseph P.Hart, Petitioner | NO. _____ |
| V. | Petition for Writ of Replevin (Claim and Delivery) [C.C.P. 511.010 et. 667] |
| Mendocino County Sheriff, Respondent | |

Ref:SCUKCRCR2034746


Petitioner submits the following points and authorities in support
of Petition to return property in the possession of Respondent.


1.

EXHIBIT# (C.) 7, PS. 3

Petitioner sets forth the following facts and allegations:

1. On or about the date of 3-30-2020, Petitioner was arrested by peace officer(s) within the meaning of California Penal Code sections 830-830.9 , employed by the Mendocino County Sheriff's *Dept. #* and was subsequently booked into the Mendocino County Jail.

2. At the time of his arrest, Respondent peace officer(s) *his* seized personal property belonging to Petitioner, to wit:(see attachment #1 ) with an approximate value of $75,000.

3. Such property is lawfully owned by Petitioner, is not illegal contraband and was not used in any unlawful manner. (See Penal Code sections 1417-1420 )

4. Upon Petitioner's subsequent *Arrest* conviction and commitment to state prison, the above mentioned property was unlawfully detained or unlawfully destroyed, or potentially destroyed prior to conviction, by Respondent and to this date has not released to *said property* either Petitioner or his authorized agent as is their lawful duty to perform.

5. Petitioner to this date has received no details, a proper *Due Process* receipt, hearing or notice to recover inspite of numerous request , and well documentation as to Respondent having seized said property. *ed evidence*

Wherefore, Petitioner prays for an order directing the Respondent Mendocino County Sheriff to, release said properties or to provide Petitioner with the monetary equivalent there of in the amount of $75,000 forwith. *to explain reason, why due process was not followed.*

Dated this _____ day of _____ 2021.

Respectfully submitted,

_____
Petitioner    IN PRO PER

2.

*Any And All discovery materials pertaining to*

*EXHIBIT*

*# C, 27, P5. 4*

*[handwritten margin notes: "Nor shall private property be taken without just compensation" "be dealt w/ 5th Amend mr"]*

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION

It is a fundamental principle of our law that "[A] person may not be deprived of .... property without due process of law." (California Constitution Article I, 7.) While (Evidence Code section 637) provides that the "things which a person possesses

*[handwritten: "← correct space"]*

are presumed owned by him", unless and until evidence is introduced which would support a finding in the contrary (see People V SuperiorCourt (McGraw) (1979) 100 Cal. App.3d 154, 159 A finding in the contrary has never been found in relation to the property ~~described~~ in this petition, nor ~~does it seem that~~ *HAS* due process of law ~~has~~ been followed.

In this light, police have not merely a right but an affirmative *E* duty, statutorily defined, to safeguard the property of a prisoner (People V. Panfili) (1983) 145 Cal. App. 3d 387, 393) Goverment *N*

Code, section 26640 explicitly requires that "[t]he sheriff shall take charge of, safely keep, and keep correct amount of, allmoney and valuables found in possession of each prisoner that is detained in their custody,," Case law holds that this section governs the activity of municipal police officers as well sheriffs. (Minsky V. City of Los Angeles) (1974) 11 Cal. 3d 113, 119, fns.)

Moreover, actions for recovery of property seized incident to *N* arrest are not subject to the claims requirements of the Goverment *Government* Tort Claims Act (Goverment Code 900 et seq.) See (Minsky V. City of Los Angeles) (1974) 11 Cal.3d. 123,124; (Holt V. Kelley) (1978) 20 Cal. 3d 560, 564-565; (Hibbard V. City of Anaheim) (1984) 163 Cal, App. 3d 270, 276. ) nor does the fact the city or other goverment agency mayhave rid itself of the property in question,exempt it of its liability, and/or responsibility to the plaintiff/Petitioner. (Minsky at p.124; Holt at p. 565) This is true especially when done without due process or legal authority

*[handwritten struck text] As is the, s case*

The law is abundantly clear that property lawfully owned by a citizen which has been retained and detained by police authority must be returned to the rightful property owner after it's use in and/or for criminal prosecution. "Government officers who seize an arrestee's property beat the duty to provide a receipt, to safeguard, and to pay and deliver such property as he directs except when otherwise ordered by a court of competent jurisdction ." (Minsky V. City Of Los Angeles, supra)(1974) 11 Cal. 3d 113, 119-120)

3.

EXHIBIT C. 2 / B5   SUBSTANTIAL

"the right to regain possessions of ones property is a right, so substantial it may not be dependent upon the whim and caprice of a court." (Franklin V. Municipal Court) 26 Cal. App. 3d 884, 103 Cal. Rptr. 354(1st District 1972) " Continued official retention of property a defendant has a right to possess with no further criminal action pending violates the owners due process rights." (People  V. Superior Court, 28 Cal.App. 3d 600, 104 Cal. Rptr, 876)  (4th District 1972)

"The confiscation and destruction of property without a hearing to determine whether the property is exempt from the duty to return it to its owner is an unconstitutional deprivation of property without due process of law.." (People  V. Beck 25 Cal. App. 4th 1095,1103, 31 Cal. Rptr. 2d 44)  ( 4th District 1994) , as modified, (June 17, 1994)

The Government in effect occupies the position of a bailee when it seizes from an arrestee property that is not shown to be contraband (Mosetti  V.  Superior Court ) (1974)  4 Cal.3d 699, 708-109;  (Minsky  V.  Los Angeles ) supra,11 Cal.3d 113,  121). The arrestee retains his right to eventual specific recovery, whether he seeks to regain tangible property like an automobile, wallet or camera, or whether he seeks to recover a specific sum of money which, under general constructive trust principles, is traceable to property within the possession of the arrestee at time of arrest. (See e.g. Newport V.  Hatton ) (1924) 195 Cal. 150-151 ; Dalikas V.  Paras, (1948)  86 Cal. App.2d 243, 248-249;  see generally  5 Scott on Trusts   (3d Edition) 515 inset;

It can further be held that a defendant in a criminal proceeding clearly has a right to obtain Mandamus to compel the return of personal property wrongfully withheld by the custodial officers. (see e.g.  Buker  V. Superior Court ) (1972) 227  Cal.  App. 2d 361, 366;  Van Alstyne, California Governmental Tort Liability (1964) 8.19 p. 375 ). Mandamus lies in the criminal ~~charges~~ proceeding (People  V.  Superior Court )(Loar) (1972) 28 Cal. App.3d 600, 607-612;  (Minsky  V. City of Los Angeles, supra) 11 Cal. 3d 113, 123, ).   even After disposition of criminal charges.

Based on the foregoing Points and Authorities, the relief asked and prayed for by the Petitioner is just and warranted. Petitionr respectfully requests that the Court grant Petitioner this Petition for Writ of Replevin, and that no retalitory action be taken against petitioner for exercising his right to relief.

I, Joseph Hart, the Plaintiff/Petitioner herein, hereby authorize that the above-described property be released ( or a cashiers check or money order in the amount of $75,000 be provided) to: Dr. Robert Hall - 706 W. 33rd St, Hondo, Texas, 78861

This Date: __6-21__          Respectfully,

move over        SAme line         Joseph P. Hart

                                 Move over

                    4.

EXHIBIT
C. 28 PSI.

SPX - P
143

**DEBORAH L. HAWKINS, LL.M.**

**ATTORNEY AT LAW\***
SBN 127133
Certified Specialist, Appellate Law
The State Bar of California Board of Legal Specialization
1637 E. Valley Parkway PMB 135
Escondido, California 92027
Telephone: 760-294-2181
email: dhawkins8350@gmail.com

\*Admitted to Practice:
California, Virginia, District of Columbia

October 13, 2021

Joseph Hart BM4359
Pleasant Valley State Prison
P.O. Box 8500
Coalinga California 93210

Re:    People v. Joseph Hart, Court of Appeal No. A161239/ Mendocino County
       Superior Court No. SCUKCRCR203474601

Dear Mr. Hart:

          Please find enclosed the court's opinion in your matter. The court of appeal has
affirmed the trial court. I will file a petition for review in the California Supreme Court.
The first date that such a petition can be filed is November 11, 2021.

          I have once again enclosed the portion of the record in which the erroneous strike
conviction was discussed. I have not received any information about who notified CDCR
incorrectly about your record of conviction, so I can be of no help on that issue. In my one
discussion with Mr. McMenomey he categorically denied that he had sent the information
to CDCR. I have no evidence in my possession to the contrary, thus I am of no assistance.

          ¹ I have no information about "shredded property." I will inquire of Ms. Cole-
Wilson if she has any information.

she
loes
you

                              Very truly yours,

                              Deborah L Hawkins

Enclosure                     Deborah L. Hawkins



# MENDOCINO COUNTY SHERIFF'S OFFICE
## Corrections Division
951 Low Gap Road   Ukiah  CA 95482-3797

Exhibit C.29
85.1

## *INMATE GRIEVANCE FORM*

If, while in the custody of the Mendocino County Sheriff's Office - Corrections Division, you have a complaint regarding custody treatment, medical treatment, Mendocino County Jail policies and procedures, or other custody related matters you may complete this form and give it to the on-duty Corrections Deputy. This form SHALL be submitted within five (5) days after occurrence of any specific incident and/or complaint.

Every attempt will be made to resolve your grievance at the lowest possible level, however, it may be necessary to bring your grievance to higher levels for resolution.

Grievances may be filed on all matters EXCEPT decisions issued by a court.

STATE YOUR GRIEVANCE:                     Master ID #: 39961

Name: Joseph Hart        Housing Assignment: B-1
        (classification)
Location of Occurrence: 3-30 thru 8-5-20,  Date: 8-5-20  Time: 12:30p

GRIEVANCE: I have been held in solitary confinement for 128 days consecutive. I've received only 2 disciplinary reports since I have been in this jail, one of those was dismissed, the other "Insolence". I recieved 1week commissary denial. I've been in no fights and had no staff assaults. I know of inmates who have had multiple fights, multiple tickets and murder cases and they are given class 1 rating. This is un-equal treatment, and the length of confining me like this is cruel and unusual punishment. Classification officer Johnston has said I was lowered 2x, but weather she is lying or the officers in the jail never followed them, that hasn't happened. Again this is cruel unusual and un-equal punishment especially considering Classifications lets other inmates assault other inmates and not lock them in solitary like this. I want to be reclassified into General population.

Signature of Inmate: Joseph P. Hart   Date: 8-5-20  Time: 12:30 pm
Received by: [signature]   I.D.#2817  Date: 08/05/20  Time: 1530

Form 305                          — OVER —                          Rev. 03/2015

## REPLY TO INMATE GRIEVANCE

**Level I - Corrections Sergeant**          Date: _____  Time: _____

Resolution: _____

We normally reduce classification in steps. You have been lowered to Max 2 on two separate occasions. On both occasions your classification was raised back to Max 3 within a few days because of your hostility towards medical and corrections staff. There are also several reports of verbal hostility towards inmates. Your classification will remain Max 3 until your hostile conduct ceases.

Corrections Sergeant: **P. SAYE**     I.D.# 287  Date: 8/6/20     Time: 0915

**Level II - Corrections Lieutenant**          Date: 8/10/20     Time: 0750

Resolution: _____

Sgt. Saye's response is accurate. You have continued hostile behavior towards staff and other inmates. These incidents are well documented. If you wish to come off Administrative Separation, you must work with Classification staff, obey jail rules, and cease threatening others. You will need to show that you can conform to for an extended amount of time. If you do this, your code will be reduced.

Corrections Lieutenant: **Lt Brown**     I.D.# 2420  Date: 8/11/20     Time: 1003

**Level III - Corrections Division Commander**          Date: 8/31/20     Time: 1206

Resolution: YOUR CLASS CODE WAS JUST REDUCED TO MAX-2. CONTINUE YOUR CURRENT BEHAVIOR AND YOU WILL GIVE US A REASON TO TAKE YOU OFF AD. SEG.

Corrections Division Commander: _____     I.D.# 21-50  Date: 8/31/20  Time: 1209

*Distribution:*     Original - Inmate
Form 305          3 -Copies:   "A" File......Inmate Grievance File.......Corrections Division Commander          Rev. 11/2019

No fights     Hostile IS Asking for help??
No Assaults / leaving me on the floor / Making me eat w/my hands

*(left margin, vertical)* EX Xhibit C-04-B-2

Exhibit
C.29, pg.3

# MENDOCINO COUNTY SHERIFF'S OFFICE
## Corrections Division

### INMATE REQUEST FORM

"A"#: 39961

Name: HART          Joseph          P
        *Last*          *First*          *Middle*

Date: 6-4-20          Housing Assgnmt: Wing K-d19

**Check One:** ☐ Writ   ☐ Grievance   ☑ Classification   ☐ AIDS Testing
☐ Inmate Services   ☐ Probation   ☐ Release Date
☐ Other: _____

Explanation/Comment (PRINT CLEARLY – ONLY ONE REQUEST PER FORM):

Could I please be classified lower + given
a chance to get out of wing. The craziness
over here is not doing me any good.
Ms Johnstone had told me in the beginning of
May I'd begin to get reclassified but haven't.
I'm not guilty of any crime & the noise
doesn't help my epilepsy. Thanks for the consideration.

C/D SIGNATURE REQUIRED: Yes          I.D.# 2808

Date: 6/5/20   Routed to: CLASS

Response/Action Taken: Not cd this time

Respondent's Name: _____  ID# 724   Date: 6/16/20

PINK -Inmate Keeps   YELLOW-Response to Inmate   WHITE-"A" File (When Completed)
Form 88                                              Rev. 4/7/98

Exhibit #6 (pg.28) pg.1

# MENDOCINO COUNTY SHERIFF'S OFFICE
## Corrections Division

## DISCIPLINARY HEARING BOARD REPORT (DBC0720-38)

Name of Inmate: Hart, Joseph        A# 39961

Date of Incident: 07/20/20          Time of Incident: 0047

Level 2 #5- Showing insolence towards staff.

Disciplinary Hearing Date: 07/22/20   *why violence?*   Time: 1423        Inmate in attendance: ☒ YES ☐ No

Hart had received his copy of the infraction report and he had no witnesses. Hart admitted to calling CD Rivera a "fucking rat" when he was served with the rules violation, but nothing else. He told me he was told he could not come out for his shower time because of a schedule change. When he asked why, he was told an explanation was not required. This upset Hart and he continued to press staff for a reason.

☒ You committed the following rule infraction(s).

Level 2 #5- Showing insolence towards staff.        *After 84 hrs +*
*of solitary cell confinment*

☐ You did not commit a prohibited act(s).

**The finding based on the following information:**
The deputy's report and the inmate's admission

**ACTION TAKEN:**

1 week loss of commissary ←        *1st guilty ticket*        *office 14 days solitary confinment*

Start: 7/26/20            End: 8/1/20

| | | |
|---|---|---|
| Hearing Deputy: Sgt. Johnston | | ID# 2446 Date/Time: 07/22/20 1423 |
| DBC Chairman: Sgt. Johnston | | ID# 2446 Date/Time: 07/22/20 1641 |
| **Decision served on Inmate by:** Sgt. Johnston | | ID# 2446   Date/Time: 07/22/20 |

You have the right to appeal this decision. Should you wish to appeal, your written appeal must be submitted within 24 hours of the time this notice of decision was served upon you. Failure to submit an appeal within this time limit is grounds for denying the appeal.
Form 416

04/02/2004

*1st disciplinary INfraction found guilty since 3-31-20 when I Arrived*

```
 1   first.   I will give you a chance to talk.
 2                THE DEFENDANT:  Yes, sir.
 3                THE COURT:  In the courtroom is a court
 4   reporter writing down everything you say and the
 5   district attorney who will make notes of everything
 6   you say.   I'm cautioning you not to say anything about
 7   the facts of your case because I don't know if they're
 8   going to help you or hurt you and that's why counsel
 9   will be appointed to represent you so before you say
10   anything to the Court you know what should be said and
11   what shouldn't be said.
12                So let's start with the charges.  You are
13   charged in a felony complaint with assault with a
14   deadly weapon, a knife, against the victim in this
15   case on March 30th of this year.  It's alleged that
16   you have two strike priors, both out of the state of
17   Illinois.  That makes your conviction in this case, if
18   in fact you are convicted, you're looking at a
19   25 years to life sentence based on the two strike
20   priors and the current offense being a serious and
21   violent felony.  Bail schedule in this case is
22   $500,000.
23                I am going to appoint the public defender.
24   Mr. Moss, I will give you a copy of the felony
25   complaint.  Mr. Moss is present in the courtroom.
26   Mr. Adams from the public defender's office is in the
27   cell with Mr. Hart this morning.
28                So Mr. Moss, let's arraign Mr. Hart first.
```

Exhibit C.3D ps.2

1          SUPERIOR COURT OF CALIFORNIA

2             COUNTY OF MENDOCINO

3          HON. CARLY DOLAN, JUDGE

4

5                  . . .

6    THE PEOPLE OF THE      )
     STATE OF CALIFORNIA,   )
7                           )
                            )
8            PLAINTIFF,     )
                            )
9    VS.                    )    CASE NO. SCUKCRCR 2020-34746
                            )
10                          )
     JOSEPH HART,           )
11                          )
             DEFENDANT.     )
12                          )
13   _____)

14

15          REPORTER'S TRANSCRIPT

16                  OF

17          PRELIMINARY HEARING

18                  . . .

19          TUESDAY, JUNE 2, 2020

20       REPORTED IN UKIAH, CALIFORNIA
          MENDOCINO COUNTY COURTHOUSE
21                  . . .

22

23          A P P E A R A N C E S

24   For the People:              For the Defendant:

25   Mendocino County             Mendocino County
     District Attorney            Public Defender
26   100 North State Street       175 South School Street
     Ukiah, CA  95482             Ukiah, CA  95482
27   BY:  SCOTT MCMENOMEY, ESQ.   BY:  JAN COLE-WILSON, ESQ.
     Deputy District Attorney     Assistant Public Defender
28

PEOPLE vs JOSEPH PHILLIP HART
Case No. SCUK-CRCR-20-34746          Vol 5 of 23                          74

```
 1                    TUESDAY, JUNE 2, 2020

 2                            . . .

 3        THE COURT:  On the record in People versus Jospeh

 4   Hart, case ending 34746.

 5        MR. MCMENOMEY:  Scott McMenomey for the People.

 6        MS. COLE-WILSON:  Yes, your Honor.  Jan

 7   Cole-Wilson assistant public defender for Mr. Hart.  He is

 8   present here in court in custody.

 9        THE COURT:  Thank you.

10        Matter comes on for preliminary hearing.  Are

11   both sides ready to proceed?

12        MS. COLE-WILSON:  Yes.

13        MR. MCMENOMEY:  Yes.

14        THE COURT:  Waive a reading of the complaint?

15        MS. COLE-WILSON:  I do.

16        THE COURT:  Call your first witness.

17        MR. MCMENOMEY:  The People call Deputy Ochoa

18   Pedroza.

19        MS. COLE-WILSON:  Your Honor, for the record I

20   would like to state the district attorney has made an

21   offer to my client.  He offered a total disposition of

22   eight years.  I barely had a chance to explain this to my

23   client, but I did explain the offer and the exposure my

24   client is facing.  He has rejected that offer.  I just

25   wanted to put that on the record.

26        THE COURT:  Okay.  For the record his exposure

27   here would be?

28        MR. MCMENOMEY:  25 years to life.
```

PEOPLE vs JOSEPH PHILLIP HART
Case No. SCUK-CRCR-20-34746          Vol 5 of 23                    75

1       THE DEFENDANT:  How is that?  I only have one X.
2  They say I have a second one.  She said I have a second
3  case which is not true.
4       MS. COLE-WILSON:  I have done the research and I
5  do see that he has two strike allegations.  I tried to
6  explain that to Mr. Hart and gone over everything.
7       THE DEFENDANT:  And I asked him, can you show me
8  which case the second one is, it has only be one and it
9  was 25 years ago.
10      MS. COLE-WILSON:  So --
11      THE DEFENDANT:  She said -- she -- she told me
12 the second one she couldn't show a conviction on the
13 second one, your Honor.
14      THE COURT:  Okay.  You are represented by an
15 attorney.  Allow her to speak for you.
16      MS. COLE-WILSON:  I have done the research.  I do
17 show two strike allegations.  I -- I tried to explain that
18 to Mr. Hart.  I have talked to him about trying to resolve
19 the case.  And about his exposure so I just want to put
20 that on the record.
21      THE COURT:  Okay.
22      MR. MCMENOMEY:  I think perhaps the Court -- we
23 shouldn't waive a formal reading of the complaint prior to
24 the prelim.
25      THE DEFENDANT:  But, again, you are telling me
26 that I had second case but you couldn't show me where the
27 conviction was.
28      MS. COLE-WILSON:  I showed you --

PEOPLE vs JOSEPH PHILLIP HART
Case No. SCUK-CRCR-20-34746         Vol 5 of 23                                    76

1    THE DEFENDANT:  I told you -- no.  Can you show

2   me?  You gave me a false report.  You said I have some

3   kind of sexual assault case which, your Honor, I do not

4   have.

5    THE COURT:  Okay.  Mr. Hart, I am going to read

6   off the charges in the felony complaint filed April 2nd of

7   this year.

8    In Count 1 you are charged with on or about the

9   30th day of March 2020 committing the crime of assault

10  with a deadly weapon, a felony violation of Section 245 of

11  the California Penal Code.  It's alleged that you

12  willfully and unlawfully committed an Assault upon Jairen

13  Sylvester with a deadly weapon; to wit, a knife.

14   There is a first strike allegation which charges

15  you with before the above offense having been committed

16  you were convicted of armed robbery causing great bodily

17  injury in the circuit court of Illinois in the County of

18  Cook on or about the 26th day of August 1996.

19   There's a second strike allegation which alleges

20  that you were convicted of criminal sexual assault by

21  force in the circuit court of state of Illinois, county of

22  Cook on or about the 12th day of April 1995.

23   THE DEFENDANT:  That's not true, your Honor.

24  That's what I am saying.  That is not true.  I went to

25  prison for armed robbery, your Honor.  Your Honor, I

26  stopped the next robbery that happened at the place seven

27  years later.  I have never been convicted of that.  You

28  will see I have no -- never been registered.

Superior Court of the State of California
County of Mendocino                    January 11, 2021 11:20AM

PEOPLE vs JOSEPH PHILLIP HART
Case No. SCUK-CRCR-20-34746          Vol 5 of 23                          77

```
 1              Your Honor, if you were to look into this, if you
 2     were to ask for what my conviction was, that's never
 3     happened.  Why they have that, I don't understand.  I am
 4     telling your Honor -- your Honor, I have no conviction on
 5     that.  At that time I said I was convicted for armed
 6     robbery.  And -- and in 1996 --
 7              THE COURT:  Mr. Hart --
 8              THE DEFENDANT:  -- when I was 17 years.
 9              THE COURT:  -- you are potential incriminating
10     yourself with everything you are saying.
11              THE DEFENDANT:  I understand that.  But, your
12     Honor, you are telling me I have this but I don't.
13              MS. COLE-WILSON:  I told him, if it's not true
14     then I will be able to prove it.
15              THE DEFENDANT:  Can you tell me what I was
16     convicted on?  Find the conviction?  There was -- there
17     was -- what was the sentence.  That's not true.  I am
18     telling you that's not -- what was I convicted of?
19              THE COURT:  Mr. Hart --
20              MR. MCMENOMEY:  Okay.  If I can have just a
21     moment with counsel.
22              Counsel, can I have a moment, please?
23              MR. MCMENOMEY:  Okay.  Your Honor.
24              THE COURT:  Yes.
25              THE DEFENDANT:  It's not true.  I feel like I am
26     being railroaded here.
27              MR. MCMENOMEY:  We just need another minute or
28     two your Honor.
```





**COUNTY OF MENDOCINO**

OFFICE OF THE
**PUBLIC DEFENDER**
175 S. School Street
Ukiah, CA 95482
(707) 234-6950
(707) 463-5435 Fax
publicdefender@mendocinocounty.org

**Jeffrey A. Aaron**
Public Defender

**Jan Cole-Wilson**
Assistant Public Defender

**Eric O. Rennert**
Chief Deputy Public Defender

**Justin Cozad**
Chief Investigator

□ **COAST BRANCH OFFICE**
700 S. Franklin
Room 154
Fort Bragg, CA 95437
(707) 964-0606
(707) 961-2407 Fax

July 27, 2020

**LEGAL MAIL**

Joseph Hart
951 Low Gap Rd
Ukiah, CA 95482

RE:   SCUK-CRCR-20-34746

Dear Joseph:

I am writing to you, even though I know you will not get this until after our PTC on July 28, 2020 as the jail is holding documents for 24 hours due to Covid-19. I want to put into writing what I believe is important for you to consider as your Jury Trial date quickly approaches.

The prosecution has made its final offer to settle your case: If you agree to plead "no contest" to Penal Code 245(a) (1) (assault with a deadly weapon, not a gun), they will stipulate to the low term of 2 years, with one strike. The strike will double the 2 years for a total term of 4 years. You will receive credits at 85%, due to the strike.

I want you to keep in mind that you are facing (without the second strike allegation) a term of 4 years for the Penal Code 245(a) (1), doubled for a total term of 8 years, at 85%. If they are able to prove the second strike, <u>you are subject to 25 years to life.</u> I have not yet received confirmation of the second strike. *— And Never Did!*

For self-defense, the burden is on the defendant to raise a reasonable doubt regarding guilt so you would have to testify. I am worried that you have limited ability to remain calm and collected. I do not have confidence that you can withstand the prosecution's cross examination of you without losing your cool and blowing up. Even when I attempt to play the devil's advocate you are very agitated and become aggressive. You also have difficulty staying focused, on point, and what is relevant. The prosecution will use any inconsistencies in your statements, no matter how

*↑ Was well Aware of my Health & Epileptic issues*
*Solitary - etc*

*Exhibit TC 30p57*

```
 1   conviction that is 20 years old certainly meets any
 2   threshold of remoteness.  And if you go through all of
 3   the case law that's cited in my motion in limine, there
 4   are so many cases that indicate 20 years is at least
 5   the first step for showing that a -- a -- a case for a
 6   conviction that is of this nature and this old should
 7   be highly looked at before a person who has not had any
 8   felonies and who has not committed any serious crimes
 9   in between should not be impeached with that.
10            So I think under these circumstances and the
11   fact that my client was only 18 years old and has
12   committed no other felonies in the last 24 years, I
13   think under the standards set forth here, this should
14   be granted if he chooses to testify, of course.
15            THE COURT:  I had a question.  There's a
16   second strike allegation which is a crime of sexual
17   assault by force.
18            MR. MCMENOMEY:  I can address that at this
19   time.
20            MS. COLE-WILSON:  Thank you.
21            MR. MCMENOMEY:  While it does show up on his
22   rap sheet from Illinois, when I received the certified
23   copy of his conviction this week from Illinois, it
24   shows not guilty.  As such, I'm moving to dismiss at
25   this time the second strike allegation.
26            THE COURT:  Okay.  Motion's granted.
27            So this is no longer a 25-to-life case.
28            MR. MCMENOMEY:  Correct.
```

*Exhibit 6 C's 31 pg 5*

# MENDOCINO COUNTY SHERIFF'S OFFICE
## Corrections Division

*In my locked cell*

## DISCIPLINARY HEARING BOARD REPORT #1020-30

Name of Inmate: Hart, Joseph          A#39961

Date of Incident: 10-11-20          Time of Incident: 2222

Disciplinary Hearing Date: 10-13-20      Time: 1051      Inmate in Attendance: ☒ YES ☐ NO

Rule Violation Level 3 #21: Intentionally placing or throwing, or causing to be thrown, upon the person of another, any mixture of human excrement or another, any mixture of human excrement or other bodily fluids or substances.

INMATE COMMENTS: CD Dye and I went to Inmate Hart's cell. I told him I was there to talk to him about the incident that took place on 10-11-20 at 2222 hours, and read the charge staff accused him of violating. I told him that I noted he denied the charge and refused to sign the rule infraction report. I asked him to tell me about the incident. Hart directed the following question to me, "Ok first off, what the fuck would you do?" I told Hart, I was not going to answer his hypothetical question and he and asked me the same question again. Hart became angered and raised his voice in a very aggressive tone as he asked, "Fuck that, you are going to answer my question." Again, I told him I was here for him to tell me about the incident in question and if he did not want to tell me about the incident, I was finished talking to him. Hart was insistent to get an answer to the question. He would not back down. He continued his aggressive demeanor and then directed his question to CD Dye. When Hart did this, I walked away, terminating the disciplinary hearing.

☒ You committed the act(s) as charged.
☐ You committed the following rule infraction(s).
☐ You did not commit a prohibited act(s).

*After SST, Knapp was told this guy tried to throw urine on me before ↑*

***The action taken is based on the following information:***
* A review of the Rule Infraction Report.
* A review of the Incident Report.
* A review of the inmate's disciplinary history, during this incarceration.
* The inmate comments during the disciplinary hearing.
* The inmate did not provide a witness notice at the time of the hearing.
* Video surveillance footage of the incident.

**ACTION TAKEN**: Disciplinary Separation: 20-Days (no telephone, no commissary, no visiting).

Start: 10-16-20 0001          End: 11-02-20 2359

Hearing Deputy:_____Sgt. Knapp_____ ID # 2416_____ Date/Time: 10-13-20 @ 1051
DBC Chairman:_____Sgt. Knapp_____ ID# 2416_____ Date/Time: 10-13-20 @ 1051
Decision served on Inmate by:_Sgt. Knapp_____ ID#2416_____ Date/Time: 10-13-20 @ 1800

You have the right to appeal this decision. Should you wish to appeal, your written appeal must be submitted within 24 hours of the time this notice of decision was served upon you. Failure to submit an appeal within this time limit is grounds for denying the appeal.
Form 416                                                                                    04/02/2004

*2nd disciplinary ticket Found Guilty*





# MENDOCINO COUNTY SHERIFF'S OFFICE
## Corrections Division

## *WITNESS REQUEST NOTICE*

This form must be submitted to the Disciplinary Hearing Deputy at the time of your disciplinary hearing. Failure to submit this form on time and properly completed may result in the Disciplinary Hearing Deputy refusing to call the witnesses you request.

Instead of calling witnesses to be physically present at the hearing, you may have the witnesses submit a written statement.

**Here Is A List Of Persons I Wish To Appear At My Disciplinary Hearing:**

*[handwritten note at right: ← Sgt. Refused to talk to me when I asked]*

Name: Sst. McCutcheon —

Testimony: I Had previous experiences with this inmate throwing Bodily fluids at me. On -6-25-20 He reviewed cameras e saw this to be the case — (Report # DBC#0620-30)

Name: Joseph Hart

Testimony: I did not place or throw Bodily fluids I Did spray disinfect After inmate Flores I said He threw urine at Me - this is My statement! This hAs happened 2x and Both times Correctional staff did Nothing. 2x previous! I have the records!

Name: _____

Testimony: _____

_____

_____

_____

Name: _____

Testimony: Why Refuse to speak to Another Sgt???

_____

_____

_____

Print: Joseph Hart          [signature] Joseph Hart          10-13-21

Inmate's Name                Inmate's Signature

Form 415                                                    3/22/04

*Exhibit C. 31, pg 3*

# MENDOCINO COUNTY SHERIFF'S OFFICE
## Corrections Division

## DISCIPLINARY HEARING BOARD REPORT #1020-93

Name of Inmate: Hart, Joseph #39961          A#39961

Date of Incident: 10-25-20          Time of Incident: 2026

Disciplinary Hearing Date: 10-27-20    Time: 0926    Inmate in Attendance: ☒ YES ☐ NO

**Rule Violation Level 2 #02:** Refusing to obey an order from Corrections Division Personnel, or any other member of the Mendocino County Sheriff's Office.

INMATE COMMENTS: When asked about his rule violation for refusing to obey an order, Inmate Hart told me, "The carvings in the wall are from 2006." I told him the rules violation was not about the carvings on the wall of his cell, but rather the pen markings. He then told me that it was not him and that he does not write on the walls. He had nothing else to add.

☒ You committed the act(s) as charged.

☐ You committed the following rule infraction(s).

☐ You did not commit a prohibited act(s).

### *The action taken is based on the following information:*
* A review of the Rule Infraction Report.
* A review of the Incident Report.
* A review of the inmate's disciplinary history, during this incarceration.
* The inmate comments during the disciplinary hearing.
* The inmate did not provided a witness notice at the time of the hearing.
* Hart was assigned to B-Module Cell-16 from 10-11-20 through 10-26-20.

**ACTION TAKEN**: Disciplinary Separation: 5-Days

Start: 11-03-20 0001          End: 11-07-20 2359

| | | | |
|---|---|---|---|
| Hearing Deputy: | Sgt. Knapp | ID # 2416 | Date/Time: 10-27-20 @ 0926 |
| DBC Chairman: | Sgt. Knapp | ID# 2416 | Date/Time: 10-27-20 @ 0926 |
| Decision served on Inmate by: | Sgt. Knapp | ID#2416 | Date/Time: 10-27-20 @ 1000 |

You have the right to appeal this decision. Should you wish to appeal, your written appeal must be submitted within 24 hours of the time this notice of decision was served upon you. Failure to submit an appeal within this time limit is grounds for denying the appeal.

Form 416                                                                                                    04/02/2004

*2 weeks later — from 10/11/20 incident*
*Initially found guilty — but overturned*



EXHIBIT (25) PS4

# MENDOCINO COUNTY SHERIFF'S OFFICE
## Corrections Division

DBC# 1020-93 HART

## DISCIPLINARY HEARING BOARD APPEAL

**Appeal Section:**

State your reasons for appeal of the decision made by the Disciplinary Board Chairman. The appeal must be based on either a due process violation and/or appropriateness of the disciplinary sanction.

**Inmate's Statement:** This Ticket and the disciplinary Action is completely baseless and without merit. I was placed in B-16 by correctional staff. As with every single cell in this jail there is markings and writings. On 10-25-20 the C/O came by and said the cell walls needed to be cleared of markings. I tried to explain the markings were actually engraved in the wall and not "ink" marks. Further more the said markings were "Pomo" "wailak" "Indian pride" "Vice Lord" "VLN" markings that I have NO nor have I ever had affiliations with. from "E Zell" was here "14-16" to "Meinecke 13" — It certainly was not me! When I tried to explain, the deputy told me I was refusing & left. there is No Merit to this!

Inmate's Name (Print): Joseph Hart      A# 39961

Inmate's Signature: Joseph Hart      Date/Time: 10-27 4:20 pm

Receiving Corrections Deputy: I. Williams   I.D.# 2754   Date/Time: 10/27/20 - 2023

**Based on my review:** I served the discipline anyway

[X] No due process violations and disciplinary penalties are justified, ← But I already served it.

or

[ ] I reverse or modify the decision of the Disciplinary Board Chairman as follows:

[X] **LEVEL TWO APPEAL:**
Corrections Lieutenant: Lt Bedun Serg    Date/Time: 10/27/20 1502

[ ] **LEVEL THREE APPEAL:**
Corrections Commander: _____    Date/Time: _____

Form 417      7/2019

Exhibit # C-32, PS1

1    aggravated.

2             I will submit it on that.

3        THE COURT:  Okay.  Thank you.

4        One point of clarification, the PSI contains the

5    second strike allegation and the Court's memory of the

6    second strike is that it was not Mr. Hart at all. ✱✱✱

7        MR. MCMENOMEY:  No, that's not, in fact, correct.

8        MS. COLE-WILSON:  It was --

9        MR. MCMENOMEY:  The Court should not in any

10   fashion consider the second strike allegation.  Upon

11   further research with the Illinois court system, the

12   People determined that it was not valid.  It is not a

13   second -- he does not have a second strike.  He only has

14   one.  I would ask the Court to -- to strike out the second

15   strike allegation, any reference to it or any

16   consideration of it.

17       THE COURT:  Yes, I am not considering it.  I just

18   want it removed from the PSI.   ← Did NoT happen!

19       MR. MCMENOMEY:  Fine.

20       THE COURT:  And the prison packet.  It should not

21   be included in there. ✱✱✱  ← ET WAS

22       MS. COLE-WILSON:  Right, exactly.

23       THE COURT:  Then at this time Mr. Hart is

24   ineligible for probation given the two or more felonies,

25   the nature of the offense as well as the strike

26   allegation.  Probation is denied.

27            In looking at the factors in aggravation, I find

28   as an aggravating factor, there was a --

I.A

Superior Court of the State of California
County of Mendocino                    January 11, 2021 11:20AM

*(figss)*

CALIFORNIA DEPARTMENT of
**Corrections and Rehabilitation**

*Exhibit #C.33*
*BS*

# CLASSIFICATION COMMITTEE CHRONO

**Inmate Name:** HART, JOSEPH P.

**CDC#:** BM4359

**Control Date:** 01/20/2024

**Date:** 12/29/2020

**Date of Birth:** 05/05/1977

**Control Date Type:** Earliest Possible Release Date

**Hearing Date:** 12/18/2020

**Committee Type:** Initial Unit Classification Committee

**Hearing Type:** Initial UCC; VIO Case-by-Case; Transfer

**Correctional Counselor:** J. Nuno

**STATIC CASE FACTORS**

**CRITICAL CASE FACTORS**

**CLINICIAN COMMENTS**

**COMMITTEE ACTION SUMMARY**

VIO REVIEW: AFFIX VIO
REFER TO CSR FOR VIO DETERMINATE AND TRANSFER (Adverse). RECOMMENDATION TO CCC II NDPF/SATF II NDPF. RETAIN ON FACILITY B PENDING
TRANSFER. ESTABLISH MED A AND A2/B EFFECTIVE 12/18/2020. ESTABLISH MED A AND A2/B UPON TRANSFER. DENY GATE PASS, BACK DOCK AND
WORKCHANGE. CLEAR. DOUBLE CELL/DORM CLEAR.

**COMMITTEE COMMENTS**

*Never waived this*

Inmate HART, JOSEPH BM4359, appeared for UCC and elected to waive his 72 hour notice for today's UCC for the purpose of an INITIAL/TRANSFER
(Adverse)/VIO REVIEW during a pre-committee interview. HART was informed of his rights to appeal. HART is not a participant of the Mental Health
Delivery System (MHDS) and has a TABE score of N/A.
COMMITTEE NOTES: HART is a 43 year old First Termer received into CDCR on 11/05/2020 from Mendocino County with an offense of PC 245 (a) (1)
Assault with a Deadly Weapon. HART received a term of 6 years. HART was endorsed to NKSP MSF by CSR on 12/09/2020. HART has a CLS of 34.
Custody Status was reviewed and MED B Custody is appropriate.

CASE FACTORS: ARSON: None. SEX: See Below. ESCAPE: None. VIO: VIO Review noted below. Enemies: None. Gang: None. HWD: None. Archive:
None. Confidential file: None. Registrations: None. CLLR: Mendocino County. USINS: Clear. Family Visiting: Clear. CCR3173.1: Eligible. HART's next
anticipated review is on 11/05/2021.
*→ 11/05/21 - Long time for review ★ ★★★*

VIO Review: 3/30/2020 PC187 Att Murder arrest and convicted with PC 245 (A) (1) Assault with a Deadly Weapon. Information was obtained from the
Mendocino County Probation Officerźźźs Report dated 10/23/2020. Circumstances of the offense: The victim and HART are known to each other as they
were friends and the victim let Hart live with him for several days because HART was homeless. The victim told HART he needed to leave because
the victim needed his space. HART asked the victim to drive him to Willits and the victim stated he would. As they were driving HART asked to pull over
because he needed to urinate, however the victim told him, we are close to Willits and he needed to hold it. HART got upset and began pushing the
victim up against the driver door. HART started to punch the victim and observed a knife in HART's hand. That is when he realized he was being stabbed
by HART. HART continued to tell the victim to get out of the truck. The victim was able to pull over and ran to a Caltrans vehicle that was parked on the
side of the road. As a result of the injuries, the victim was transported to the hospital where he had to be admitted for a couple of days. Extent of
Victims Injury: The victim suffered injuries severe enough to be transferred to a higher level of medical care (Hospital) by EMS. The victim suffered a
laceration to the right chest; a laceration to his lower right leg; laceration to his forehead and a collapsed right lung. Rational for committing the
Offense: Anger, HART was upset that the victim wouldn't pull over on the side of the road. Criminal Intent vs Neglect: The incident was done
intentionally and not a case of neglect. History of committing similar acts: HART was convicted of Battery in 1994 in Illinois, circumstances unavailable
and convicted with Aggravated Crime Sex Assault/Bodily Harm in 1994 in Illinois, circumstances unavailable. Safety of public, staff and Inmates: The
victim suffered injuries severe enough to be transferred to a higher level of medical care (Hospital) by EMS. HART has an extensive history of Assault
convictions noted. UCC believes that HART provides a greater risk than any other inmate with same or similar case factors due to showing a propensity for
violence. UCC has reviewed the totality of the incident and deems this Inmate an unacceptable risk if placed in a program in the community or if housed
with other inmates in a minimal supervised setting. HART has proven to be a threat to the safety of the public and inmates in a minimal supervised
setting. Based on the above, UCC elects to affix the VIO and refer case to the CSR with recommendation to apply the administrative determinant of VIO
and the mandatory minimum score factor of 19.

CASEWORK FOLLOW-UP: 4/3/1996 Armed Robbery conviction in Illinois, Case# 63F00550354001. Sentenced to 161 days in DOC. Arrest reports have
been ordered and requested Illinois archive. Will be reviewed when received.
9/18/1994 Criminal Sex Abuse/Victim 9-16 arrest. Dispo: Direct Filed with Court. Case# Y437232. 12/3/1994 Crim Sex Assault/Force arrest. Convicted
with Agg Crim Sex Asslt/Bodily Harm Case# 95CR0013601. Arrest reports have been ordered and an R-Suffix review will be conducted once received.
4/12/1995 Kidnapping conviction. Arrest reports were ordered and will be reviewed when received.
TRANSFER: UCC notes HART endorsement to NKSP MSF NDPF is no longer appropriate. UCC recommends affixing the VIO determinate and a transfer to
CCC II NDPF/SATF II NDPF.
High- Sec rating Raised my security & Prison level After review of all case factors HART has no history of in cell violence or predatory behavior. Today's UCC elects to continue HART Double Cell/Dorm

Never been convicted of Assault - Never convicted for any of




**CALIFORNIA DEPARTMENT** *of*
**Corrections and Rehabilitation**

# RULES VIOLATION REPORT

| CDC NUMBER<br>BM4359 | INMATE'S NAME<br>HART, JOSEPH P. | EPRD<br>01/20/2024 | FACILITY<br>NKSP-Facility C | HOUSING LOCATION<br>NKSP-C - C 001 1 -<br>000109L |
|---|---|---|---|---|
| VIOLATION DATE<br>01/29/2021 | VIOLATION TIME<br>11:30:00 | VIOLATION LOCATION<br>NKSP-Facility C - DORM | | WITH STG NEXUS<br>No |

Did the reporting employee ensure the inmate understands (to the best of his/her ability) the consequences of the continued misconduct? N/A

Did the reporting employee take into consideration the severity of the inmate's disability and the need for adaptive support services when determining the method of discipline? N/A

CIRCUMSTANCES OF VIOLATION

On Friday, January 29, 2021, at approximately 1130 hours, information in the form of a CDCR- 128C Medical Evaluation Chrono was received from Physician N. Odeluga indicating inmate Hart, BM4359, sustained a bone fracture to the right hand 3rd metacarpal.

On Friday, January 29, 2021, at approximately 0807 hours, while assigned to C1-A Floor officer #1, I was conducting morning meal, I heard commotion coming from the bottom tier A section near bunks 102 and 103 where I observed inmate HENSON BM3588 (FCD1-206L) and inmate HART BM4359 (FCD1-109L) striking each other in the facial and upper torso area. I utilized my Public Address (PA) system for all inmates to get down. All inmates got down with the exception of inmates HART and HENSON. Simultaneously I activated my Personal Alarm Device (PAD) and via institutional radio advised Central Control I had a "code 1, one on one Charlie 1- Aside." I ordered a second time for all inmates to get down. Both inmates HART and HENSON complied with my orders and assumed a prone position. Upon arrival of yard staff they approached the incident utillizing a safe pathway and placed both inmates in handcuffs while I maintained security and observation of the inmates in the dayroom. Yard staff searched and escorted both inmates out of the building with no further incident. This concludes my involvement in this report.

| REPORTING EMPLOYEE<br>M. Ruiz | TITLE<br>CO | ASSIGNMENT<br>C1-A FLOOR<br>#1 | RDO<br>T/W | DATE:<br>01/29/2021 |
|---|---|---|---|---|

| RVR LOG NUMBER: 000000007059950 | VIOLATED RULE NUMBER: 3005(d)(1) |
|---|---|
| SPECIFIC ACT: Fighting | |

CLASSIFICATION

| LEVEL: Serious | OFFENSE DIVISION: Division D |
|---|---|
| REFERRED TO: Senior Hearing Officer | FELONY PROSECUTION LIKELY: No |

CDC NUMBER: BM4359 NAME: HART, JOSEPH P. LOG#: 000000007059950     Page 1 of 4

STATE OF
**MEDICAL REPORT OF INJURY**
**OR UNUSUAL OCCURRENCE**
CDCR 7219 (Rev. 01/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

EXH.01
C. 31 PS. 2

Page 1 of 2

| NAME OF INSTITUTION | LOCATION OF EVALUATION | | DATE |
|---|---|---|---|
| NKSP | TTA | | 1/29/21 |

REASON FOR REPORT  ☐ ALLEGATION   ☐ ON THE JOB INJURY   ☐ USE OF FORCE   ☐ INJURY   ☐ OTM RETURNS
☒ UNUSUAL OCCURRENCE   ☐ PRE AD/SEG ADMISSION   ☐ R&R   ☐ OTHER

| NAME | LAST | FIRST | CDCR NUMBER | PERNR / INST. ID # | VISITOR ID # (SOMS) |
|---|---|---|---|---|---|
| | Hart | Joseph | BM4359 | N/A | N/A |

| PLACE OF OCCURRENCE | DATE OF OCCURRENCE | TIME OF OCCURRENCE | TIME SEEN | RN NOTIFIED TIME | PHYSICIAN NOTIFIED TIME |
|---|---|---|---|---|---|
| C1-A | 1/29/21 | 0807 | 0808 | 0807 | N/A |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"No comment" ← I called OmbudsMAN & Filed Grievnce

| INJURIES FOUND? | YES / NO |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| Swollen Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Pre-Existing | 16 |
| Other | 17 |
| | 18 |

| Chemical Agent Exposure? | YES / NO |
|---|---|
| Chem. Agent Exposure Area | EX |
| Decontaminated w/ Water? YES / NO / REFUSED | |
| Decontaminated w/ Air? YES / NO / REFUSED | |
| Self-decontamination Instructions given ? YES / NO | |
| Staff issued Exposure packet ? YES / NO | |

Q 15 min. check times

| Initial | 1st Check |
|---|---|
| N | |
| 2nd Check | Final |
| | A |

TIME/DISPOSITION
0839 / Taken to TTA

Right   Left   Front   Back

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN) | PERNR / INST. ID # | RDOs | ASSIGNMENT AREA |
|---|---|---|---|
| C. Lopez RN | 1161360 / 1161095558 | SAT/SUN | C-clinic |

**Adventist Health Bakersfield**

**2615 Chester Avenue, Bakersfield, CA 93301**

**661.395.3000**

*EXhibiT*
*C. 35, pg!*

**Emergency Discharge Summary**

Name:HART, JOSEPH PHILLIP          DOB: 05/05/1977

MRN:103-545-19   ACCT#: 37700901903          *DBC 3/11/21*
Admission Date:03/11/2021 15:46:00

Discharge Instructions printed on: 03/11/2021 18:33:06
Discharge Diagnosis:  Assault; Facial contusion; Left rib fracture
Discharge Disposition:

Providers:
  Loewen, DO, Mark Jeffrey

HART, JOSEPH PHILLIP  has been given the following list of patient education materials, prescriptions and
follow-up instructions:
**Follow-Up Care Information**

Important: We examined and treated you today on an emergency basis only. This was not a substitute for, or an
effort to provide, complete medical care. In most cases, you should let your family doctor check you again.
**Take this discharge instruction sheet to your follow up doctor.** Tell your doctor about any new or
continuing problems. We may not recognize and treat all injuries or illnesses in one Emergency Department
visit.  Please follow these instructions:

**Follow-Up Instructions**
• Return here if your condition worsens

*Received*
*MAR 1 2 2021*
*Medical Records*

03/11/2021 18:33
1 of *5*

Name HART, JOSEPH PHILLIP  *3/11/21*
FN 37700901903
MRN 103-545-19

*4. C*

*[handwritten annotations in margins: "Did not get Final report till 5/29/21", "LT. Joven is the investigation LT. on this.", "Exhibit C-35", "Filed today 2/11", "The threat of SBI to HART was why they shot me: 40mm yet it was HART that was Shot A"]*

## CALIFORNIA DEPARTMENT of
## Corrections and Rehabilitation

# RULES VIOLATION REPORT

| CDC NUMBER BM4359 | INMATE'S NAME HART, JOSEPH P. | EPRD 01/20/2024 | FACILITY NKSP-Facility B | HOUSING LOCATION NKSP-B - B 002 2 - 206001L |
|---|---|---|---|---|

| VIOLATION DATE 03/09/2021 | VIOLATION TIME 11:00:00 | VIOLATION LOCATION NKSP-Facility B - YARD | WITH STG NEXUS No |
|---|---|---|---|

Did the reporting employee ensure the inmate understands (to the best of his/her ability) the consequences of the continued misconduct? N/A

Did the reporting employee take into consideration the severity of the inmate's disability and the need for adaptive support services when determining the method of discipline? N/A

CIRCUMSTANCES OF VIOLATION

On Tuesday, March 09, 2021, at approximately 1100 hours, while assigned as Facility "B" Yard Officer #1, Officer R. Dubose Facility "B" Yard Officer #2 and I were monitoring the Recreational Yard for Facility "B" Building #2. When I turned my attention to the ADA bench located on the West side of the yard. I observed inmates NEWTON (BM5118, FBB2-244L), GRENHAM (BN0090, FBB2-130U) and GAVIN (BM4060, FBB2-233U) striking inmate HART (BM4359, FBB2-206L) with their fists in the upper torso and facial area. HART immediately responded by striking inmate NEWTON in the upper torso and facial area with his fist. I immediately ordered all inmates to get down. All non-involved inmates complied with the orders except inmates NEWTON, GAVIN, and GRENHAM who continued to strike HART with their fists in the upper torso and facial area as HART continued to strike NEWTON in the upper torso and facial area. I announced a code 1, 3 on 1 on Facility B Recreational Yard via institutional state radio. I retrieved the 40MM Single Shot Launcher from the Yard's secured weapons locker located under the B Yard Observation Tower. Officer R. Dubose retrieved the MK-46 Oleoresin Capsicum High Volume Streamer and waited for responding staff. Officer R. Dubose, Officer R. Chavez (Sec Pat #3), Officer J. Gastelum (Sec Pat#4) and I formed a skirmish line underneath the Yard's Observation Tower and advanced the skirmish line towards the incident area utilizing a clear safe path while continuing to order NEWTON, GAVIN, GRENHAM, and HART to get down, with negative results. Inmates NEWTON, GAVIN and GRENHAM continued to strike HART in the upper torso area with their fists. Due to the imminent threat of Seriously Bodily Injury to HART as he was continuing to receive strikes from inmates NEWTON, GAVIN and GRENHAM to his head and upper torso area, and with their fists I aimed at the Zone one (1) right thigh area of inmate GAVIN and discharged (1) 40mm Exact Impact Sponge Round from the 40MM Single Shot Launcher from approximately 45 feet away of the incident. Due to the velocity of the round and inmate GAVIN's sporadic movement I am unable to identify where the round struck or laid to rest. Simultaneously Officer R. Chavez utilized (1) 5440 Launchable Flameless Expulsion OC (Oleoresin Capsicum) Grenade from approximately 45 feet from the incident by tossing it under hand towards the combatants landing on the ground detonating approximately (2) feet from the combatant's feet. Both uses of force did not have the desired effect as inmate NEWTON, GAVIN and GRENHAM continued striking inmate HART in the upper torso and head area with both their fists, while HART continued to strike inmate NEWTON in the facial area. Due to the imminent threat of Seriously Bodily Injury (SBI) still being present from the continuous strikes NEWTON, GAVIN and GRENHAM were delivering with their fists to the upper torso and facial area of HART as HART continued to strike inmate NEWTON in the facial and upper torso area. I removed the exhausted round from the 40MM Single Shot Launcher and inserted a new 40MM Exact Impact Sponge Round. The threat of Seriously Bodily Injury (SBI) occurring to HART was still present as NEWTON, GAVIN, and GRENHAM continued striking him in his upper torso and head area. I aimed at GAVIN's right thigh zone one (1) and discharged a second 40mm Exact Impact Sponge Round from the 40MM Single Shot Launcher from approximately 45 feet away from the incident. Due to the velocity of the round and GAVIN's sporadic movement I am unable to identify where the round struck or laid to rest. This use of force did have the desired effect as inmate NEWTON, GAVIN, and GRENHAM ceased their attack on inmate HART and got down on the ground in a prone position, HART ceased his attack on inmate NEWTON and got down on

*[handwritten at bottom: "the 40mm sponge round hit me in my left thigh & possibly my left ribcase —"]*

CDC NUMBER: BM4359 NAME: HART, JOSEPH P. LOG#: 000000007068772            Page 1 of 4

*EXHIBIT E, SBJ, p.52*

**California Correctional Health Care Services**

**Patient Discharge Instructions**

**Name:** HART, JOSEPH PHILLIP        **Current Date:** 03/12/21 13:08:51

*Oh - heres the broken ribs.....+ I could barely walk due to being shot w/a 40mm*

**DOB:** 05/05/77        **CDCR:** BM4359

**Immunizations Provided:**

**Immunization(s) Given This Visit**

Name                                                                Date

tetanus/diphth/pertuss (Tdap) adult/adol              01/29/21 09:00:00    *1st*

*AT medical - had multiple from getting jumped 1/29/21*

**Reason For Visit:** 1:Seizure; Fracture of rib; Left eye trauma; Pneumothorax; Trauma   *2nd  & 3/9/21    3-9-21*

**Recommendations and arrangements for future care**

*All due to Mendo sending those files !!*

**Devices/Equipment:**

None

<u>Provider Comment:</u>

**MEDICATIONS:**
During the course of your visit your medication list was updated with the most current information.

**Start Taking These Medications:**
**acetaminophen-codeine 300-30 mg Tab (03701) (acetaminophen-codeine 300 mg-30 mg)**
  • For <u>Left eye trauma</u>, Trauma: Take 1 tab, by mouth twice a day in the morning and in the evening from a nurse as needed for pain
  • <u>Start Date:</u> March 11, 2021    *- 2nd*
  • Take for: 3 day(s)
*Comments:* ***Crush and Float***

*3/9 - happened*
*3/11 - went to Bakersfield for ribs*
*3/12 - had seizure & sent to medical*

**docusate**
  • For <u>Left eye trauma</u>, Trauma: Take 1 cap (Total Dose = 100 mg), by mouth twice a day on your own as needed for constipation
  • <u>Start Date:</u> March 11, 2021

*✗ STATE BAR Gets ALL this - so does "writ of mandate"   + 8 civil firms*

Outpatient Progress Note                    *Exhibit C.35*                    HART, JOSEPH PHILLIP - BM4359

Patient had altercation on 3/9/2021, left periorbital bruising, x-ray showed
irregularity, but no obvious fracture, patient been transferred to ER community
Hospital, communicated with the hospital, need CT scan orbits to rule out fracture.
Ordered:
acetaminophen-codeine, 1 tab, Oral, Tab, BIDAM+PM, PRN pain, Administration
Type DOT, Order Duration: 3 day, First Dose: 03/11/21 19:00:00 PST, Stop Date:
03/14/21 18:59:00 PDT
docusate, 100 mg, Oral, Cap, BID-KOP, PRN constipation, Administration Type KOP,
Order Duration: 7 day, First Dose: 03/11/21 14:00:00 PST, Stop Date: 03/18/21
13:59:00 PDT
Orders:
    Transfer to Higher Level of Care

CLINICAL INDICATION: "pain s/p trauma"
COMPARISON: None
TECHNIQUE: Routine technique

FINDINGS:

No focal consolidation. No overt
pulmonary edema.

The cardiomediastinal silhouette is within
normal limits for size.

There is a mildly displaced left lower rib
fracture, mapping to the ninth or
10th rib. Mild bony irregularity of the 2
superiorly adjacent ribs, without
discrete fracture line.

In this setting, a radiodense line in the
left lung apex that parallels the
chest wall could represent a very small
apical pneumothorax, although this is
considered nonspecific, and may reflect
bony margin.

IMPRESSION:

1. Mildly displaced left lower rib fracture.,
Mild bony irregularity of the 2
superiorly adjacent ribs, without discrete
fracture line.

2. Possible associated small
pneumothorax, although this is not
definitive.
Recommend short interval follow up
radiograph to ensure stability/resolution.

*[Handwritten note:]* "I received these on 10/21/21. I previously initially was under the impression I had 2 ribs broke. This says 1 and 2 ribs having "irregularity."

I do believe, that after numerous scans, "pneumothorax" was decided "Negative".

**Encounter Info:** Patient Name: JOSEPH HART,DOB: 05/05/1977,CDCR: BM4359,FIN: 10000003212229225BM4359,Facility:
NKSP,Encounter Type: Institutional Encounter

**Completed Action List:**
* Perform by Patel, Vijay CP&S on March 11, 2021 15:43 PST
* Sign by Patel, Vijay CP&S on March 11, 2021 15:43 PST
* VERIFY by Patel, Vijay CP&S on March 11, 2021 15:43 PST

Result type:        Outpatient Progress Note
Result date:        March 11, 2021 15:33 PST
Result status:      Auth (Verified)
Result title:       Pain back
Performed by:       Patel, Vijay CP&S on March 11, 2021 15:43 PST
Verified by:        Patel, Vijay CP&S on March 11, 2021 15:43 PST

Printed by: Cano, Carmen HRT I
Printed on: 10/21/2021 7:08 PDT                                    Page 2  of 2

BM 4359

CT Chest/Abdomen/Pelvis W Contrast                    HART, JOSEPH PHILLIP - 103-545-19
* Final Report *

BM4359

Exhibit
C35
B.5

| | |
|---|---|
| Result Type: | CT Chest/Abdomen/Pelvis W Contrast |
| Result Date: | March 11 2021 17:41 PST |
| Result Status: | Auth (Verified) |
| Result Title: | CT Chest/Abdomen/Pelvis W Contrast |
| Performed By: | Mendoza, Allison M on March 11 2021 17:41 PST |
| Verified By: | Ash, DO, Lorraine Marjorie on March 11 2021 18:28 PST |
| Encounter info: | 37700901903, 85, Emergency, 03/11/2021 - |

## * Final Report *

**Reason For Exam**
Trauma

**REPORT**
CT Chest/Abdomen/Pelvis W Contrast

CLINICAL INDICATION:
Male, 43 years of age. Trauma trauma.

COMPARISON: None.

TECHNIQUE: Contiguous axial images were obtained. This CT exam was performed using one or more of the following dose reduction techniques: automated exposure control, adjustment of the mA and/or kV according to patient size, or use of iterative reconstruction technique. Additional sagittal and coronal reformatted images were obtained. 80.00cc Isovue 370by IV.

CT chest with contrast: Heart normal in size. Thoracic aorta normal in caliber. No pneumothorax or pneumomediastinum. No focal consolidation. Linear atelectasis at the lung bases. Fracture through the posterior margin of the left 11th rib. Thoracic vertebral body heights are preserved.

CT abdomen and pelvis with contrast: Liver, spleen, pancreas and adrenal glands are grossly unremarkable. No calcified gallstones or biliary dilatation. No solid renal lesion. 5 mm left renal cyst. Bowel loops normal in caliber. Normal appendix. Urinary bladder and prostate gland are unremarkable. Bony pelvis is grossly intact. Lumbar vertebral body heights are preserved.

IMPRESSION:
1. Fracture through the posterior margin of the left 11th rib. Linear atelectasis at the lung bases. No pneumothorax or pneumomediastinum.
2. No acute abdominal or pelvic organ injury.

Received
MAR 1 2 2021
Medical Records

Radiation Dose: CTDI (Vol): 17.56    Total DLP (mGycm): 1470.00

| | |
|---|---|
| Printed by: | Loewen, DO, Mark Jeffrey |
| Printed on: | 03/11/2021 18:31 PST |

Page 1 of 2

You had the following procedures performed during you ED visit today:

Patient Education Materials:
Rib Fracture

Ortho Trauma ,

**Rib Fracture**

*Exhibit T*
*C.35*
*Pg. 6*



You broke one or more ribs. This is called a rib fracture. Rib fractures don't need a cast like other bones. They will heal by themselves in about 4 to 6 weeks. The first 3 to 4 weeks will be the most painful. During this time deep breathing, coughing, or changing position from sitting to lying down, may cause the broken ends to move slightly.

*Jerry*

**Home care**

- Rest. You should not be doing any heavy lifting or strenuous exertion until the pain goes away. — 10/22/21 — Still sore AT Night

*yes it does* → It hurts to breathe when you have a broken rib. This puts you at risk of getting pneumonia from poor airflow through your lungs. To prevent this:

  o Take several very deep breaths once an hour while you're awake. Breathe out through pursed lips as if you are blowing up a balloon. If possible, actually blow up a balloon or a rubber glove. This exercise builds up pressure inside the

03/11/2021 18:33
2 of 12
3 of 5

Name HART, JOSEPH PHILLIP
FIN 37700901903
MRN 103-545-19

XR THORACIC SPINE-2 VWS
* Final Report *

HART, JOSEPH PHILLIP - BM4359

# * Final Report *

*Exhibit
C.35, PS7* (handwritten)

## REPORT

```
PATIENT NAME:  JOSEPH HART
MRN:  12229225
DOB:  05/05/1977
ACCOUNT:  10000003212229225BM4359
ORDERING PHYSICIAN:  B. John
Service Date:  03/11/2021
```

XR LUMBAR SPINE-4 VWS, XR THORACIC SPINE-2 VWS

CLINICAL INDICATION: "pain"
COMPARISON: None
TECHNIQUE: Routine technique

FINDINGS:

In the lumbar spine, no pars defects appreciated. Multilevel mild discogenic
degenerative changes. Spinal alignment is preserved.

In the thoracic spine, there is limited visualization of the upper thoracic
spine due to overlying structures. Minimal chronic appearing vertebral body
wedging across the thoracolumbar junction.

No acute fracture or traumatic malalignment.

IMPRESSION:

1. No acute abnormality, within the limitations of radiography for this
indication.

Electronically Signed by: ABartret, MD

Date Signed: 3/11/2021 11:07 AM

| | |
|---|---|
| Result type: | XR THORACIC SPINE-2 VWS |
| Result date: | March 11, 2021 11:07 PST |
| Result status: | Auth (Verified) |
| Result title: | XR THORACIC SPINE-2 VWS |
| Performed by: | ABartret -UNKNOWN, PERSONNEL on March 11, 2021 11:07 PST |
| Cosigned by: | ABartret -UNKNOWN, PERSONNEL |
| Verified by: | ABartret -UNKNOWN, PERSONNEL on March 11, 2021 11:07 PST |
| Contributor system: | FUJI |

Outpatient Progress Note                                                                    HART, JOSEPH PHILLIP - BM4359

Patient had altercation on 3/9/2021, left periorbital bruising, x-ray showed
irregularity, but no obvious fracture, patient been transferred to ER community
Hospital, communicated with the hospital, need CT scan orbits to rule out fracture.
Ordered:
acetaminophen-codeine, 1 tab, Oral, Tab, BIDAM+PM, PRN pain, Administration
Type DOT, Order Duration: 3 day, First Dose: 03/11/21 19:00:00 PST, Stop Date:
03/14/21 18:59:00 PDT
docusate, 100 mg, Oral, Cap, BID-KOP, PRN constipation, Administration Type KOP,
Order Duration: 7 day, First Dose: 03/11/21 14:00:00 PST, Stop Date: 03/18/21
13:59:00 PDT
Orders:
 Transfer to Higher Level of Care

CLINICAL INDICATION: "pain s/p trauma"
COMPARISON: None
TECHNIQUE: Routine technique

FINDINGS:

No focal consolidation. No overt
pulmonary edema.

The cardiomediastinal silhouette is within
normal limits for size.

There is a mildly displaced left lower rib
fracture, mapping to the ninth or
10th rib. Mild bony irregularity of the 2
superiorly adjacent ribs, without
discrete fracture line.

In this setting, a radiodense line in the
left lung apex that parallels the
chest wall could represent a very small
apical pneumothorax, although this is
considered nonspecific, and may reflect
bony margin.

IMPRESSION:

1. Mildly displaced left lower rib fracture.
Mild bony irregularity of the 2
superiorly adjacent ribs, without discrete
fracture line.

2. Possible associated small
pneumothorax, although this is not
definitive.
Recommend short interval follow up
radiograph to ensure stability/resolution.

*[handwritten]* "I received these on 10/21/21. I previously
initially was under the impression
I had 2 ribs broke. this says 1
and 2 ribs having "irregularity."

I do believe, That After Numerous
scans, "pNeumothorAx" was
decided 'NegaTive'.

*[handwritten]* Exhibit
C.35, B.8

Encounter Info: Patient Name: JOSEPH HART,DOB: 05/05/1977,CDCR: BM4359,FIN: 1000000321222922SBM4359,Facility:
NKSP,Encounter Type: Institutional Encounter

Completed Action List:
* Perform by Patel, Vijay CP&S on March 11, 2021 15:43 PST
* Sign by Patel, Vijay CP&S on March 11, 2021 15:43 PST
* VERIFY by Patel, Vijay CP&S on March 11, 2021 15:43 PST

| | |
|---|---|
| Result type: | Outpatient Progress Note |
| Result date: | March 11, 2021 15:33 PST |
| Result status: | Auth (Verified) |
| Result title: | Pain back |
| Performed by: | Patel, Vijay CP&S on March 11, 2021 15:43 PST |
| Verified by: | Patel, Vijay CP&S on March 11, 2021 15:43 PST |

Printed by: Cano, Carmen HRT I
Printed on: 10/21/2021 7:08 PDT

Page 2 of 2

XR LUMBAR SPINE-4 VWS
* Final Report *

HART, JOSEPH PHILLIP - BM4359

## * Final Report *

**REPORT**

```
PATIENT NAME:  JOSEPH HART
MRN:  12229225
DOB:  05/05/1977
ACCOUNT:  10000003212229225BM4359
ORDERING PHYSICIAN:  B. John
Service Date:  03/11/2021

XR LUMBAR SPINE-4 VWS, XR THORACIC SPINE-2 VWS

CLINICAL INDICATION: "pain"
COMPARISON: None
TECHNIQUE: Routine technique

FINDINGS:

In the lumbar spine, no pars defects appreciated. Multilevel mild discogenic
degenerative changes. Spinal alignment is preserved.

In the thoracic spine, there is limited visualization of the upper thoracic
spine due to overlying structures. Minimal chronic appearing vertebral body
wedging across the thoracolumbar junction.

No acute fracture or traumatic malalignment.

IMPRESSION:

1. No acute abnormality, within the limitations of radiography for this
indication.

Electronically Signed by: ABartret, MD

Date Signed: 3/11/2021 11:07 AM
```

| | |
|---|---|
| Result type: | XR LUMBAR SPINE-4 VWS |
| Result date: | March 11, 2021 11:07 PST |
| Result status: | Auth (Verified) |
| Result title: | XR LUMBAR SPINE-4 VWS |
| Performed by: | ABartret -UNKNOWN, PERSONNEL on March 11, 2021 11:07 PST |
| Cosigned by: | ABartret -UNKNOWN, PERSONNEL |
| Verified by: | ABartret -UNKNOWN, PERSONNEL on March 11, 2021 11:07 PST |
| Contributor system: | FUJI |

| | |
|---|---|
| Printed by: | Cano, Carmen HRT 1 |
| Printed on: | 10/21/2021 7:08 PDT |

Page 1  of 2

Outpatient Progress Note

HART, JOSEPH PHILLIP - BM4359



**Chief Complaint**
back pain, heard it pop, hard time breathing due to pain/trauma

**History of Present Illness**
Patient had alteration on 3/9/2021, patient was seen by RN today, complains of difficulty breathing when laying down, and pain on the left side of the chest. Patient also states he heard a pop,
Primary review of x-ray shows rib fracture left lower chest, patient able to speak in clear sentences, has pain on breathing. No cough or fever or chills, patient also had left periorbital bruising, head trauma on 3/9/2021, x-ray of the left orbit did not show obvious fracture, but did show some irregularity, patient has no vision problem at this time, denies any loss of consciousness, denies any nausea or vomiting. Denies hematuria, patient able to ambulate but slowly due to pain in the back and while taking a deep breathing.

**Review of Systems**
As mentioned above

**Physical Exam**
Vitals & Measurements
T: 36.5 °C (Tympanic) HR: 70 (Peripheral) RR: 18 BP: 129/78
SpO2: 100%
WT: 104.6 kg WT: 104.6 kg (Wt dosing)
On examination: General: Alert and oriented x3, cooperative, not in acute distress

HEENT: EOMI. PERRLA. Left periorbital bruising with edema.
Lungs: Clear to auscultation bilaterally.
Heart: Regular rate and rhythm, no murmurs heard.
Abdomen: Soft, nontender, bowel sounds+,
Musculoskeletal exam: Left lower chest lateral, has tenderness, right upper back/scapular region has bruising. No thoracic spine or lumbar spine tenderness.
Neurological exam: gait normal

**Assessment/Plan**
Fracture of rib
   Fracture of the rib left lower, with possible small pneumothorax of apical, oxygenation is normal, will transfer patient to hospital via state transport, for CT scan
   And management of pneumothorax, patient given Tylenol with codeine 1 tablet x 1. Patient hemodynamically stable for transport via state vehicle.

   Left eye trauma

**Problem List/Past Medical History**
Ongoing
   Seizure
Historical
   No qualifying data

**Procedure/Surgical History**
denies.

**Medications**
Active Medications:
acetaminophen-codeine 300-30 mg Tab (0372-01) (acetaminophen-codeine 300 mg-30 mg) 1 tab Oral BIDAM+PM DOT PRN: pain
docusate 100 mg 1 cap Oral BID-KOP KOP PRN: constipation
ibuprofen 400 mg 1 tab Oral BID-KOP KOP PRN: pain

**Allergies**
Keppra (Seizure frequency)

**Social History**
Alcohol
   Never
Substance Abuse
   Current Daily, Marijuana, IV drug use: Never.
Tobacco
   Former

**Family History**
Cancer of ovary: Mother.
Diabetes mellitus: Aunt/ Uncle and Grandfather (P).
Hypertension: Grandmother (M).
Seizure disorder: Child.

**Diagnostic Results**

ACCOUNT: 10000003212229225BM4359
ORDERING PHYSICIAN: V. Patel
Service Date: 03/11/2021

XR RIBS BILATERAL-3 VWS W/ CHEST 1 VW

Result type:      Outpatient Progress Note
Result date:      March 11, 2021 15:33 PST
Result status:    Auth (Verified)
Result title:     Pain back
Performed by:     Patel, Vijay CP&S on March 11, 2021 15:43 PST
Verified by:      Patel, Vijay CP&S on March 11, 2021 15:43 PST

Printed by: Cano, Carmen HRT I
Printed on: 10/21/2021 7:08 PDT





CALIFORNIA DEPARTMENT *of*
Corrections and Rehabilitation



## CLAIMANT GRIEVANCE CLAIMS DECISION RESPONSE

**Re:** Grievance Claims Decision Response

**Offender Name:** HART, JOSEPH PHILLIP          **Date:** 04/22/2021
**CDC#:** BM4359

**Current Location:** NKSP-Facility D          **Current Area/Bed:** D 005 2 - 212001L

**Log #:** 000000104803

**Claim #: 001**

**Institution/Parole Region of Origin:** North Kern State Prison          **Facility/Parole District of Origin:** NKSP-Facility D
**Housing Area/Parole Unit of Origin:**
**Category:** Offender Discipline          **Sub-Category:** Serious Rules Violation Report

### I. CLAIM

You submitted this appeal relative to California Department of Corrections and Rehabilitation (CDCR) Form 115, Rules Violation Report (RVR) Log# 7059950 dated January 29, 2021, for the specific act of, "Fighting".

You contend you were the victim and you were only defending yourself. You also state you feel your RVR was not documented correctly based on your RVR noting you did not comply with your initial order to get down. You also state you disagree with your RVR not noting you were the victim.

You are requesting for your loss credits and privileges to be restored.

### II. RULES AND REFERENCES

#### A. CONTROLLING AUTHORITY

The rules governing this issue are the California Code of Regulatio.          's:

CCR 3005 (d)(1), Conduct
CCR 3315 (d)(2)(A), Serious Rule Violations

#### B. DOCUMENTS CONSIDERED

RVR dated January 29, 2021.

### III. REASONING AND DECISION

All documents submitted by you have been considered and reviewed in accordance with departmental policies and institutional procedures. Though you disagree with your RVR not noting you were the victim, your RVR notes the Reporting Employee (RE) observed you and inmate Henson striking each other in the facial and upper torso area. A fight is described as more or less a mutual exchange of punches between inmates. While you state the concerns you disclosed during your RVR hearing were not documented appropriately, on April 20, 2021, CCII O. Magallanes contacted the Senior Hearing Officer (SHO) T. Plumlee and he stated your statement during your RVR hearing is documented correctly in the "Plea and Statement" portion of your RVR. Additionally, Plumlee stated you never claimed your RVR was false and recalled you questioning him when you were informed of your guilty findings.

Though you claim you only heard staff order you to get down once and you complied right away, on April 12, 2021, CCII Magallanes also contacted the RE regarding your claim and he stated the circumstances noted within your RVR are correct and he did in fact have to order you and inmate Henson to get

Name: Joseph P. Hart

Address: c/o Pleasant Valley State Prison
A-1 - 148-L
P.O. Box 8500
Coalinga, CA.
93210

CDC or ID Number: BM4359

**ENDORSED-FILED**

**OCT 22 2021**

CLERK OF MENDOCINO COUNTY
SUPERIOR COURT OF CALIFORNIA
Caitlyn Morte

HC-

Exhibit E365

Mendocino County Superior Court
100 N. State St
Ukiah CA.
95482

(Court)

Joseph P. Hart
Petitioner

vs.

Mendocino County District Attorney
Respondent

PETITION FOR WRIT OF HABEAS CORPUS

No. 21CR02466

(To be supplied by the Clerk of the Court)

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the superior court, you only need to file the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original of the petition and one set of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and 10 copies of the petition and, if separately bound, an original and 2 copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court (as amended effective January 1, 2018). Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Form Approved for Optional Use
Judicial Council of California
HC-001 [Rev. January 1, 2019]

**PETITION FOR WRIT OF HABEAS CORPUS**

Page 1 of 6

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 8.380
www.courts.ca.gov

*Exhibit B.2*
*C.36,*

HC-0(

**This petition concerns:**

☐ A conviction

☐ A sentence

☒ Jail or prison conditions

☒ Other (specify): Failure to comply with 10-23-20 court order

☐ Parole

☐ Credits

☐ Prison discipline

1. Your name: Joseph P. Hart

2. Where are you incarcerated? Pleasant Valley State Prison

3. Why are you in custody?  ☒ Criminal conviction    ☐ Civil commitment

   *Answer items a through i to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   Pen. Code 245 (A) (1) - doubled for previous 25 yr old robbery in Chicago.

   (Assault w/ a deadly weapon)

   b. Penal or other code sections: Pen. Code 245 (A) (1)

   c. Name and location of sentencing or committing court:
   Mendocino County Court - Court Room - H
   100 N. State St
   Ukiah, CA. 95482

   d. Case number: ScUK-CRCR-20-34746-1

   e. Date convicted or committed: 8-25-20

   f. Date sentenced: 10-23-20

   g. Length of sentence: 3yrs - doubled to 6yrs.

   h. When do you expect to be released? God willing - As soon as possible

   i. Were you represented by counsel in the trial court? ☒ Yes    ☐ No    If yes, state the attorney's name and address:
   Jan Cole-Wilson
   175 S. School St
   Ukiah, CA. 95482

4. What was the LAST plea you entered? *(Check one)*

   ☒ Not guilty    ☐ Guilty    ☐ Nolo contendere    ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   ☒ Jury    ☐ Judge without a jury    ☐ Submitted on transcript    ☐ Awaiting trial

**PETITION FOR WRIT OF HABEAS CORPUS**

Exhibit C-36 PS S

6. GROUNDS FOR RELIEF
**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "The trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page 4. For additional grounds, make copies of page 4 and number the additional grounds in order.)*

HC-00

Seeking "Writ of Mandate" for the enforcement of 10-23-20 Court order (23 R.T. pg 686) by Mendocino D.A. Have Mendocino D.A. to work/Mandate C.D.C.R. to follow that order, And remove from my file the erroneous document sent by Mendocino D.A. in violation of that 10-23-20 order.

a. Supporting facts:
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts on which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel, you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is, *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*.

Mendocino Deputy District Attorney Scott McMenomey failed to obey the 10-23-20 court order of Judge Dolan After she ordered him that false Allegations "should not be included in Any prison packet sent to C.D.C.R. on 11-10-20 And 11-20-20 C.D.C.R. documents show Mendocino D.A. office sent a "Probation Report" And "Rap sheet" with the erroneous information she specifically ordered him not to, C.D.C.R. "Classification Chrono" dated 12-29-20 reports this, it also shows my 12-9-20 minimum security rating was raised due to this! Furthermore my safety And physical well being has been significantly effected by his failure to comply, And I've had 6 months added to my time As a direct result.

b. Supporting documents:
Attach declarations, relevant records, transcripts, or other documents supporting your claim. (See *People v. Duvall* (1995) 9 Cal. 4th 464, 474.)

Please see Attached Attempts to resolve with Administrative remedies. C.D.C.R. "Chrono Report", 602 reports And Appeals of grievance Additionally Attorney Deborah L. Hankin Letters on 4-26-21 to C.D.C.R. Counsel And her relating Mr. McMenomeys response to her, Medical reports, And Cook County Certified records. The Chrono report details This info came from Mendocino Probation Report & Rap sheet.

c. Supporting cases, rules, or other authority *(optional)*:
(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)

ScuK-crcr - 20-34746-1

10-23-20 - court order - (23 R.T. pg 686)

Exhibit C.36, p54

HC-0

8. Did you appeal from the conviction, sentence, or commitment? ☒ Yes ☐ No    *If yes, give the following information:*

a. Name of court ("Court of Appeal" or "Appellate Division of Superior Court"):

Court of Appeal - First Appellate District - State of California

b. Result: Pending Decision    c. Date of decision: _____

d. Case number or citation of opinion, if known: A161239

e. Issues raised: (1) Failure to grant Motion for New Trial violated State/Federal

(2) Trial Court erred when denied New Trial as evidence was insuff. rights

(3) _____

f. Were you represented by counsel on appeal? ☒ Yes ☐ No    *If yes, state the attorney's name and address, if known*

Deborah L. Hawkins
1637 E. Valley Parkway - PMB135 - Escondido, CA - 92027

9. Did you seek review in the California Supreme Court? ☐ Yes ☒ No    *If yes, give the following information:*

a. Result: _____

b. Date of decision: _____

c. Case number or citation of opinion, if known: _____

d. Issues raised: (1) _____

(2) _____

(3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal (see *In re Dixon* (1953) 41 Cal.2d 756, 759): _____

11. Administrative review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Dexter* (1979) 25 Cal.3d 921, 925.) Explain what administrative review you sought or explain why you did not seek such review:

All C.D.C.R. administrative remedies - 602 appeals letters to The Directors have all been exhausted. I even tried a letter to Judge Dolan returned "ex-parte communication" on 4-9-21 Attorney Hawkins attempted to contact Mr. McMenomey who denied his office failed to comply - But as you will see Mendocino D.A.'s office provided C.D.C.R. with those erroneous documents, apparently not just one time, but twice, in violation of Judge Dolan's order.

b. Did you seek the highest level of administrative review available? ☒ Yes ☐ No
*Attach documents that show you have exhausted your administrative remedies. (See People v. Duvall (1995) 9 Cal.4th 464, 474.)*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court, including this court? (See *In re Clark* (1993) 5 Cal.4th 750, 767–769 and *In re Miller* (1941) 17 Cal.2d 734, 735.)
☐ Yes   *If yes, continue with number 13.*   ☒ No   *If no, skip to number 15.*

13 a. (1) Name of court: _____

(2) Nature of proceeding (for example, "habeas corpus petition"): _____

(3) Issues raised: (a) _____

(b) _____

(4) Result (attach order or explain why unavailable): _____

(5) Date of decision: _____

b. (1) Name of court: _____

(2) Nature of proceeding: _____

(3) Issues raised: (a) _____

(b) _____

(4) Result (attach order or explain why unavailable): _____

(5) Date of decision: _____

c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Robbins (1998) 18 Cal.4th 770, 780.)

Since discovering 12-18-20, I have tried to remedy these errors - have exhausted administrative petitions, and Mr. McMenomey has denied these actions, giving no help.

16. Are you presently represented by counsel? [X] Yes [ ] No    If yes, state the attorney's name and address, if known:
Deborah L. Hawkins
1637 E. Valley Parkway - PMB - 135
Escondido, CA. - 92027 - # 760-294-2181

17. Do you have any petition, appeal, or other matter pending in any court? [X] Yes [ ] No    If yes, explain:
Please see pg 5 - 8.A of this petition for details.

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 10/18/21

▶ _Joseph P. Hart_
(SIGNATURE OF PETITIONER)

HC-001 [Rev. January 1, 2019]            PETITION FOR WRIT OF HABEAS CORPUS            Page 6 of 6

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF MENDOCINO**

**FILED**

12/17/2021

KIM TURNER, CLERK OF THE COURT
SUPERIOR COURT OF CALFORNIA,
COUNTY OF MENDOCINO

Moore, Stephanie

DEPUTY CLERK

THE PEOPLE OF THE STATE OF
CALIFORNIA,
                    Plaintiff,

vs.

JOSEPH P HART,
                    Defendant.

Case Nos:   21CR02852

MINUTE ORDER OF ASSIGNMENT

**IT IS HEREBY ORDERED THAT:**

Notice is hereby given that the Honorable _____Carly Dolan_____ is assigned to preside over the above entitled actions for all purposes.

Dated: _____12/14/2021_____

_____
**Ann Moorman**
**Judge of the Superior Court**

Exhibit C.37

I Filed
writ
of
Mandmus
To Remove
Clear Record
& Result I
was I
was Issue

MOF-150 (new 0321)

Exhibit C.37
pg. 2

## Superior Court of California, County of Mendocino
# PROOF OF SERVICE

Case: **21CR02852**    **IN THE MATTER OF: HART, JOSEPH P**

Document Served:    **ORDER OF ASSIGNMENT**

I declare that I am employed by the Superior Court of California, in and for the County of Mendocino; I am over the age of eighteen years and not a party to the within action.  My business address is:

☒  Mendocino County Courthouse, 100 North State Street, Ukiah, CA  95482
☐  Ten Mile Branch, 700 South Franklin Street, Fort Bragg, CA  95437

I am familiar with the Superior Court of Mendocino County's practice whereby each document is placed in the Attorneys' boxes, located in Room 107 of the Mendocino County Courthouse or at the Ten Mile Branch, transmitted by fax or e-mail, and/or placed in an envelope that is sealed with appropriate postage is placed thereon and placed in the appropriate mail receptacle which is deposited in a U.S. mailbox at or before the close of the business day.

On the date of the declaration, I served copies of the attached document(s) on the below listed party(s) by placing or transmitting a true copy thereof to the party(s) in the manner indicated below.

| Party Served | Ukiah US Mail | Ten Mile US Mail | Ukiah Attorney Box | Ten Mile Attorney Box | Inter Office Mail | Fax | E-mail |
|---|---|---|---|---|---|---|---|
| JOSEPH P. HART A-2-136-L C/O OF PLEASEAN VALLEY STATE PRISON PO BOX 8500 COALINGA, CA 93210 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|  | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|  | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|  | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|  | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|  | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|  | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct and that this declaration was executed at:

☒ Ukiah, California        ☐ Fort Bragg, California

Date:  _12/17/2021_

KIM TURNER, Clerk of the Court

_Stephal Moon_

By:  STEPHANIE MOORE, Deputy Clerk

PSN-100 (rev 0419)

~~an direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, ~~ment, or issue in any court? ☒ Yes    If yes, continue with number 13.    ☐ No    If no, skip to number 15.    MC

(1) Name of court: _Mendocino County Superior Court_

(2) Nature of proceeding (for example, "habeas corpus petition"): _"Writ of Mandate"_

(3) Issues raised: (a) _Failure to follow a court order by D.A._

(b) _(21-cr-02466)_

(4) Result (attach order or explain why unavailable): _Denied - (order included_

(5) Date of decision: _12-30-21_

b. (1) Name of court: _____

(2) Nature of proceeding: _____

(3) Issues raised: (a) _____

(b) _____

(4) Result (attach order or explain why unavailable): _____

(5) Date of decision: _____

_Exhibit_

_C.37 pg. 3_

c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

_Received Trial Transcripts 1-10-22, Covid lockdown_
_Till 3-24-22, This is now my 3rd Attempt to file_

16. Are you presently represented by counsel? ☐ Yes ☒ No    If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes ☒ No    If yes, explain:

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

_Not Applicable_

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: _____    _[signature]_

MC-275 [Rev. January 1, 2010]    PETITION FOR WRIT OF HABEAS CORPUS    SIGNATURE OF PETITIONER

Exhibit
C. 38, PS. 1



## CLAIM AGAINST THE COUNTY OF MENDOCINO

(Government Code Section 910 et seq.)

**Submit claim in person or mail to:**
Executive Office - Risk Management
501 Low Gap Road Rm. 1010
Ukiah, CA 95482

Rev. 11/19/18

☑ New Claim
☐ Amended Claim

\* = REQUIRED

| 1.* Claimant's Name and Home Address | 2.* Send Official Notices and Correspondence to |
|---|---|
| Joseph P. Hart | Hon. James P. Gray c/o ADR Services, Inc. |
| 1240 S. Dora St     Ukiah, CA   95482 | 19000 MaMacArthur   Boulevard, Suite 550      Irvine, CA        92612 |

| City | State | Zip | City | State | Zip |
|---|---|---|---|---|---|

| | Home | Cell | Work | | Home | Cell | Work |
|---|---|---|---|---|---|---|---|
| **Phone** 7076718945 | | | | **Phone** | | | |

**3. Claimant Vehicle License Plate #, VIN, Make, Model, Mileage, and Year**

| 4.* Date of Incident | 5. Time of Incident | 6.* Address and/or Description of Incident Location |
|---|---|---|
| 3-30-2020 - 10-22-2023 | | 951 Low Gap Rd, Ukiah, CA 95482 |

**7.* Basis of Claim.** State in detail all facts and circumstances of the incident. Identify all persons, entities, property, and County departments involved. State why you believe the County is responsible for the alleged injury, property damage, or loss.

SEE ATTACHED DEMAND DOCUMENT FOR DETAILS,  DATES & NAMES OF

Names of Involved County Employees and/or Departments, if known:

Sgt. Ochoa-Pedroza, Sgt. Johnson, C/O Brennan, C/O Zavala, C/ODow, Sgt. Knapp. Sgt. Hardiman,  C/O Hernandez, C/O Rivera

C/O Singh,  C/O Helderson, C/O Dye, Sheriffs Dept. Sheriffs Medical, Jan Cole-Wilson-  Hon. Carly Dolan

| 8.* Description of Claimant's injury, property damage, or loss: | 9.* Amount of Claimant's property damage or loss and method of computation. Attach supporting documentation. |
|---|---|
| Multiple head injuries, Concussions, torn | |
| shoulder ligaments,weeks of headaches, nausea, torture | **ITEMS** |
| neglect, AVM (arteriovenous malformation) , broken | $ |
| hand bone, | SETTLEMENT TO VICTIM    $ 300,000-Payable to Joseph Hart |
| | $ |
| | SETTLEMENT for TRAINING   $ 200,000- Epilepsy Foundation |
| | **TOTAL AMOUNT**    $ |
| | Court Jurisdiction:  ☐ Limited (up to $25,000) |
| | ☑ Unlimited (over $25,000) |

| 10. Witness Names (if any) | Address | Phone |
|---|---|---|
| Hon. Carly Dolan,  100 N State St | C/O Helderson, Medical Files, | |
| Sgt. Hardiman, C/O Dye,Jan ColeWilson | C/O Helderson , -  DOZENS OF FORMER | INMATES |

**11. Law Enforcement Information**

Was local law enforcement contacted?  ☑ Yes  ☐ No

If yes, Report # scuk-20-34746   (Attach copy of report if available)

Section 72 of the Penal Code states: "Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any county, city, or district board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is punishable either by imprisonment in the county jail for a period of not more than one year, by a fine not exceeding ten thousand dollars ($10,000), or by both such imprisonment and fine."

| 12.* | |
|---|---|
| *Signature of Claimant or Representative* | **Date** |
| Joseph P. Hart | |
| **Print Name** | **Relationship to Claimant** |





U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee $4.85

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $0.00
☐ Return Receipt (electronic)      $0.00
☐ Certified Mail Restricted Delivery $0.00
☐ Adult Signature Required         $0.00
☐ Adult Signature Restricted Delivery $

Postage $2.59

Total Postage and Fees $

Sent To

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

UKIAH CA 95482-9998

7022 3330 0000 9365 1127

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

Exhibit B-2