UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
450 Golden Gate Avenue, Box 36060
San Francisco, CA 94102-3489

JOSEPH P. HART, Plaintiff,

FILED

JUN 27 2025  OAK

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

v. Case No. 25-CV-04501- RMI

COUNTY OF MENDOCINO; responsible for a policy or ongoing practice that violated your rights
MENDOCINO COUNTY CEO-DARCIE ANTLE, sued both in her individual and official capacity;
MENDOCINO COUNTY (Former) CEO- CARMEL ANGELO, sued only in her individual capacity ;

MENDOCINO COUNTY SHERIFF'S DEPARTMENT; responsible for a policy or ongoing practice that violated your rights
SHERIFF MATTHEW C. KENDALL;. sued both in his individual and official capacity;
CAPTAIN GREGORY VAN PATTEN; sued both in his individual and official capacity
LIEUTENANT JOHN S. BEDNAR; sued both in his individual and official capacity
SERGEANT/LT. ELDON E. JOHNSTON; sued both in his individual and official capacity
SERGEANT LORRIE A. KNAPP; sued both in her individual and official capacity
SERGEANT WILLIAM HARDIMAN; sued only in his official capacity
SERGEANT STEPHEN P. BOHNER; sued both in his individual and official capacity
DETECTIVE SERGIO OCHOA-PEDROZA; sued both in his individual and official capacity

CORRECTIONAL OFFICERS:
C/O ALEX L. BRENNAN; sued both in his individual and official capacity
C/O AARON J. SHAW; sued both in his individual and official capacity
C/O REYMUNDO T. HERNANDEZ;   sued both in his individual and official capacity
C/O JENZEN RIVERA;  sued both in his individual and official capacity
C/O BARINDER SINGH;     sued both in his individual and official capacity
C/O ROBERT C. DYE;    sued both in his individual and official capacity
C/O JUAN J. ZAVALA;    sued both in his individual and official capacity
C/O TIMOTHY M. DALE;     sued both in his individual and official capacity
C/O CODY S. DOW;      sued both in his individual and official capacity
C/O JENNA JOHNSTON;      sued both in her individual and official capacity
C/O LEE E. HALDORSON;    sued only in his official capacity

Additional UNKNOWN CORRECTIONAL OFFICERS; UNKNOWN MEDICAL STAFF to be named and added as discovered, Defendants,

"AMENDED" COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF, JURY TRIAL DEMANDED

C.

1

## 1. JURISDICTION AND VENUE

1.A) This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the Constitution and laws of the United States.

1.B) The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

1.C) Venue is proper in this district under 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims occurred in Mendocino County, California, which lies within this judicial district.

## 2. PARTIES

2(A) **Plaintiff JOSEPH P. HART**, a resident of Covelo & Ukiah, California during these periods, and a Federally protected individual with a documented disability under the Americans with Disabilities Act (ADA), with all below violations happening while residing in the County of Mendocino and under the custody of the Mendocino County Sheriff's Department.

2(B) **Defendant COUNTY OF MENDOCINO & its CEO** are public entities within the State of California, both current and former CEO both had been informed and made aware of these issues, both were complicit in their duties and did not act to rectify the matters.

2(C) **Defendant MENDOCINO COUNTY SHERIFF'S DEPARTMENT** is a subdivision of the County charged with oversight of jail operations and staff.

2(D) **Defendant's Sheriff Matthew Kendall, Captain Gregory Van Patten & LT. John S. Bednar,** as Department heads are both sued in their individual and official capacities, as all had been informed, made aware of these issues, but were complicit in their duties and did not act to rectify the matters.

2(E). Defendants **Lt./Sgt. Eldon E. Johnston, Sgt. Lorrie A. Knapp, Sgt. Hardiman, Sgt. Stephen P. Bohner, Detective Sergio Ochoa-Pedroza,** and the following **Mendocino County Correctional Officers: C/O Alex L. Brennan, C/O Aaron J. Shaw, C/O Reymundo T. Hernandez, C/O Jenzen Rivera, C/O Barinder Singh, C/O Robert C. Dye, C/O Timothy M. Dale, C/O Cody S. Dow, C/O Jenna Johnston,** and **unnamed medical staff,** are or were employees of Mendocino County who, under color of law, violated Plaintiff's constitutional rights and Plaintiff's rights under the **Americans with Disabilities Act (ADA).**

Plaintiff reserves the right to amend this Complaint to add additional defendants, or correct defendant identities, and/or spelling of names as they become known through the discovery phase. All individuals are sued in both their individual and official capacities, unless otherwise specified. As to those individuals who thru discovery are found to have retired, resigned, or been terminated, Plaintiff reserves the right to amend and proceed against them in their individual capacities only.

C.                                                                                                          2

**2(E).** The above-named and unnamed individuals **acted with deliberate, reckless, and callous indifference** to Plaintiff's serious medical needs and substantial risk of causing death. These actions were undertaken **under color of state law**, with **full knowledge of Plaintiff's medical condition,** and were executed with **medical indifference**, in violation of the **United States Constitution** and **clearly established federal law.** Their conduct was further **motivated by, and carried out with, an evil motive or intent,** and each demonstrated a **knowing and willful disregard for Plaintiff's constitutional and statutory rights.**

**2(F).** *Does 1–10* are currently unidentified agents, employees, or contractors of the County of Mendocino. Plaintiff will amend this complaint by way of motion to identify, and name these individuals upon obtaining further oral, video, and/or written discovery, and/or **witness testimony.**

## 3.) INTRODUCTION

**Plaintiff Joseph P. Hart** respectfully brings this 28 page civil rights complaint for compensatory and injunctive relief pursuant to **42 U.S.C. § 1983, the Americans with Disabilities Act (42 U.S.C. § 12132),** and relevant provisions of the California Government Code, including the **Bane Act (Cal. Civ. Code § 52.1),** each based on a prolonged pattern of civil rights abuse, retaliation, and deliberate medical indifference carried out by Mendocino County, CA. officials, and its agents **between March 30, 2020, and July 3, 2024.**

This Complaint arises under both federal and state legal doctrines recognizing that where a plaintiff is subjected to an ongoing pattern of constitutional or statutory violations—**particularly in cases where a single indictment and custodial authority are used to exert total control over the plaintiff's life, liberty, and access to medical care**—the statute of limitations may be **tolled** under the **continuing violation doctrine** and the **delayed discovery rule.**

Courts have held that where such conduct represents a continuing course of unlawful behavior, equitable tolling may apply; see:

- *National Railroad Passenger Corp. v. Morgan,* **536 U.S. 101 (2002)** (holding that when a series of acts constitute a hostile environment, the entire time period of the hostile environment may be considered for purposes of determining liability);

- *Havens Realty Corp. v. Coleman,* **455 U.S. 363 (1982)** (recognizing that a continuing violation may toll the limitations period if discriminatory acts are part of an ongoing policy);

- *O'Loghlin v. County of Orange,* **229 F.3d 871 (9th Cir. 2000)** (applying continuing violation doctrine to ADA claims arising from repeated denials of accommodation);

- *Douglas v. California Dept. of Youth Authority,* **271 F.3d 812 (9th Cir. 2001)** (holding that repeated denial of medical care while in custody may constitute a continuing violation of constitutional rights).

C.                                                                                                                                    3

These legal doctrines apply where a **series of interrelated wrongful acts** occur over time, resulting in **cumulative and compounding injuries**, and where the plaintiff is **effectively prevented from asserting their rights due to systemic retaliation, coercion, or incapacitating conditions**—such as prolonged solitary confinement, the denial of federally protected rights, or being unlawfully detained without cause in retaliation for exercising protected speech. Such is the case here, where the Plaintiff was subjected to continuous and coordinated acts of misconduct that obstructed access to remedies and justice. Under California law **(e.g., Richards v. CH2M Hill, Inc., 26 Cal.4th 798 (2001)** and federal case law interpreting **42 U.S.C. § 1983 (see Heck v. Humphrey, 512 U.S. 477 (1994); Wallace v. Kato, 549 U.S. 384 (2007)**, courts have recognized that ongoing civil rights violations—particularly those that involve incarceration, ADA violations, and medical neglect—extend or toll the limitations period until the wrongful conduct ceases or the plaintiff is able to meaningfully pursue legal action.

Defendants' conduct was not isolated or occasional but **represented an institutionalized pattern of misconduct**, wherein this Plaintiff was subjected to **inhumane and unsanitary conditions, psychological torture, and repeated civil rights violations** under a unified and coercive structure of control, while the vast majority of this was done in clear violation of the Americans w/Disabilities Act. The nature of this conduct and the resulting injuries invoke the equitable powers of this Court to both award substantial damages and issue immediate injunctive relief to prevent further harm.

### 4.)Plaintiff, Joseph P. Hart, brings this action against Defendants for a three-fold pattern of abuse and constitutional violations:

### 4(A) Deliberate Indifference to Medical Needs and Violations of the ADA

The Defendants demonstrated deliberate indifference to Plaintiff's serious medical condition—specifically, his documented epilepsy, seizure disorder, post-seizure complications, and ongoing post-surgical treatment at UCSF—while he was under their custody and care, this resulted in significant suffering of physical pain, physical discomfort, decline in health, psychological anguish, consisting of constant fear of death without medical help, constant fear of injury with no medical attention, the loss of personal and valuable property, irreplaceable items, as well as societal and professional harm done by way of their conduct.

From the outset, including within the initial minutes of the 9-1-1 transcripts and reports (see **EXHIBITS C-1 through C-22**), it is clear that defendants should have been fully aware of Plaintiff's medical history and condition, particularly with the local Adventist hospital having a long record of medical complications and injuries due to Epilepsy.

Despite this knowledge, Defendants willfully failed to implement at times even the most basic emergency protocols, including the scheduling of urgent medical appointments such as an MRI, proper anti-seizure medication, and an appointment with a neurological specialist. The defendants behaviors persisted for month without even the most basic medical treatment such as aspirin while suffering with concussions of the brain.

C.                                                                                                          4

These defendants delayed a necessary licensed physician's personal care for over four and a half months initially during this period, and then refused urgent doctor prescriptions at the end. This prolonged neglect not only violated established standards of medical care but also constituted a flagrant breach of the Americans with Disabilities Act (ADA) and this Plaintiff's constitutional rights. Such conduct reflects more than mere negligence; it evidences a pattern of malicious and/or reckless disregard for Plaintiff's life, health, and legal protections under both State and Federal law.

4(B) Civil Rights Violations, including violations of the 1st, 4th 5th ,8th , and 14th Amendments for: including but not limited to; **excessive bail, retaliatory and unlawful punishment,** and **extra-judicial sanctions,** such as **prolonged solitary confinement, deprivation of basic necessities** including being made to **eat without utensil,** and **sustained physical and psychological abuse.** These actions were carried out in **direct retaliation** for Plaintiff's exercise of constitutionally protected rights and as a result of **discriminatory animus** related to Plaintiff's **documented neurological disability,** specifically **epilepsy.**

The **acts and omissions** of the named Defendants—**acting individually and collectively under color of state law**—served to **prolong Plaintiff's unlawful detention** and **exacerbate unconstitutional conditions of confinement,** causing significant physical, mental, monetary and emotional harm. The conduct described herein reflects a **pattern of deliberate indifference, reckless disregard,** and **intentional deprivation** of rights secured by the **U.S. Constitution** and **federal law.**

4(C) Due Process and Property Rights Violations: Plaintiff's constitutional rights were violated through **unlawful seizure and subsequent destruction of valuable, lawfully-owned property,** without adherence to due process, legal recourse, or departmental policy. These actions reflect yet another clear indication of Defendants willful disregard for both State and Federal law. (See EXHIBITS C-1, 5 pages +). Notably, records confirm that Defendants were fully aware the property in question was legally owned by Plaintiff as early as **March 30, 2020.**

5.) Pattern of Misconduct Over Extended Periods of Time

5(A) The events described in this complaint span a four-year period from **March 30, 2020, to July 3, 2024,** and reflect a **consistent, systemic pattern of misconduct.** Rather than isolated occurrences, the facts will demonstrate an **ongoing series of actions, knowingly and in violation of State & Federal Law by the defendants,** collectively revealing a troubling pattern of blatant disregard for Plaintiff's constitutional and federally protected rights.

5(B)-The conduct of the defendants—particularly those of **Lt/Sgt. Eldon Johnston & C/O Aaron Shaw & C/O Alex Brennan**—was not merely negligent or bureaucratically indifferent at times, **it was life threatening.** In multiple instances, either the actions taken, or rather inactions taken, were marked by a reckless or even malicious attitude, one that reflects a deeper executive institutional failure to train and guide staff to uphold the law, legal standards, and/or basic human dignity, such as established in **Smith v. Wade, 461 U.S. 30, 56 (1983),** this conduct constitutes a violation of constitutional protections **when "motivated by an evil motive or intent", or, when carried out with "reckless or callous indifference to the rights of the individual."**

C.                                                                                                                          5

**5(C) The cumulative nature of these violations over an extended period underscores not only the severity, but also the intentionality behind the misconduct.** These patterns highlights systemic failures and the urgent need for accountability within the legal and custodial systems that have allowed such abuses to persist unchecked.

This is not an isolated incident. Rather, it echoes a broader and well-documented pattern of custodial abuse and neglect in **Mendocino County**, as illustrated by multiple deaths, particulary in the jail's sobering and safety cells, including:

- **Steven Neuroth** (55 years old) — Died on **June 11, 2014,** in a sobering/safety cell following excessive force and restraint.
- 
- **Unnamed Ukiah Man** (64 years old) — Died on **February 7, 2023,** while held in a holding sobering/safety cell under allegedly inadequate supervision.
- 
- **Issa Niambele** (40 years old) — Died on **October 30, 2024,** after being found unresponsive in a holding/sobering/safety cell.

**These cases further substantiate the assertion that the violations suffered by the Plaintiff are part of a larger, ongoing pattern of constitutional and human rights abuses within the Mendocino County correctional system that needs to be 'corrected'.**

## 6) This is a civil rights and disability discrimination complaint brought pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and California state law.

**Plaintiff Joseph P. Hart,** a federally recognized person with a disability and serious medical condition seeks redress for the egregious, continuous, and willful violations of the Americans with Disabilities Act (ADA) and his constitutional rights, including the 1st, 4th, 5th, 8th, and 14th Amendments, during his incarceration and prosecution by Mendocino County, and done while under the color of law.

## 6(A) – Chronological Record of Medical Neglect, ADA Violations, and Deliberate Indifference

**6(A.1)** Approximately 9pm on **March 30th, 2020** Plaintiff was transferred from CHP custody to the custody of Mendocino County Sheriff's and brought to a sub-station under the supervision of **Defendant, Mendocino County Detective Sergio Ochoa-Pedroza.**

**6(A.2)** Plaintiff detailed to **Defendant Sergio Ochoa-Pedroza** his medical condition, requested medical attention on multiple occasions, as well as requested that his personal property be properly inventoried, both detailed in his report and court testimony. During this period Defendant Sergio Ochoa-Pedroza at times laughed and mocked this plaintiff's condition.

C.                                                                                                                6

During his initial criminal interview Detective Ochoa-Pedroza without provocation made comments to this plaintiff such as "Your not trying to reach for my gun are you? Cause if I thought you were reaching for my gun...Yeah Id shoot you" insinuating that he might shoot me without cause. He also made other comments that "*I better be careful, because he could make up any charges he wanted against me*" all this stemming from me asking for help while I was suffering from the "Postictal/Co-Morbid State" as a result of my Epileptic Conditions".

Defendant Sergio Ochoa-Pedroza in his report talks about the unstable and sometimes polar condition that would exemplify an epileptic's post seizure behaviors. The medical definition of *'Postictal Seizure State'/ 'Co-Morbid Seizure Conditions'* is : "**The postictal state is the altered state of consciousness or neurological function that follows a seizure, lasting from minutes to days depending on seizure type and severity; symptoms include; Confusion or disorientation, speech difficulty, amnesia, headache, partial paralysis aka 'postictal paralysis', psychosis or aggression, emotional lability, sleepiness or lethargy".**
- Per UCSF Neurology Department- www.neurology.ucsf.edu

6(A.3) Plaintiff was subsequently booked into Mendocino County Jail under the supervision of **Defendant Sergio Ochoa-Pedroza** at approximately 3am, where instead of medical treatment, contact with a neurologist and/or a doctor, the plaintiff was immediately placed in solitary confinement without disciplinary hearing and without reason.

**6(A.4) April 1-4, 2020:** Plaintiff while in being held in solitary confinement was refused any and all medical attention, plaintiff repeatedly asked **Defendants C/O Juan Zavala, C/O Alex L. Brennan, and Sgt. Lorrie Knapp** who responded with no medical attention and were hostile to this Plaintiff because of his request for medical attention.

**6(A.5) April 4, 2020:** Plaintiff suffered a grand mal seizure and struck his head from **April 4th to April 6th Sgt. Eldon Johnston, C/O Alex Brennan, C/O Juan Zavala, C/O Cody Dow, and Sgt. Lorrie Knapp all refused to provide medical assistance, medical attention or even a aspirin.** Plaintiff experienced severe head pain, nausea, mental anguish and emotional distress during this time,.

**6(A.6) April 6, 2020:** Plaintiff suffered a grand-mal (tonic-clonic) seizure and was found unconscious by **c/o Alex Brennan** while he was collecting meal trays, instead of summoning medical help, **c/o Alex Brennan falsely accused Plaintiff of refusing to hand over a half-eaten dinner tray**, apparently laying on the ground with spilt food during the initial tray pick up. Exactly how he got the tray back, I am not sure, but **c/o Alex Brennan retaliated** by initiating a **punitive directive, without written disciplinary notice, nor hearing, and forced this Plaintiff to eat with his hands, without utensils for 39 consecutive days (April 7 – May 13, 2020.)** This was done with approval of defendant Eldon Johnston and was even extended past the initial "30 days of extra-judicial sanctions for a total of 39days. Refusing me utensils during meals as a cruel way to degrade and humiliate me in retaliation for my documented medical disability.

C.                                                                                                          7

**Defendants Matthew Kendall,** Captain Gregory Van Patten, Lieutenant John S. Bednar and **LT/Sergeant Eldon E. Johnston, Sergeant Lorrie A. Knapp, Sgt William Hardiman and Sergeant Stephen P. Bohner** as jail supervisors are complicit, as they allowed this type of punitive punishments and directives to take place in their jail operations. Each ordered their officers to refuse me utensils, and **each participated in and/or approved of this form of cruel and unusual punishment** for a person who had been found unconscious and unable to follow a directive of a correctional officer due to established medical conditions.

**6(A.7) April 6th–15th, 2020:** Plaintiff was refused daily requests for medical attention. These were ignored by repeated requests to classification officer **c/o Jenna Johnston**- the jail classifications officer, **Sgt. Eldon Johnston, Sgt. Lorrie Knapp, C/O Reymundo Hernandez, C/O Juan Zavala, C/O Cody S. Dow** and medical staff that I would call to from behind the door but was completely ignored. This plaintiff suffered severe headaches and pain weeks after on a daily basis.

**6(A.8) April 14th, 2020:** Plaintiff was given a medical request slip, pen & a grievance by another inmate for the first time, that was filled out and turned into defendant c/o Robert C. Dye. It clearly details that I have Epilepsy and detailed that I had 4 seizures in 2 weeks and that I had been refused any and all medical attention. **(EXHIBIT C-4-1pg)**

**6(A.9) April 15, 2020:** Plaintiff experienced another seizure. When requesting help, **C/O Aaron Shaw** responded with verbal abuse, telling the plaintiff to **"shut the fuck up with your shit already."** A few minutes later I asked defendant Sgt. Eldon Johnston to please provide me medical and contact my doctor to which he ignored me. About 30 minutes later **Sgt. Eldon Johnston, along with C/O Shaw, C/O Rivera, and C/O Singh,** lured Plaintiff into placing his hands through the food port by telling him they were taking him to medical, and then forcefully relocated him to a **"sobering and safety cells"** This padded 'safety cell' had dried human feces wiped all over the well and on parts of the floor, a hole in the back of the cell that was filled with human urine and feces as a toilet The smell was overwhelming making it hard to breathe.

 I remember waking up in this 'sobering and safety cell' and had been throwing up, I remember praying that I did not choke on my own vomit in this hell. I was held without medical attention for over at least seven hours until the new nighttime shift arrived. I remember speaking to a nurse thru the door after an hour or so of shift change count, telling her I have epilepsy and my neurologist is Dr. Kore Liow, of St Francis Medical Center in Honolulu. I believe I was released from the "Safety/sobering cell" at approximately 12:30am on **April 16th, 2020.** This was done in retaliation for me asking to see medical because of my well documented epileptic condition. **This would show a pattern of unlawfully placing people in this "Safety/Sobering Cell" that:**

**Steven Neuroth** (55 years old) — **Died on June 11, 2014,** following excessive force and restraint.

**Unnamed Ukiah Man** (64 years old) — **Died on February 7, 2023,** while being held under allegedly 'inadequate supervision.'

**Issa Niambele** (40 years old) — **Died on October 30, 2024,** after being found unresponsive.

C.                                                                                                          8

**6(A.10) April 17th, 2020:** (EXHIBIT C-5-5 pgs) During pre-trial this plaintiff tried to plead with the Judge, even the lawyers mentioned *"Is this about the medical condition"* and yet this Plaintiff didn't see a doctor for many months after, in spite of documented Grand Mal seizures and head injuries during this period. This plaintiff suffered severe headaches and pain for weeks after on a daily basis.

**6(A.11) May 8, 2020:** C/O Robert C. Dye witnessed Plaintiff unconscious and actively seizing while doing his count. Nursing staff was called, but again Jail staff denied further needed medical care under the guise of COVID-19 protocol. Plaintiff suffered a severe concussion, broken finger and a split eyelid that was given some gauze, no stitches or x-ray were applied. This plaintiff suffered severe headaches and pain weeks after on a daily basis. This plaintiff was refused a licensed medical doctor's care, nor was properly treated with such things as an MRI, proper anti-seizure medication, proper medical care or attention.

**6(A.12) May 12th 2020** (EXHIBIT C.6-6pgs) Attorney Jan Cole- Wilson told the court, (Hon. Carly Dolan) that *'He (Plaintiff) is not getting medical attention'* to which this Plaintiff then pleaded for help for 3 pages of what are badly translated transcripts, during which he details the concussion, punishments he had sustained for his condition and even requested the court look at his severely bruised eye, and detailed these punishment we from asking for help from seizures.

**Judge Carley Dolan** affirmed in open court **(EXHIBIT C.6, pg#5)** when she replied in court *"I hear what your saying, and I understand your frustration....."*, yet nothing was done, this plaintiff was not even allowed to see or even talk to a 'medically licensed doctor' for at least another 90 days, while **his medical condition and neglect worsened, and the retaliation thru cruel and unusual punishments, verbal threats and abuses increased.** The defendants clearly without excuse by this April17th 2020 pre-trial knew of his condition, on May 8th one of the guards witnessed him unconscious actively seizing, on May 12th, 2020 there was a long discussion before Judge Carly Dolan about the medical condition, injuries and the punishments because of the condition. Still the neglect and disregard for my documented medical condition continued without regard for my rights under the US Constitution or ADA.

**6(A.13) May 20, 2020 (Approx. 1:30 AM):** Plaintiff fell from his bunk during a seizure while in solitary confinement and remained unconscious for over five hours. Upon waking and pounding on the cell door for help, no medical assistance was provided despite repeated pleas.

**6(A.14) June 9, 2020:** Plaintiff suffered a grand mal seizure while speaking to **C/O Lee E Haldorson** thru the cell door. Apparently Plaintiff suddenly collapsed face-first onto the concrete, sustaining visible facial injuries. C/O Lee E. Haldorson called for immediate medical attention and request to open cell door, despite this, Haldorson's superiors barred immediate medical response by barring the door from being opened to prevent further head injuries. A nurse responded to the scene after approximately 8 minutes before they opened the door to exam the injuries. No physician was ever brought in and no treatment plan followed despite obvious bleeding and head injuries. This Plaintiff suffered with excessive headaches, another concussion, head injuries and a sore shoulder for weeks after this incident.

**6(A.15) June 16th, 2020:** Plaintiff, after having been refused Gabapetin as a potential medicine, requested an amino acid supplement called "Taurine". Taurine has well known benefits for Epileptics in the medical world, and is part of my UCSF presecriptions. Medical responded on June 23rd, 2020 with a note to my request saying "No" that Taurine its not a medically approved treatment" in contrary to UCSF medical reports. **(EXHIBIT C.7, 4 pgs ).**

**6(A.16) July 8th, 2020:** Plaintiff woke feeling nausea feeling ill along with sudden severe bleeding of the gums and requested to see a doctor. A nurse stopped for about 15 seconds and then kept walking, refusing me all medical attention.

**6(A.17) July 17, 2020:** Plaintiff awoke on the floor of his concrete cell with a *"bleeding injury to his nose and head".* Correctional Officer Reymundo Hernandez observed Plaintiff unconscious and unresponsive and called for medical assistance. Plaintiff has no recollection of receiving direct medical attention.

Plaintiff submitted a formal grievance regarding the incident **(EXHIBIT C.8, 2 pages).** He recalls that a dinner tray had been left in his cell, as he remembers C/O Hernandez later asking him to "hand the uneaten tray back through the chuckhole" if I did not wish to eat. Plaintiff does not recall eating and believes he layed down and slept without food following the seizure. This plaintiff suffered severe headaches and pain for weeks after on a daily basis.

**6(A.18) July 23, 2020:** Received an answer to that July 17th seizure grievance **(EXHIBIT C.8, 2pgs)** indicting they acknowledged this Plaintiff was found in a solitary confinement cell unconscious, that they left him in the concrete cell by myself, gave him no head protection, was not transported to a hospital, did not see a licensed doctor's exam as would be normal protocol in this situation. The only care allegedly provided consisted of "blood pressure and the cleaning and bandaging of cuts, followed by visual checks approximately every 30 minutes through the cell door, until their shift was over" Plaintiff received no anti-seizure medication, and was not provided an MRI, nor have any further neurological evaluation.

**6(A.19) JULY 23, 2020:** Medical staff attempted to prescribe **Keppra or Valproic Acid**—both of which Plaintiff is medically allergic to **( EXHIBIT C.9- UCSF MEDICATION RECORDS, 3pgs)** and carries life-threatening risks if taken. Meanwhile, Plaintiff's long-standing, physician-approved treatments were denied based on false statements of no medical benefit and/or unsubstantiated accusations of misuse of Gabapentin.

**6(A.20) July 31, 2020:** I was able to have medical take a request slip because I had been having excessive gum bleeding issues, I never saw a doctor and this worsened , eventually having to have teeth pulled in 2021 because things got so bad **(EXHIBIT C.10- 1pg )**

**6(A.21) August 2, 2020:** The "Main Nurse"- who I would quickly know thru discovery, shortly stopped and asked me who my neurologist wa, I had told her **Dr. Kore Liow, of St Francis Medical Center, in Honolulu, HI** as I had told each and every staff that would listen or not since the day I was booked there. Nursing staff refused to stop at my cell again regardless of requests until late August.

C.                                                                                                      10

**6(A.22) August 13, 2020:** Plaintiff was taken to medical in the jail and evaluated by a physician for the first time, This doctor did offer a Dilantin prescription, but I explained to him that I had tried taking this medication before and quit taking it as it didn't stop the seizures and it caused intense suicidal ideations, a well-documented side effect many taking this particular medication have, **so much so it has extensive warnings on the label.** In spite of that they refused my request for **Gabapentin,** and any other options, such as a ketogenic diet, CBD, Taurine, or even to move me out of solitary confinement, which I had been 135 straight days at this point.

**6(A.23) October 3, 2020:** I formally requested copies of all medical records kept by Mendocino County Jail pertaining to my treatment and condition. **The jail responded in writing, explicitly denying my request** and instructing me that either my attorney could request the records or that I could request them upon my release **(See Exhibit C.11 - 1 pg.). To date, Mendocino County Jail has unlawfully refused every subsequent request for copies of my medical records, violating my established rights under applicable law.**

## 1. HIPAA & California Health Privacy Laws

Inmates are considered "patients" and retain full rights under federal HIPAA regulations and California's Health & Safety Code. **Specifically, inmates have the right to access and obtain copies of their complete medical records, including treatment notes, diagnoses, lab results, and medication histories.**

Medical providers, including correctional health services, may only deny access under limited circumstances. Any denial must be in writing, clearly state the justification for refusal, include appeal rights, and specify avenues for higher-level review.

## 2. California Jail Regulations (Title 22 CCR)

**§ 79799 explicitly grants 'inmate-patients' the same medical rights as individuals in the general community, including the right to be fully informed about their medical treatment and the right to directly discuss their care with physicians.**

**§ 79807** mandates that inmate-patient medical records must be **"readily accessible upon request by persons authorized by law," and that these records must be preserved for a minimum of seven years.**

**6(A.24) November 4th, 2020: Plaintiff was transferred to CDCR custody.**

## -Re-Incarceration and Continued Medical Neglect (2023–2024)

**6(A.25) October 2023:** Plaintiff was transferred to the Mendocino County Jail by CDCR agents for alleged possession of medical cannabis, despite holding a valid and lawful prescription for medical marijuana. Although no criminal charges were ultimately filed, Plaintiff was subjected to an approximate 17-day parole hold and was placed directly into solitary confinement by Sgt. Eldon E. Johnston, despite exhibiting no behavioral issues and receiving no disciplinary infractions.

C.                                                                                           11

**6(A.26) October 22, 2023** (approx. 9:00–10:00 AM): While in solitary confinement, Plaintiff experienced a grand mal seizure and called out for help to an inmate on the wing. This Plaintiff recalls hearing a female voice instructing, "Stay lying on the floor."

Upon regaining 'conscious awareness', Plaintiff observed approximately 5 to 7 staff members, including nursing personnel and Defendant Eldon E. Johnston standing outside the closed cell door without rendering any medical aid. Where Plaintiff lay, he was unable to move and get up, he pleaded with Sgt. Johnston to be allowed to see a doctor, **Defendant Johnston** dismissed the request, stating, "See, I told you he was ok," before walking away with the others.

**6(A.27) October 22, 2023:** Later that evening, **Sgt. William Hardiman** came to Plaintiff's cell and expressed concern regarding Plaintiff's well-being. **Sgt. William Hardiman** stated that he had reviewed the incident report and surveillance footage and was deeply disturbed by how I had been treated, and that the other staff had failed to intervene during Plaintiff's medical emergency, instead apparently standing outside , providing no medical attention from outside the cell and even, 'supposedly' mocking Plaintiff's condition at the time, and later to other staff, in his official department settings.

Sgt. Hardiman asked whether Plaintiff wished to file a grievance, Plaintiff affirmed, and Sgt. Hardiman promptly provided the appropriate form, which Plaintiff completed. Sgt. Hardiman then took the grievance and filed it on Plaintiff's behalf. *(See EXHIBIT C.17 – 1 page).*

During the interaction, Sgt. Hardiman stated that he had "sworn an oath" and that he "won't lie for anyone," further assuring Plaintiff that he was available to testify if needed. He expressed clear disapproval of the way Plaintiff was being treated and emphasized his personal commitment to integrity and accountability

**6(A.28) On October 25, 2023,** Plaintiff confronted defendant **Eldon Johnston**, asking, **"How can you treat someone like this?"** to which then **Sgt. Johnston responded,** *"Because I don't care"* and walked away.

-**Medical Escalation and Brain Surgeries (2023–2024)**

**6 (A.29) Nov 21ˢᵗ , 2023,** after suffering with odd noises and intense headaches beginning in May 2023 and intensifying late October 2023 into early November 2023: Adventist Ukiah doctors recommended me to UCSF Neurology, who diagnosed Plaintiff with **Arteriovenous Malformation (AVM)**—a condition *'likely caused by repeated head trauma.'* ( EXHIBIT-C.18-2pgs. )

**6 (A.30) February 23, 2024:** Plaintiff underwent his first AVM brain surgery at UCSF with Dr Kazim Narsinh, MD ( EXHIBIT- C.18-4pgs ) Their was weeks of sickness and hair loss from extensive radiation, a constant fear of whats next, wondering if I was going to die? Months of headaches, worsening seizures, and sensitivity to light occurred as Dr Kazim Narsinh shut down arteries in my right eyeball that has significantly affected my vision and sensitivity to light.

C.                                                                                                              12

**6 (A.31) June 27-June 30th, 2024**: Plaintiff had a second AVM brain surgery. **Doctors concluded it was necessary due to the severity of the AVM. Complications during surgery included a minor brain hemorrhage,** and specific medical instructions were given by Dr Kazim Narsinh, MD ( EXHIBIT- C.18-4pgs. )

**-July 1–3, 2024 – Returned to Mendocino County Custody and Continued Neglect.**

**6 (A.32) July 1, 2024:** Following post-surgery temperature drop and a series of seizure's, most probable from the brain hemorrhage I sustained on the operating table June 27th, 2024. **Plaintiff is not exactly sure why or how,** possibly having called 9-11 himself, apparently the Ukiah Police and/or Mendocino Sheriff's came to this plaintiffs residence for a possible wellness check, this Plaintiff does not recall being arrested but does recall being dragged across the asphalt in the Mendocino County jail's sally port by Sheriff's Staff. With no recollection of, apparently being transferred to Adventist ER by ambulance due to witnessed grand mal seizures. While at Adventist the hospital performed an MRI. This plaintiff only became coherent when I found myself talking with familiar nursing and doctor at Adventist who told me I was arrested.

**6(A.33) July 1, 2024:** After release from Adventist hospital, I was returned to the county jail for the 'resisting arrest', no other charge was accused. Apparently in such bad condition that this plaintiff was not even able to sign necessary forms or even a request for assistance while in county jail form. This plaintiff was denied any and all medication as prescribed and sent with this Plaintiff by Duncan Johnston, MD on 7/1/2024 at 15:18 PDT. **(EXHIBIT C.19- 12pgs.) This medication was withheld for the total of 3 days, the total time that this Plaintiff was held in the jail unlawfully July 1st, 2024 thru July 3rd 2024 at approximately 6pm.**

**6(A.34) July 1–3, 2024:** Plaintiff repeatedly begged for medical help, including to receive prescribed anti- seizure medication or at least a pain reliever like Tylenol. Requests for all medical relieve were ignored by staff nursing and correctional staff throughout this time.

**6(A.35) July 2–3, 2024:** After 'complaining' by asking for my medication and for medical grievance forms, this Plaintiff was moved on July 2nd to another cell commonly referred to as "The Chamber," by these defendants. "The Chamber is a cell that has a generator located on the back wall of the cell that loudly vibrates on and off every 10 minutes or so as a punishment to inmates the defendants feel "are non-compliant ". These conditions created sensory and sleep deprivation, increased post seizure, post-surgical pain. Plaintiff barely slept until the evening of July 3th when he posted $1,500 cash to be released on a case that was later dismissed with no cause.

**6(A.36) July 3, 2024:** Plaintiff was brought before the court on a charge of "refusing arrest," despite not having been arrested, detained, or alleged to have committed any offense. This incident arose during what was represented as a welfare check—**initiated with full knowledge that Plaintiff was a recent brain surgery patient.** As a result of the fabricated "refusing arrest" allegation, Plaintiff was offered a coercive plea: accept 30 additional days in custody followed by an extended parole period, even though Plaintiff's controlling date was set for July 16, 2024. **(See Exhibit C.20, 3 pages.)**

C.                                                                                                    13

Upon declining this offer, Plaintiff was compelled to post a $1,500 cash bond to secure release. (See Exhibit C.20.) Nevertheless, Plaintiff's parole was still extended pending a court hearing for a case that was ultimately dismissed. This dismissal occurred only after Plaintiff formally requested the body camera footage of the incident. **Despite the case being dismissed, the $1,500 bond was never refunded, and the underlying constitutional violations remain unaddressed.**

Further compounding the injury, Plaintiff received a **bill from Medstar Ambulance of Mendocino County, Inc. totaling $2,532.48. (See Exhibit C.21, 1 page.)** The ambulance provider had billed $2,675.00 plus additional expenses, amounting to $2,928.00, of which $395.52 was paid—presumably by the County or through Plaintiff's medical coverage. Notably, the hospital to which Plaintiff was transported has treated him on five prior emergency room visits unrelated to incarceration, and never received a claim like this from them.

**6(A.37) ( EXHIBIT C.22, 2 pages)** – Adventist Hospital Ukiah's own Epilepsy Education Sheet outlines standard medical practices for understanding epilepsy and administering appropriate care during and after a seizure. As supported by written records, medical documentation, and video recordings included in the exhibits, Defendants willfully disregarded these established protocols. Their conduct constitutes a violation of Plaintiff's civil rights and supports claims under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and California state law. Given the documented evidence, and further to be discovered, Plaintiff believes a reasonable Judge—or Jury—would likely find in favor of the Plaintiff should Defendants be held accountable at trial.

## 6(B) Property Loss Claim:

Unlawful seizure and permanent deprivation of personal property without due process, in direct violation of the Fourth and Fourteenth Amendments to the United States Constitution.

**6(B.1) On March 30, 2020,** during Plaintiff's arrest, members of the Mendocino County Sheriff's Department unlawfully seized and/or destroyed personal property belonging to Plaintiff, with an **estimated total value of $75,000.** This property was never returned, despite lawful requests and documented verification that defendants were aware the property was lawfully owned by the Plaintiff. **Plaintiff has never been given his due process or property back despite multiple requests, county claim forms and generous settlement offers. ( SEE EXHIBIT C.23, 2 pgs. )**

6.B.2) The property unlawfully seized by the defendants included, but was not limited to, the following items, a significant portion being of personal and professional value to the Plaintiff, and are irreplaceable.:

-A collection of rare coins, including:

-A 1905 Liberty Head- Gold Ten Dollar Coin;

- 3-4, 1906 British silver coins commemorating the coronation of King George V;

C.                                                                                                          14

-A complete 1976 Bicentennial Silver Dollar Collection. Many of these coins were family heirlooms passed down from Plaintiff's grandfather, Fred Hart.

-Digitally stored intellectual property and creative works on a 2019 Apple MacBook Pro. These files are of significant personal and professional value to the Plaintiff and are irreplaceable.

-A curated collection of gemstones and crystals, including:
-Several large quartz crystals personally mined by Plaintiff in Arkansas between 2009–2010;

-Two raw emeralds—'birthstones' gifted by Plaintiff's grandmother, Jacklyn Hart—weighing approximately 330 to 420 grams each;

-One raw ruby from Thailand, weighing approximately 200 grams, gifted to Plaintiff in or around 2005 by a close friend  had returned from Thailand.

-Between 6 to 9 pounds of medically prescribed cannabis, lawfully possessed by the Plaintiff at the time of the incident.

-Personal clothing and apparel, including:

- A Carhartt jacket, multiple pairs of jeans, work boots, shoes, jackets, underwear, socks, shorts, thermal undergarments, sweatpants, sweatshirts, and a zip-up Carhartt hoodie.

-Musical instruments of personal and cultural significance:

-One Australian-made Didgeridoo;

-One African-made Djembe drum.

-Outdoor and sporting equipment, including:

-One Browning compound crossbow;

- Two Shimano and one Abu Garcia fishing rods and reels, with accompanying tackle and lures.

-4 original hand-painted canvas artworks (15" x 18"), depicting sacred geometric forms, painted by the late artist and personal friend of Plaintiff from Ohio, Charles Gilchrist.

6(B.3) Despite multiple formal and lawful demands made by Plaintiff between April 2020 and August 2024 for the return or an accounting of the seized property, **the Mendocino County Sheriff's Department has failed to: (1) provide an inventory; (2) initiate a property hearing as required under due process; or (3) offer any form of restitution.** This failure persisted even after the Department has admitted to having "not sure what happened" to this valuable property—and doing it without following any proper procedure, due process or adhering to applicable state law.

C.                                                                                                              15

**EXHIBIT C.24- 3pgs.-** from **Defendant Sergio Ochoa-Pedroza 6-2-2020** court recorded testimony, after admitting that he knew the property was the Plaintiffs because of the Birth Certificates, SS Cards, Bank Information and Personals in the back pack, because the Defendant went thru them, **He admits he unlawfully left the property to not be processed and 'I don't exactly know what happened to it.'**

**EXHIBIT C.25,** 3 pgs -Attorney Jan Cole-Witness statements and trials questions.

**EXHIBIT C.26, 2pgs.-** Personal business and land that I had paid for 5 years was documented by the Defendants own records.

**EXHIBIT C.27, 5pgs.-** Proof of service and copies of petition for **Writ of Replevin sent June of 2021.**

**EXHIBIT C.28, 1pg.- Letter dated October 13, 2021**, from Attorney Deborah L. Hawkins detailing requests to recover the property and her commitment to call Attorney Jan Cole-Wilson, again detailing this Plaintiffs efforts to recover the property lawfully.

6.B.4) As a result, Plaintiff was denied both constitutional due process and statutory rights regarding the seizure and disposition of lawfully owned property.

## 6(C) – False Charges, Prolonged Solitary Confinement, and Malicious Misconduct

**6(C.1) Approximately 3:00 AM on March 31, 2020:** Upon arrival at Mendocino County Jail Plaintiff was immediately placed in solitary confinement, **where he remained throughout the duration of the incarceration period in Mendocino County Jail covered by this complaint.**

**Initially, Plaintiff was held in solitary confinement for approximately 112 consecutive days, without any formal disciplinary hearing or justification of guilt or due process, until July 20th- 2020 when he received a finding of "Insolence" and 1 week of commissary denial (EXHIBIT C.29, 3pgs.)**

This first phase of solitary confinement effectively continued until October 2021—approximately 19 months—due to erroneous documentation submitted by Defendants and/or other employees under the authority of the Defendant to the California Department of Corrections and Rehabilitation (CDCR). This prolonged confinement occurred despite the jail staff's full awareness of Plaintiff's documented medical vulnerabilities. Furthermore, Plaintiff was again subjected to solitary confinement under the pretext of two parole holds—one involving charges that were never filed, and the other for an alleged "resisting arrest" incident which was ultimately dismissed for lack of probable cause.

**6(C.2) 3-30-2020 thru 4-19-2020:** the first 20 days of confinement, Plaintiff was denied all access to phone calls.

C.                                                                                              16

**6(C.3) On April 3, 2020,** Plaintiff was arraigned in Mendocino. He was also incorrectly charged as having prior sexual assault convictions, which caused his bail to be set at $500,000 and thus was continuely 'offered' long term sentences with the 'threat' of facing 25years to life in prison by the Defendants. **(EXHIBIT C.30, 8 pgs)** This misidentification persisted 136 days until it was corrected in open court on August 13, 2020, **but at that time the high bond that attributed to the erroneous filing remained, in spite of requests for a new bond hearing, this persisted for another 6 weeks.** These errors on the part of the Defendants had significant negative impact on my physical, mental and emotional states. These errors were directly related to Defendants mistakes, these errors and the negative results of those errors continued, even after being ordered in court to correct there errors and do not let it continue.

**6(C.4) On June 25, 2020,** at approximately 6:45 PM, fellow inmate Richard Flores threw urine into Plaintiff's cell. Inmate Flores stated repeatedly to other inmates that Correctional Sgt. Eldon Johnston, C/O ALEX L. BRENNAN; and C/O Aaron J. Shaw had told him I was a sex offender so he thru urine into "that chomo's" cell. Despite my protests or inability to defend myself and the fact inmate Flores threw urine in my cell, I was denied the opportunity to clean up for hours after. After this incident, inmate Flores was transferred off the wing with a day or so.

**6(C.5) October 11, 2020,** Flores returned to Plaintiff's housing unit and attempted to throw urine on this Plaintiff again. Having seen that this Flores was back, this Plaintiff literally had to ask other inmates to bring me milk cartons of detergents and cleaning supplies, trash bags so I could defend myself from a urine attack. In spite of asking for help from the c/o that evening-inmate Flores was allowed to come out. The only defense for me was literally to stand ready with urine to throw it back at him so as to not be sitting in a solitary confinement cell soaked in other persons urine. I was found guilty of my 2nd documented disciplinary violation over this incident and was 20 days solitary confinement though this Plaintiff already was in solitary confinement. ( EXHIBIT C.31 and Mr Flores was a known threat to me.

**6(C.6) On October 23rd, 2020**- this Plaintiff was found guilty of his 3rd disciplinary violation– "disobeying a direct order" stemming from the c/o asking me about drawings on the wall that were obviously not done by this Plaintiff. After being found guilty of this baseless charge and given another 5 days disciplinary confinement, **Having served that, it was recorded thru grievance Lt. Bednar -no due process violations and disciplinary penalties were justified.**

**6 (C.7) On October 23, 2020,** Judge Carly Dolan formally ordered that all false charges against the Plaintiff be expunged. As part of this order, she explicitly prohibited both the District Attorney's Office and the Sheriff's Department from transmitting any erroneous or invalid records to the California Department of Corrections and Rehabilitation (CDCR). **(See EXHIBIT C.32, 2 pages)** Despite this clear and binding directive, those erroneous records were, in fact, transmitted to CDCR. This misconduct occurred either:

A) because the Defendants willfully failed to comply with the court order and neglected to remove the invalid records prior to transfer; or

B) because a member of the Defendants' staff deliberately transmitted those files to CDCR approximately six weeks after Plaintiff's transfer, in direct defiance of Judge Dolan's order. **(See EXHIBIT C.33, 7 pages)**

C.

By violating this judicial order, the Defendants perpetuated extensive psychological, emotional, and physical harm upon the Plaintiff—harm which could and should have been avoided.

**Accordingly, Plaintiff formally demands the following:**
**A)** That a full chain-of-command inquiry be conducted to determine which staff member(s) were responsible for executing Judge Dolan's order to cleanse or correct the Plaintiff's file prior to transfer; and
**B)** That identification be made of the staff person(s) responsible for transmitting any updated records to CDCR in or around December 2020, despite the existing court order.

**6(C.8) On November 4, 2020,** Plaintiff was transferred into CDCR custody at North Kern State Prison. **The following dates, documents and events at CDCR *are documented as a cumulative effective* of the unlawful actions and behaviors by the defendants toward this defendant during the periods of March 30th thru November 4th, 2020. The cumulative effects, either physically, mentally and/or emotionally are a direct cause of the Defendants failure to obey the October 23rd , 2020 court order.**

**6(C.9) November 4th thru December 15, 2020:** Plaintiff was initially endorsed for placement in Minimum Security (Level 1).

**6(C.10) On December 18, 2020,** the same "Committee" that had previously classified Plaintiff as minimum custody reversed its decision and reclassified him as Med-Max custody. **(EXHIBIT C.33, 7pg)** This reclassification by the CDCR classification committee occurred after it received, 'updated' and what were false records from the Mendocino County Sheriff's Office — **records provided in direct violation of Judge Dolan's order —EXHIBIT (C.33)** Each will detail this plaintiffs attempts to 'follow procedural code' and have this resolved thru 'proper procedure', but was denied without a hearing or the ability to provide documentation to the contrary. **This was all done on the premise of the records received by the defendant, in defiance of the Judge Dolan's court order.**

**6(C.11) On January 28, 2021,** a **CDCR Correctional Officer Aguilar** along with unnamed CDCR inmate counselor, publicly commented to this Plaintiff loudly in front of other inmates that I (Plaintiff) was a sex-offender and that I should be aware of the danger. He then made a number of public suggestions that this Plaintiff should be sexually assaulted himself, this was done loudly while passing out dinner meals, in front of other inmates, done to endanger Plaintiffs life.

It should be noted that at this same time, this Plaintiff with no prior California incarceration history suddenly found himself that night in the middle of the 'Aryan Brotherhood' who immediately began demanding **"Where's your Paperwork?" meaning they wanted to see my prison file and any prior convictions.**

**6(C.12) On January 28th:** Approximate 8pm-this plaintiff called the CDCR Ombudsman line detailing the event and requesting help for his safety.

C.                                                                                                          18

**6(C.13) On January 29, 2021**: at *approximately 7:30 AM;* Plaintiff was attacked by two inmates, though on the CDCR final report records, it claims this was only a single 1 on 1, but that is not correct and this was 2 inmates versus 1. Those same records say there was no victims but also says (Plaintiff) had 'bruises' around the eye, sustained multiple broken bone's in his right hand' (this as a result of trying to protect myself), needed 8 sutures, and had a documented concussion.

After this incident Plaintiff was transferred to a higher security, mostly 24 hour lockdown. During this period, this plaintiff wrote multiple letters, grievances and even letters to Judge Dolan that was returned "ex-parte communication" with no help. All this stemming from the defendants transferring documents to CDCR in violation of her court orders, weather this was done unintentionally by not cleaning the files as orders, or maliciously, as longtime corrections professionals knowing the results of those erroneous files on my record at CDCR, either way, defendant's **CARMEL ANGELO as the CEO of Mendocino County**, and **Sheriff MATTHEW C. KENDALL** are both responsible for ultimate control of following Judge Dolans Orders and being helding accountable for sending those erroneous files and the results of those actions.

**6(C.14) On March 9, 2021:** the housing unit in which Plaintiff was confined was granted access to recreation for the first time since the January 29th incident. Having previously received only one hour of out the cell activity in that extended period, Plaintiff chose to attend yard time.

Plaintiff, with no intention of affiliating with the Aryan Brotherhood or participating in their organized "Brothers Workout." Plaintiff walked the perimeter of the yard alone. At approximately 10:20 AM, during his third lap past the area where the Aryan Brotherhood group was gathered, Plaintiff was abruptly and violently attacked by three inmates.

During the assault, Plaintiff was subjected to slurs and accusations such as **"sex offender,"** and "Chomo" a reference to child molesters and was explicitly threatened to, **"Get the fuck off our yard, next time you're going to get stabbed."** As a result of this unprovoked attack, **Plaintiff sustained two fractured ribs, additional head trauma, and a re-fracture of the same right hand injured in the January** incident.

Despite the severity of these injuries, CDCR staff failed to provide timely or adequate medical treatment initially. **Plaintiff was left in a lockdown unit for approximately two and a half days with minimal care,** during which CDCR staff demonstrated deliberate indifference and complicity in the denial of medical attention. **(EXHIBIT C.35)**

**6(C.15) On March 11, 2021,** the AM shift CDCR officer in this 'lockdown' section saw this plaintiff gasping for air and asking him for help, when he opened the door and saw the severity of the injuries, that c/o called for medical and this Plaintiff was taken by stretcher to CDCR prison emergency and then quickly transported via ambulance to **Adventist Hospital in Bakersfield** for emergency treatment **(EXHIBIT C.35 ).** This plaintiff suffered severe headaches, a concussion, struggled with the ability to breath and pain for weeks after this incident on a daily basis.

C.                                                                                                                              19

**6(C.16) From March 12 to November 12, 2021,** Plaintiff was officially placed in solitary confinement by CDCR for 180 days, under the pretext of "behavioral issues" allegedly stemming from, A) Events at Mendocino County Jail, and B) the 2 beat downs I received after arriving to CDCR directly related to the documents sent by defendants, and or their employees. These actions were done with disregard to the court order and or the risk of the plaintiff health and wellbeing.

**6(C.17) October 22, 2021:** Due to continued risk of further injury to plaintiff, this Plaintiff filed a Habeas Corpus petition with Mendocino County to enforce Judge Dolan's 2020 court order. **( EXHIBIT C. 36, 5pgs.)**

**6(C.18) On December 14, 2021,** Judge Carley Dolan was assigned this case, (EXHIBIT C.37, 3pgs) in her answer she reaffirmed her previous order and questioned if defendants had knowingly ignored it. She was given documentation that her court order had not been followed, but despite this, Defendants made no effort to correct their mistake and CDCR retained the false documentation in Plaintiff's prison file.

**6.C.19) In January 2023,** the First Appellate District reversed Mendocino County's prior sentencing decision.

**6 (C.20) On April 25, 2023,** Plaintiff was released from CDCR custody, having served approximately **17 months beyond the legally mandated term of his sentence**. This excessive and unlawful incarceration was the direct result of administrative and legal errors committed by the Defendants, including the improper transmission and handling of expunged or voided charges. The failure to correct Plaintiff's custody status in accordance with judicial orders constitutes a gross miscarriage of justice and a violation of Plaintiff's constitutional rights.

**6(C.21) June, 7th, 2024:** Plaintiff sent his first settlement offer to the county, detailing the ADA and civil rights violations.

**6 (C.22) From July 1 through July 3, 2024,** Plaintiff was taken into custody for 'resisting arrest' after undergoing recent brain surgery and was subsequently transported to the local Adventist Hospital after experiencing multiple grand mal seizures—first at my house, apparently then at Mendocino County Jail sally port, and later while under observation at the hospital. Despite this medical emergency, Plaintiff was returned to Mendocino County Jail and held until approximately 6:00 p.m. on July 3rd. During this time, Defendant Eldon Johnston, acting under color of law, not only refused to provide Plaintiff with necessary post-surgical and post-seizure medical care, but deliberately placed Plaintiff in a cell colloquially referred to by jail staff as "The Chamber." This particular cell is located adjacent to an industrial generator that produces loud, rhythmic vibrations approximately every 10 minutes. The unrelenting noise and vibration caused significant sensory disruption and sleep deprivation, effectively subjecting Plaintiff to conditions amounting to psychological and sensory torture. In addition to this, Plaintiff was denied access to all prescribed medications and pain management therapies.

C.                                                                                                              20

These acts were done willfully, maliciously, and with deliberate indifference to Plaintiff's known medical condition. Plaintiff believes this conduct was motivated by retaliatory animus in direct response to Plaintiff's formal settlement demand presented to the Mendocino County Board of Supervisors in June 2024. Such retaliatory abuse constitutes a clear violation of Plaintiff's constitutional and statutory rights and reflects an egregious abuse of authority under the color of state law.

**6(C.23) These events violated Plaintiff's 1st, 8th, and 14th Amendment rights under the U.S. Constitution**

**7.) ATTEMPT TO RESOLVE THROUGH REASONABLE DEMAND FOR SETTLEMENT**

In an effort to seek resolution prior to initiating formal legal action, Plaintiff Joseph P. Hart on 2 separate occasions sent certified mail **(EXHIBIT C.38 )** and hand delivered written settlement demands to the Office of the County Counsel for the County of Mendocino on June 7th 2024 AND July 15th of 2024. Each letter came with a county claim form and was addressed, titled and began as follows:

**Office of the County Counsel County of Mendocino 501 Low Gap Road, Room 1030 Ukiah, CA 95482**

**'Re: Formal Settlement Offer Request for Injustices and Mistreatment'....**

In each letter, Plaintiff outlined in clear and reasonable terms the basis for his request, demanding a total of $500,000 settlement to address the egregious and unconstitutional conduct suffered during prolonged and unjust treatment while in custody, and a $25,000 settlement for the property unlawful seized and/or destroyed by the Defendant.

Plaintiff specifically cited the severe and repeated violations of his rights arising from the County's deliberate indifference to his known seizure disorder and the willful neglect of urgent medical care by the defendants on multiple occasions that resulted in long term pain and suffering.

The letter identified specific constitutional violations under the 1st, 5th, 8th, and 14th **Amendments, as well as violations of the Americans with Disabilities Act (ADA).** The demand was not made in haste or hostility, but rather as a good faith attempt to address the harm suffered and to resolve the matter without the need for further litigation. This Plaintiff even offered 40% of the $500,000 settlement to be used for Epilepsy training of Mendocino County Jail staff by the Epilepsy Foundation of Norther California. Despite this opportunity to resolve the matter amicably and justly, the Defendants and Mendocino County Counsel have failed to respond adequately or engage in any type of meaningful dialogue for resolution despite reasonable opportunity, thereby necessitating the filing of this complaint to ensure accountability in a court of law by Defendants for their actions, and to seek legal redress for the injuries sustained by the actions of the Defendants over a prolonged period.

C.                                                                                                    21

## 8.) LEGAL CLAIMS FOR RELIEF

### 8(A) Claim (1) One: Violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132

-Plaintiff is a federally qualified individual with a disability-specifically a diagnosed seizure disorder (epilepsy)-whose condition was well-documented and known to the federal government, personal medical doctors, local hospital physicians, Mendocino County Jail staff & the medical contractors during this time.

- Defendants, acting under color of law and in their official capacities; failed to make reasonable accommodations for Plaintiff's medical condition as required by the ADA. This failure was not merely negligent but willful, deliberate, and discriminatory at least in nature, at best it equates to torture and human rights violations under **18 U.S.C. § 242 – Deprivation of Rights Under Color of Law 18 U.S.C. § 241 – Conspiracy Against Rights 18 U.S.C. § 1111 or § 1112 – Attempted Murder** -which applies if law enforcement actions were intended to or knowingly endanger a person's life with intent to commit death, as is this case.

**Defendants on multiple occasions found this defendant on a concrete floor bleeding from the head, not once or twice but a consistent pattern in which they refused medicine and medical assistance that caused severe pain, suffering and could have potential caused death on numerous occasions.**

The ADA mandates that public entities—including county correctional facilities—must ensure that disabled individuals are not excluded from services, programs, or activities due to their disability. In this case, Defendants' actions resulted in solitary confinement, deprivation of medical services and inhumane treatment, causing significant physical pain, suffering, emotional distress, and long- term harm as detailed in this complaint.

### 8(B) Claim (2) Two: Deliberate Indifference to Serious Medical Needs, 42 U.S.C. § 1983

Defendants demonstrated deliberate indifference to Plaintiff's serious medical condition, in violation of the Eighth and Fourteenth Amendments,  actionable under **42 U.S.C. § 1983.**

Despite Plaintiff's known diagnosis of epilepsy and frequent documented seizures while in custody, **Defendants repeatedly ignored medical emergencies, failed to respond to physician directives, refused to provide life-sustaining care, and even punished this defendant in-humanely for simply requesting needed medical assistance.**

This indifference was not incidental or situational—it was a pattern of willful neglect carried out by the defendants and their personal despite repeated medical warnings and visible suffering.

Correctional officers and medical staff alike failed to intervene or summon the appropriate medical help during multiple episodes of medical emergency, this was documented on numerous occasions and even brought up in court on a number of occasions.

C.                                                                                                    22

**Such conduct constitutes a clear breach of the constitutional requirement that jail and prison officials provide adequate medical care to incarcerated individuals. Their conduct was not merely unprofessional—it was unconstitutional.**

**8(C) Claim (3) Three: Cruel and Unusual Punishment, Eighth Amendment, 42 U.S.C. § 1983** Plaintiff was subjected to conditions and treatment that amounted to cruel and unusual punishment, in violation of the Eighth Amendment. This includes but is not limited to:

-Extended solitary confinement without any disciplinary justification.

-Verbal abuse, threats, food restrictions and psychological torment by staff while Plaintiff was visibly injured and unwell.

-Denial of medical care for active seizures and post-operative recovery, leaving Plaintiff in pain, distress, and injuries from medical complications each time.

-Defendants acting maliciously, with deliberate indifference and evil intent, knowing, or should have known, the harm their inaction and mistreatment would cause to the Plaintiff. The cumulative effect of these actions—when viewed in context of Plaintiff's vulnerable condition—meets the legal threshold for cruel and unusual punishment.

**8(D) Claim (4) Four: Due Process Violations, Fourteenth Amendment, 42 U.S.C. § 1983**

**Defendants violated Plaintiff's constitutional right to due process under the Fourteenth Amendment through a series of unlawful actions:**

- False criminal charges were filed against Plaintiff without evidence or procedural justification, resulting in unlawful pretrial detention and excessive bail.
- Prolonged solitary confinement was imposed without any formal disciplinary findings, hearings, or behavioral cause resulting in approximately combining totaling approximately 500 days of solitary confinement, much of which was without cause and/or was directly related to direct actions or by neglect of the defendants.
- Reclassification and housing decisions were made arbitrarily, subjecting Plaintiff to high-risk, punitive conditions without explanation or opportunity to be heard.
- Property confiscation occurred without a warrant, notice, or post-deprivation hearing when requested.
- After being ordered for re-sentencing by the State Appeal court, Plaintiff was resentenced, but had served approximately 17 additional months by the time of re-sentence and correction of defendants legal error's.
- These actions denied Plaintiff both substantive and procedural due process, resulting in unjust confinement, loss of liberty, and personal property violations under color of law.

C.                                                                                                          23

**8(E) Claim (5) Five: Retaliation for Protected Speech, First Amendment, 42 U.S.C. § 1983**

Defendants retaliated against Plaintiff for engaging in protected speech in violation of the First Amendment. Specifically, Plaintiff:

- Plaintiff submitted grievances related to medical neglect and unsafe conditions.
- Verbally addressed a judge in court regarding the severity of his head injuries and fear for his life due to mistreatment.
- Expressed his legal right and reported staff misconduct.
- Has requested clerks, courts, corrections and the county since 3-30-2020 to preserve all video and paper records of Plaintiffs complaints so they may be of public record. As a result, Plaintiff was subjected to punitive conditions, including:

-Additional restrictions and prolonged unjust and unnecessary disciplinary solitary confinement. Denial of basic accommodations and personal hygiene items at times such as tooth paste/tooth brush, pain relievers for actions caused defendants.

-Refusal to provide utensils to eat with dignity for 39 consecutive days (April 7 – May 13, 2020) this was done as a form of retaliatory punishment by Defendant c/o Alex Brennan. This plaintiff only found out about this when staff came into my cell, searched it and then declared that I would not be allowed to eat with utensils for 30 days as discipline for refusing to hand over a dinner tray.

-These retaliatory actions had a chilling effect on Plaintiff's willingness and ability to try and report these ongoing abuses for fear of further retribution, specifically fear of Mendocino Sheriff's Department creating further legal troubles while under their authority; and fear of defendants even possibly trying to murder this Plaintiff in the secluded mountain region of Mendocino County where Plaintiff resided, when under the legal authority of defendants, as murder has been suspected on multiple times by this Sheriff's department, including some of the named Defendants.

**8(F) Claim (6) Six: Unlawful Seizure and Destruction of Property (Fourth & Fourteenth Amendments), 42 U.S.C. § 1983**

Defendants, acting under color of law and without legal authority, seized and/or destroyed Plaintiff's personal and business property—which included:

- Proprietary business documents.
- Electronic devices containing confidential and professional data.
- Rare Coin, Crystal & Gem Collection .
- Life Saving medications
- Musical Instruments
- Cannabis-related supplies.

The estimated value of the seized property exceeds $75,000. The seizure of the property was conducted:

C.                                                                                                24

- Without a valid search warrant.
- Without notice or opportunity to contest the action.
- Without any post-deprivation hearing or legal recourse provided.

These acts constitute clear violations of Plaintiff's rights under the **4th & 14th Amendment.** Defendants willfully acted maliciously, or at minimum with deliberate indifference to the constitutional rights of the Plaintiff.

## 8(G) Claim (7) Seven–Monell Liability (Municipal Liability)

Defendants' misconduct was not isolated or accidental—it was part of a broader institutional failure attributable to Mendocino County Government, specifically Defendants, Darcie Antle and Sheriff Matthew Kendall.

**The County's official policies, customs, and lack of oversight created an environment where:** ADA violations, medical neglect, and civil rights infringements were tolerated or encouraged on an ongoing basis. Staff were either inadequately trained or intentionally misdirected in their duties toward disabled and at-risk detainees.

• Systemic practices led to ongoing harm, equating to ongoing and longlasting physical, mental and emotional harm, specifically to this Plaintiff.

**As such, Mendocino County is subject to liability under the doctrine of Monell v. Department of Social Services, 436 U.S. 658 (1978).**

## 8 (H) Claim (8) Eight–Violations of California State Law: Negligence, Medical Malpractice, and Property Deprivation. Defendants are liable for acts of:

-Negligence, by failing to safeguard Plaintiff's health and well-being, despite being aware of a serious medical condition.

-Medical malpractice, by disregarding medical directives, denying prescribed medications, and failing to follow standard protocols of care.

-Wrongful destruction or seizure of property, including valuable personal and business assets valued in excess of $75,000.

-This conduct not only breached professional and legal duties of care, but also violated Plaintiff's rights under both Federal and the State of California's constitutional and statutory protections.

## 9.) PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and grant the following relief:

C.                                                                                                  25

**9(A)** Award compensatory damages in excess of $3,000,000, to be paid by the defendant as follows:

**9(A.1)** A certified check or money order to be placed in an envelope and sent via USPS Certified Mail in the amount of $1,500,000, payable to:

"SONOMA ASHRAM FOUNDATION"-
Attn: Baba Hari Har Ramji- Epilepsy Initiative 1087 Craig Avenue
Sonoma, California 95476
Phone: (707) 996-8915 info@sonomaashram.org

**9(A.2)** A certified check or money order in the amount of $750,000 payable to: "Joseph P. Hart" To be placed in an envelope and sent via USPS Certified Mail.

Attn: Joseph P. Hart
c/o Hon. James P. Gray
ADR Services, Inc.
19000 MacArthur Boulevard, Suite 550 Irvine, California 92612.

**9(A.3)** A certified check or money order in the amount of $375,000 to be placed in an envelope and sent via USPS Certified Mail., payable to:

"UCSF FOUNDATION"
Box 45339
San Francisco, California 94145
Attn: Erica Hipp – (415) 476-0506 | erica.hipp@ucsf.edu

**9(A.4)** A certified check or money order to be placed in an envelope and sent via USPS Certified Mail in the amount of $375,000 payable to:

"JOSH PROVIDES EPILEPSY ASSISTANCE FOUNDATION, INC."
5428 Sundew Drive
Sarasota, Florida 34238
www.joshprovides.org - Phone # 1-800- 706- 2740

**9(B)** Award punitive damages to the discretion of the courts, in the form of a certified check or money order, against defendants in their personal capacities for willful, malicious, and reckless misconduct, payable to: Joseph P. Hart

To be enclosed in an envelope and sent via USPS Certified Mail to:

Attn: Joseph P. Hart
c/o Hon. James P. Gray
ADR Services, Inc.
19000 MacArthur Boulevard, Suite 550 Irvine, California 92612

C.                                                                                             26

**9(C)** Award full restitution for personal property unlawfully seized or destroyed, valued at no less than $75,000 in the form of a certified check or money order in the amount of $75,000 payable to: Joseph P. Hart

To be placed in an envelope and sent via USPS Certified Mail addressed:

Attn: Joseph P. Hart
c/o Hon. James P. Gray
ADR Services, Inc.
19000 MacArthur Boulevard, Suite 550 Irvine, California 92612

**9(D)** Award reasonable attorney's fees and litigation costs pursuant to 42 U.S.C. § 1988, should Plaintiff retain counsel, or incur reasonable costs related to this case. Including personal costs of a Pro-Se litigant.

9(E) Award amount of Interest of award total starting June 7th, 2024 upon first attempt at a settlement.

9(F) Issue declaratory and injunctive relief that would require Federal Oversight of Mendocino County Jail and require its Sheriff's Department to implement strict ADA- compliant training and department policy reforms pertaining to epileptic patients.

9(G) Order the preservation and production of all surveillance footage, incident reports, and relevant records pertaining to Plaintiff's confinement from March 30, 2020 through July 3, 2024 for discovery purposes, as has been requested by the Defendant on numerous occasions.

9(H) Forward to the United States Department of Justice for consideration of federal prosecution of Defendants as warranted by law for actions committed against the Plaintiff.

9(I) That any settlement or court reward would be paid thru PENSION FORFEITURE of those found to be guilty

9(J) Grant such further relief as this Court deems just, equitable, and appropriate under the circumstances.

## 10.) PLAINTIFF DEMANDS IF SETTLEMENT NOT REACHED

-Plaintiff demands trial on all claims triable by jury or court of law if demands are not met, or if reasonable effort is not made to settle by the defense within a 90day notice of these actions.

C.                                                                                                    27

11.) That a duplicate copy of court stamped mail may be enclosed in an envelope and sent via USPS Certified Mail and electronic delivery to:

- Attn: Joseph P. Hart
- P.O. Box 1093
  Covelo, CA 95428-1093
- josephhart1188@gmail.com

## 12) PLAINTIFF'S OPPOSITION TO QUALIFIED IMMUNITY

Plaintiff respectfully submits this memorandum to oppose any assertion of qualified immunity by the defendants. Qualified immunity does not protect public officials who violate clearly established statutory or constitutional rights of which a reasonable person would have known. See *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The conduct of the defendants in this case falls squarely outside the bounds of protected official discretion and this Plaintiff requests the court to deny any motions to dismiss based on the details in this claim.

## 13) CONCLUSION

The actions of the Defendants, both individually and collectively, represent serious violations of constitutional and statutory protections. These acts were not merely administrative oversights or isolated incidents—they were systemic, at times deliberate, and were carried out with malicious intent and/or a reckless disregard for Plaintiff's health, dignity, and federally protected rights. Such conduct must not go unaddressed. Justice requires that those responsible be held accountable under the law.

Plaintiff, fears even further retribution by defendants, but enthusiastically looks forward to this court reviewing this complaint and reading the exhibits, and the discoveries.

Plaintiff respectfully requests this Honorable Court to provide the relief sought in this Complaint thru summary judgement, partial judgement, and/or date for trial to ensure that the misconduct outlined herein is not repeated against any other individual.

Respectfully Submitted,
Joseph P. Hart

_____    DATE 6 / 25 / 2025

Joseph P. Hart
P.O. Box 1093
Covelo, CA 95428-1093
josephhart1188@gmail.com
(707) 671-8945

C.                                                                                                  28