UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH P. HART,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF MENDOCINO, et al.,<br><br>    Defendants. | Case No.  25-cv-04501-RFL<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 26 |

Plaintiff Joseph Hart brings this action against Defendants County of Mendicino, Mendicino County Sheriff's Office, and current and former officials and employees of the County of Mendocino, alleging that while he was arrested and incarcerated at the Mendocino County Jail in 2020, 2023, and 2024, Defendants discriminated against him and violated his civil rights.  (Dkt. No. 11 ("FAC").)  The operative complaint comprises eight claims: (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA"); (2) deliberate indifference to serious medical needs in violation of the Eighth and Fourteenth Amendments; (3) cruel and unusual punishment in violation of the Eighth Amendment; (4) violation of due process under the Fourteenth Amendment; (5) retaliation in violation of the First Amendment; (6) unlawful seizure and destruction of property in violation of the Fourth and Fourteenth Amendments; (7) municipal liability under *Monell*; and (8) state law negligence, medical malpractice, and property deprivation.  (FAC at 22–25.)[1]

---

[1] All references to page numbers in documents filed on the docket refer to ECF pagination.

1

Defendants County of Mendocino, Darcie Antle, Mendocino County Sheriff's Department, Matthew C. Kendall, Captain Gregory Van Patten, Sergeant Eldon E. Johnston, Sergeant William Hardman, Sergeant Stephen P. Bohner, Detective Sergio Ochoa-Pedroza, Alex L. Brennan, Barinder Singh, Robert C. Dye, and Timothy M. Dale (the "County Defendants") move to dismiss Hart's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons that follow, the motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. This order assumes the parties' familiarity with the facts of this case, the applicable legal standards, and both sides' arguments.

*ADA Claim.* Hart's complaint fails to state an ADA claim under either a disability discrimination or failure-to-accommodate theory. To state a disability discrimination claim under the ADA, "a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Goodwin v. Marin Cnty. Transit Dist.*, 675 F. Supp. 3d 1016, 1022 (N.D. Cal. 2022) (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)). In cases where a plaintiff seeks monetary damages under the ADA, they must also allege intentional discrimination—*i.e.*, that the defendant knew that harm to a protected right was substantially likely and failed to act upon that likelihood. *Id*. at 1026.

Hart's complaint does not plausibly allege that he was discriminated against because of his disability. Hart alleges that despite having knowledge of his documented epilepsy, seizure disorder, and post-seizure complications, Defendants[2] delayed scheduling medical appointments

---

[2] Though Defendants Hernandez, Zavala, Dow, Jenna Johnston, Knapp, Rivera, Shaw, and Singh have not yet been served, the County Defendants' arguments as to Hart's ADA claim apply with equal force to these unserved defendants. Accordingly, the ADA claims against them are dismissed on the same basis, even though they have not yet appeared in the case. *See Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) (the court may "dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related"); *see also Crosby v. Wellpath, Inc.*, No. 20-cv-08529-MMC, 2021 WL 3053056, at *3 (N.D. Cal. July

he needed for his medical condition and refused to prescribe him his desired anti-seizure medication. (*E.g.*, FAC at 4, 11.)  The complaint also describes multiple instances during Hart's incarcerations at Mendocino County Jail where he suffered seizures but Defendants failed to provide him with prompt medical attention, as well as instances where Hart requested medical attention but was denied treatment.  (*See, e.g.*, FAC at 7–13, 19.)  These allegations fail to state a claim for disability discrimination under the ADA because "the ADA does not create a federal cause of action for prisoners challenging the medical treatment provided for their underlying disabilities."  *Alapati v. City & Cnty. of San Francisco*, No. 21-cv-04144-SI, 2022 WL 991724, at *12 (N.D. Cal. Apr. 1, 2022) (cleaned up).  While a plaintiff can state an ADA claim based on medical care if they plausibly allege that they were "discriminatorily precluded from access to medical treatment all together," *id*. (citation omitted), the complaint acknowledges that Hart did in fact receive medical care, just not as often as (or with the precise treatments that) Hart would have wanted (*E.g.*, FAC at 11).  Furthermore, the complaint contains no non-conclusory allegations that Defendants' failures to give him medical treatment were because of his disability.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Hart also alleges that Defendants violated the ADA by placing him in solitary confinement and by failing to provide him with utensils as a form of retaliation.  (FAC at 7, 22.) But Hart's complaint alleges that both of these actions were undertaken for disciplinary reasons (FAC at 24) and contains only conclusory allegations that Defendants took these actions against him because of his disability.  Accordingly, the motion to dismiss this claim is granted as to all Defendants.

*Statute of Limitations Under 42 U.S.C. § 1983.*  For claims under Section 1983, "courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is

---

20, 2021) (dismissing claims against non-moving defendants on the basis of equally applicable arguments against moving defendants).

inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). In California the statute of limitations for personal injury actions is two years. *Id.* (citing Cal. Civ. Proc. Code § 335.1.) "While state law provides the statute of limitations, it is federal law that determines when a cause of action accrues and the statute of limitations begins to run." *Alaniz v. Enterline*, No. 18-cv-05788-HSG, 2020 WL 230893, at *4 (N.D. Cal. Jan. 15, 2020). A claim "generally accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* However, an exception to this rule is the "discovery rule," which postpones accrual of a cause of action "until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). Ignorance of the identity of the defendant is not a basis to apply the discovery rule. *Id.*

The allegations in Hart's complaint concerning his 2020 incarceration are barred by California's statute of limitations for personal injury actions because they concern events that occurred more than two years prior to the filing of his complaint. (*See* Dkt. No. 1.) Hart argues that these allegations are not time-barred because his causes of action were entitled to delayed accrual under the discovery rule, and the statute of limitations is subject to tolling and the continuing violations doctrine. (FAC at 3–4; Dkt. No. 28 at 3.) However, none of these principles save Hart's allegations.

Hart's claims arising from the events of his 2020 incarceration accrued when those events occurred.[3] *Alaniz*, 2020 WL 230893, at *4. The complaint contains no allegations suggesting he did not have notice of the causes of action arising from those occurrences; therefore, Hart is not entitled to delayed accrual under the discovery rule. *Fox*, 35 Cal. 4th at 807. His 2020 incarceration at the Mendocino County Jail ended when he was transferred into California Department of Corrections and Rehabilitation ("CDCR") custody at North Kern State Prison on November 4, 2020. (FAC at 18.) He remained in CDCR custody until April 25, 2023, when he was released. (FAC at 20.) In California, imprisonment tolls the statute of limitations for a

---

[3] This order does not reach the application of the statute of limitations to Hart's *Monell* claim, since that claim already fails for other reasons identified below.

maximum of two years.  *See Jones*, 393 F.3d at 927.  Accordingly, for the 2020 allegations, the latest date to which the statute of limitations could be tolled as a result of Hart's incarceration is November 4, 2022.  Hart is also not entitled to equitable tolling, which is "sparingly applied." *Alaniz*, 2020 WL 230893, at *5.  "Under California's test for equitable tolling, a plaintiff must establish 'timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.'"  *Id*. (quoting *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 102 (2008)).  The complaint does not contain any allegations that the County Defendants had timely notice of Hart's claims.  Furthermore, the complaint does not allege circumstances indicating a lack of prejudice to the County Defendants from the five-year delay, which is long enough to affect the "gathering [of] evidence because of the time that has lapsed since the relevant events."  *Id*. at *6.  Hart has also not alleged facts showing that he has exercised reasonable diligence in bringing his claim, particularly given that he was released from CDCR custody in 2023 and rather than filing suit in court, sent a "settlement offer" to the County.  (FAC at 20.)

Lastly, the continuing violations doctrine does not apply.  A plaintiff invoking the continuing violations doctrine must "plead the existence of a systematic policy or practice of discrimination before and during the statute of limitations period."  *Ramachandran v. City of Los Altos*, 359 F. Supp. 3d 801, 813 (N.D. Cal. 2019) (citation omitted).  However, "[e]ven where acts occur as part of an ongoing policy or practice, if the heart of the plaintiffs' complaint does not stem from the policy . . . but rather from the individualized decisions that resulted from implementation of the policy, . . . these individualized decisions are best characterized as discrete acts, rather than as a pattern or practice."  *Id*. (cleaned up).  Hart's claims arising from his 2020 allegations concern discrete acts undertaken by the County Defendants, and he offers no non-conclusory allegations that they constitute a singular pattern or practice.  Accordingly, the continuing violations doctrine does not apply.

The allegations in Hart's complaint concerning his 2020 incarceration are therefore time-barred.  The Court does not consider these allegations in its analysis below determining whether Hart's complaint states claims under Section 1983.

Though Defendants Hernandez, Zavala, Dow, Jenna Johnston, Knapp, Rivera, Shaw, and Singh have not yet been served, the County Defendants' arguments as to the timeliness of Hart's constitutional claims under Section 1983 apply with equal force to these unserved defendants. Accordingly, because the only allegations of misconduct by these unserved defendants arise from Hart's 2020 incarceration, the Court dismisses Hart's constitutional claims against those unserved defendants as well.  *See Silverton*, 644 F.2d at 1345; *see also Crosby*, 2021 WL 3053056, at *3.  Sergeant Eldon Johnston is the only defendant as to whom the complaint contains non-conclusory facts concerning alleged misconduct post-dating Hart's 2020 incarceration.  Those allegations concerning Johnston are analyzed below.

***Deliberate Indifference Claim.***  Hart's complaint states claims against Johnston for deliberate indifference to his medical needs.  Where the inmate is a pretrial detainee rather than a convicted prisoner, his rights derive from the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishments Clause.  *See Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).  Accordingly, a pretrial detainee seeking to bring a medical care claim against an individual defendant must demonstrate "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries."  *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).  As to the third element, deliberate indifference to a pretrial detainee's serious medical needs violates the

Fourteenth Amendment's Due Process Clause.  Although a deliberate indifference test applies to a pretrial detainee's claim, it is an objective deliberate indifference test, rather than the subjective deliberate indifference test applicable to a prisoner's claim.  *See id.* at 1125 & n.4.

Hart states a claim for deliberate indifference to his medical needs during his pretrial detention in 2024, based on Johnston denying him medicine he had been prescribed.  Hart alleges that in June 2024, he received a second surgery for an arteriovenous malformation ("AVM") and was prescribed medicine by his doctor at the Adventist hospital as part of his recovery.  (FAC at 13.)  He also alleges that in July 2024, when he was reincarcerated following his release from the hospital, his repeated requests for his prescribed medicine were ignored by Johnston and other unspecified employees at the Mendocino County Jail, and he experienced "post seizure, post-surgical pain" as a result.  (FAC at 13, 20.)  Hart's allegations give rise to a reasonable inference that Johnston deliberately refused to provide him with the medical care he needed following his AVM surgery, that such refusal was objectively unreasonable in light of his doctor's prescription, and that he suffered harm as a result.  *See Jacobson v. Contra Costa Cnty.*, No. C 18-04070 WHA, 2019 WL 186649, at *2 (N.D. Cal. Jan. 14, 2019).  These allegations thus state a claim for deliberate indifference against Johnston.  *Id.*

Hart also asserts deliberate indifference claims based on two other incidents: (a) when Johnston did not provide him with medical aid after he experienced a seizure in solitary confinement in 2023 (FAC at 12); and (b) when Johnston moved Hart to a cell referred to as "The Chamber," which created sensory issues and deprived him of sleep (FAC at 13, 20).  Neither of those incidents is adequately alleged as a deliberate indifference claim.  As to the first incident, the complaint reveals that Hart received attention during his seizure: a "female voice" instructed him to "[s]tay lying on the floor," staff members were observing him when he regained awareness, and Johnston declined to provide Hart with medical care after verifying that Hart was "ok."  (FAC at 12.)  There is no allegation that Johnston's decision to not provide Hart with subsequent medical attention contravened a doctor's instructions or other allegations suggesting that Johnston's decision was objectively unreasonable despite his first verifying

whether Hart was "ok."  *See Gordon*, 88 F.3d at 1125 (deeming "mere lack of due care" insufficient and requiring "reckless disregard").  As to the second incident, the complaint contains no additional allegations that Johnston knew that sending Hart to the Chamber would cause Hart to experience negative health effects or that support a plausible inference that a reasonable individual in Johnston's position would have so known.

Accordingly, as currently written, the complaint states a claim for deliberate indifference based only on Johnston's alleged denial of prescribed medicines to Hart in 2024.

***Cruel and Unusual Punishment Claim.***  Hart's complaint states a claim for cruel and unusual punishment against Johnston based on denial of medical care as described above.  Deliberate indifference to a pretrial detainee's serious medical needs violates the Fourteenth Amendment.  *See Gordon*, 888 F.3d at 1124–25.

Hart also alleges that his placement in "[e]xtended solitary confinement without any disciplinary justification" constituted cruel and unusual punishment.  (FAC at 23.)  The only allegation regarding solitary confinement that is not time-barred is the allegation that Hart was subjected "17-day parole hold" by Johnston during which he was "directly placed into solitary confinement" "despite exhibiting no behavioral issues and receiving no disciplinary infractions." (FAC at 11.)  For conditions of confinement to constitute cruel and unusual punishment, the official being sued "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Here, the complaint contains no allegations that Johnston knew that placing Hart in solitary confinement for seventeen days would represent a substantial risk of serious harm to him.  *Id*.

Finally, Hart's allegations regarding verbal abuse, threats, food restrictions, and psychological torment do not appear to pertain to his 2023 or 2024 incarcerations and are accordingly time-barred.  In sum, as currently pled, Hart's complaint states a cruel and unusual punishment claim only as to his allegations against Johnston regarding his medical prescription.

***First Amendment Retaliation Claim.***  Hart's complaint states a claim for retaliation in violation of the First Amendment against Johnston.  A plaintiff bringing a First Amendment retaliation claim must plead (1) that the retaliated-against conduct is protected, (2) that the defendant took an adverse action against them, (3) that there is a causal connection between the adverse action and the protected conduct, (4) that the defendant's acts would chill a person of ordinary firmness from First Amendment activities, and (5) that the retaliatory action did not "advance the legitimate goals of the correctional institution." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (quoting *Rizzo v. Dawson,* 778 F.2d 527, 532 (9th Cir.1985)).

Hart alleges that the County Defendants retaliated against him for submitting grievances, speaking about his injuries in court, reporting staff misconduct, and requesting preservation of his complaints by imposing additional restrictions on him, disciplining him, and denying him items such as toothpaste, a toothbrush, pain relievers, and utensils.  (FAC at 24.)  However, for the reasons described above, most of Hart's allegations are time-barred because they pertain to his 2020 incarceration.  (*E.g.*, FAC at 7–11, 24.)

The County Defendants do not move to dismiss the First Amendment retaliation claim on any grounds other than statute of limitations.  Hart's allegation that Johnston moved him to "The Chamber" during his 2024 incarceration is not time-barred and is sufficient to state a First Amendment retaliation claim against Johnston.  In particular, Hart alleges that Johnston placed him in "The Chamber" the day after he asked for his medication and for medical grievance forms and a month after he sent a settlement offer to the Office of County Counsel that identified alleged statutory and constitutional violations he experienced during his prior incarcerations. (FAC at 13, 20–21.)  Hart's requests for medical grievance forms and sending of his settlement offer constitute protected activity under the First Amendment.  *Cf. Jones v. Williams*, 791 F.3d 1023, 1036 (9th Cir. 2015) ("Accordingly, Jones's complaints of discrimination to his supervisors and statements of intention to file suit were conduct protected by the First Amendment.").  Hart's allegations that he was placed in "The Chamber" only a day after requesting medical grievance forms and a month after sending his settlement offer also support a

plausible inference that his placement was because of his protected activity.  *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent."); *Norwood v. Robinson*, No. CV-08-00172-ROS, 2012 WL 6628894, at *2 (E.D. Cal. Dec. 19, 2012) ("[I]t was only three weeks after that protected activity that Defendant Robinson confiscated more of Plaintiff's property.  That period of time is sufficient to infer a causal connection between the protected conduct and the adverse action.").  Therefore, as currently pled, Hart's complaint states a First Amendment retaliation against Johnston.

   ***Unlawful Seizure and Destruction of Property Claim.***  Hart's complaint does not state a claim for unlawful seizure and destruction of property under the Fourth and Fourteenth Amendments.  The complaint alleges that on March 30, 2020, during Hart's arrest, "members of the Mendocino County Sheriff's Department unlawfully seized and/or destroyed personal property belonging to [him] with an *estimated total value of $75,000*."  (FAC at 14.)  However, for the reasons provided above, Hart's claims arising from allegations pertaining to his 2020 incarceration are time-barred.  Accordingly, the motion to dismiss this claim is granted.

   ***Due Process Claim.***  Hart's complaint does not state a due process claim.  For the reasons discussed above, Hart's allegations that his property was confiscated, false criminal charges were filed against him, and he was subject to prolonged solitary confinement and arbitrary disciplinary and housing decisions in Mendocino County Jail, which are all from 2020, and his allegations that the Mendocino County Sheriff's Office transmitted false records to CDCR in 2021, are time-barred.[4]  As to the non-time-barred allegations,  Hart fails to state a due process claim based on his allegations that he had served "approximately 17 months beyond the legally mandated term of his sentence" by the time that his prior sentencing decision was reversed.  Those 17 months were spent in the custody of CDCR, which is not a defendant in this

---

[4] While Hart's complaint also raises allegations that he was subject to solitary confinement and arbitrary reclassification and housing decisions while under the custody of CDCR from November 2020 to December 2021 (FAC at 18–20), those allegations do not pertain to any wrongdoing on the part of the County Defendants and thus do not state claims against them.

case.  (*See* FAC at 20.)  Although Hart states that Defendants committed errors that led to the improper transmission and handling of expunged or voided charges, he provides no non-conclusory allegations as to which Defendant did so and through what acts.  Hart's complaint also fails to state a claim based on his allegation that Eldon Johnston placed him in solitary confinement for a 17-day parole hold, given the lack of any other allegations regarding the circumstances of that confinement that might give rise to a protected liberty interest.  *Cf. Serrano v. Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003).  Accordingly, the motion to dismiss is granted as to this claim.

**Monell** *Liability Claim.*  Hart's complaint fails to state a *Monell* claim against the County of Mendocino and the Mendocino County Sheriff's Office.  The complaint contains only conclusory allegations that these defendants acted pursuant to any municipal policy or custom.  And, without more, the identification of three individuals who died in sobering/safety cells—one from excessive force, one from "allegedly inadequate supervision," and one who was "found unresponsive"—does not support a plausible inference that custodial abuse and neglect in the sobering cells was sufficiently widespread to constitute a municipal policy or custom.  *See Hunter v. Cnty. of Sacramento,* 652 F.3d 1225, 1233 (9th Cir. 2011).  Accordingly, the motion to dismiss is granted as to this claim.

*State Law Claims.*  Hart's complaint fails to state any state law claims against the County of Mendocino and the Mendocino County Sheriff's Office, as well as all Defendants in their official capacities.[5]  Tort liability against public entities and municipal employees in their official capacities requires statutory authorization.  *See Lang v. Cnty. of Sonoma*, No. C12-0983 TEH, 2012 WL 4674527, at *5 (N.D. Cal. Oct. 2, 2012); *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).  The only state statute referenced in the complaint is the Bane Act.  (FAC at 3, 25.)[6]  To

---

[5] This section of this order applies equally to the non-moving Defendants, because the grounds are equally applicable to them as to the County Defendants.
[6] While Hart argues in his opposition that his state law claims are grounded in Cal. Gov. Code §§ 845.6, 844.6(d), and 815.2(a), these statutory provisions are not identified in Hart's complaint.

state a claim under the Bane Act, a plaintiff must allege that the defendant (1) intentionally interfered with the plaintiff's federal or state constitutional or legal rights and (2) did so "by threats, intimidation, or coercion." *Gutzalenko v. City of Richmond*, 723 F. Supp. 3d 748, 758 (N.D. Cal. 2024) (quoting Cal. Civ. Code, § 52.1(a)).  Though Hart alleges Eldon Johnston withheld his prescription in violation of his constitutional rights, the complaint does not include a Bane Act claim as one of his eight causes of action.  Nor does the complaint identify the legal and factual basis for such a claim, as required under Federal Rule of Civil Procedure Rule 8(a). *Gottschalk v. City & Cnty. of San Francisco*, 964 F. Supp. 2d 1147, 1154–60 (N.D. Cal. 2013). Accordingly, Hart's complaint fails to state a claim under the Bane Act.

Hart's state law claims against the non-entity Defendants in their individual capacities for wrongful seizure and deprivation of property and medical malpractice also fail.  For the reasons discussed above, Hart's property claim and any other claims arising from his 2020 incarceration are time-barred by California's statute of limitations for personal injury actions.  As to his non-time-barred allegations, Johnston is the only individual identified in the complaint who allegedly undertook the actions harming Hart.  However, the complaint contains no allegations establishing that Johnston was a "medical professional" against whom state law medical malpractice claims can be brought.  *See Est. of Claypole v. Cnty. of San Mateo*, No. 14-cv-02730-BLF, 2014 WL 5100696, at *7 (N.D. Cal. Oct. 9, 2014).

However, Hart's complaint states a negligence claim against Johnston in his individual capacity based on the allegations concerning the withholding of his prescription.  It is well established that police officers and jailers owe a duty to exercise reasonable and ordinary care for the life and health of individuals under their custody.  *See, e.g.*, *Giraldo v. Cal. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 248–49 (2008).  Hart's allegations support a plausible inference that Johnston breached that duty by ignoring Hart's numerous requests for his prescribed medicine and causing Hart "post seizure, post-surgical pain."  Therefore, as currently pled, the complaint states a negligence claim against Johnston arising from his withholding of Hart's prescription.

***Supervisory Liability.*** Hart's complaint fails to state any claims against Kendall, Antle, Van Patten, Hardman, Bohner, Angelo, and Bednar,[7] who are named in the complaint as defendants based on their status as supervisors. "A supervisory official is liable under § 1983 so long as there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (citation omitted). "Thus, a supervisor may be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* (citation omitted).

The complaint does not contain any non-conclusory allegations that the supervisor defendants were personally involved in any of the alleged constitutional deprivations. Nor does the complaint contain any non-conclusory allegations that these defendants engaged in any wrongdoing with regard to training or supervision, had any knowledge of the constitutional deprivations Hart alleges, or otherwise engaged in conduct that demonstrated a "reckless or callous indifference" to Hart's rights. (*See, e.g.*, FAC at 2, 8, 19, 25.) Accordingly, the motion to dismiss is granted as to the claims against Kendall, Antle, Van Patten, Hardman, Bohner, Angelo, and Bednar, which arise from their status as supervisors.

***Conclusion.*** For the foregoing reasons, the motion to dismiss is denied as to Hart's claims for deliberate indifference to his medical needs, cruel and unusual punishment, and negligence against Eldon Johnston based on Johnston's denial of Hart's prescription medications in 2024, as well as Hart's First Amendment retaliation claim against Johnston. The motion is granted as to Hart's remaining claims. Except as provided above, dismissal is with leave to

---

[7] Though Angelo and Bednar have not yet been served, the County Defendants' arguments regarding the other supervisor defendants apply with equal force to them. Accordingly, the claims against Angelo and Bednar are dismissed on the same basis, even though they have not yet appeared in the case. *See Silverton*, 644 F.2d at 1345; *see also Crosby*, 2021 WL 3053056, at *3.

amend, as the Court cannot conclude on the current record that allowing amendment as to those claims would be futile.  If Hart wishes to file an Amended Complaint correcting the deficiencies identified above, he shall do so by **May 11, 2026**.  Hart may not add new claims or parties without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.  If no such amended complaint is filed by that date, the claims that were dismissed in this Order will remain dismissed, and the case will proceed on the surviving claims as to Eldon Johnston only.  The case is set for a case management conference on **June 17, 2026**.

     **IT IS SO ORDERED.**

Dated: April 13, 2026

RITA F. LIN
United States District Judge

14