UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH P. HART,<br>Plaintiff,<br>v.<br>COUNTY OF MENDOCINO, et al.,<br>Defendants. | Case No. 25-cv-04501-RFL<br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br>Re: Dkt. No. 44 |

On April 13, 2026, the Court granted in part and denied in part Defendants' motion to dismiss Plaintiff Joseph Hart's amended complaint. (Dkt. No. 40.) The Court found that the complaint stated claims for deliberate indifference to Hart's medical needs, cruel and unusual punishment, and negligence against Defendant Eldon Johnston based on his denial of Hart's prescription medication in 2024, and a claim for First Amendment retaliation against Johnston. (*Id*. at 13.)[1] The Court granted the motion to dismiss Hart's remaining claims with leave to amend. (*Id*. at 13–14.) Hart filed a second amended complaint, asserting eleven claims: (1) violation of the Americans with Disabilities Act ("ADA"), (2) deliberate indifference to medical needs in violation of the Fourteenth Amendment, (3) unconstitutional conditions of confinement and punitive solitary placement in violation of the Fourteenth Amendment, (4) violation of procedural due process under the Fourteenth Amendment, (5) retaliation under the First Amendment, (6) *Monell* liability, (7) negligence, (8) medical negligence, (9) violation of the Bane Act, (10) intentional infliction of emotional distress ("IIED"), and (11) violation of

[1] All references to page numbers for filings on the docket refer to ECF pagination.

California Government Code section 845.6. (Dkt. No. 43 ("SAC").) Defendants move to dismiss all claims except for the First Amendment retaliation claim. (*See* Dkt. No. 44.) For the reasons that follow, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. This order assumes the reader's familiarity with the facts of this case, the applicable legal standard, and both sides' arguments.

***Bane Act, IIED, and Section 845.6 Claims (Claims 9, 10, 11)***. The motion to dismiss these claims is granted. These claims were not included in the first amended complaint. The Court's prior order informed Hart that he "may not add new claims . . . without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15." (Dkt. No. 40 at 14.) Hart did not receive leave from the Court to add these claims, nor did he file a stipulation permitting him to add these claims pursuant to Rule 15. Accordingly, the addition of these claims exceeds the scope of the Court's order granting leave to amend, and the claims are dismissed. *See Strifling v. Twitter Inc.*, No. 22-cv-07739-JST, 2024 WL 54976, at *1 (N.D. Cal. Jan. 4, 2024). Dismissal is without prejudice to Hart seeking leave to add these claims pursuant to Rule 15 or a stipulation.

***ADA Claim (Claim 1)***. The second amended complaint fails to state an ADA claim. To the extent that this claim is based on Defendants' allegedly withholding medical treatment, the claim fails because "the ADA does not create a federal cause of action for prisoners challenging the medical treatment provided for their underlying disabilities." *Alapati v. City & Cnty. of San Francisco*, No. 21-cv-04144-SI, 2022 WL 991724, at *12 (N.D. Cal. Apr. 1, 2022) (cleaned up).

Hart also alleges that Defendants discriminated against him under a failure-to-accommodate theory. He alleges that the County "failed to make reasonable modifications" to its services and programs, which would have included "seizure-safe housing, enhanced observation, medical review before solitary placement, alternative housing outside solitary confinement, prompt post-seizure medical evaluation, grievance access, and meaningful access to medical assistance." (SAC ¶ 95; *see also id.* ¶¶ 82, 96–99 (alleging that Defendants should have provided Hart post-seizure monitoring if they had wished to place him in solitary

confinement and that Defendants should have avoided placing him in the Chamber because of the loud noises).) But the complaint fails to state an ADA claim even under a failure-to-accommodate theory. Hart does not plausibly allege that Defendants were deliberately indifferent—*i.e.*, that they (a) knew that harm to Hart's rights was "substantially likely" and (b) failed to act upon that likelihood. *See Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138–39 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001). There are no non-conclusory allegations in the complaint explaining how Defendants knew, or were supposed to know, that Hart would be seriously harmed without the accommodations identified in his complaint. Though Hart had suffered from seizures in the past and Defendants allegedly knew about Hart's seizures, that, without more, is insufficient to give rise to a plausible inference that Defendants knew he would be seriously harmed by either being placed in solitary confinement without ongoing monitoring or being subjected to loud noises. Accordingly, the motion to dismiss this claim is granted. Dismissal is with prejudice, without leave to amend. Hart was already given an opportunity to add allegations regarding how Defendants knew he would be harmed by being put in solitary confinement or the Chamber. However, he has failed to add such allegations in the operative complaint, indicating that amendment would be futile.

***Deliberate Indifference Claim (Claim 2)***. The second amended complaint states a deliberate indifference claim against Johnston based on Hart's allegations regarding the denial of his prescribed medication in 2024. However, the complaint fails to state a claim based on Hart's remaining 2024 allegations and his allegations that Johnston failed to provide him medical care following a seizure in 2023. The Court discussed the 2023 allegations in its prior order. Hart alleges that after he regained consciousness following his seizure, he saw Johnston observing him with "nursing personnel." (SAC ¶ 108.) He also alleges Johnston made the decision to withhold medical care only after verifying that Hart was "okay." (*Id.* ¶ 111.) As the prior order discussed, these allegations are insufficient to support a plausible inference of deliberate indifference, *see Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018), even given

Johnston's subsequent statement "Because I don't care," (SAC ¶ 113). The motion to dismiss Hart's deliberate indifference claim stemming from his 2023 allegations is granted.

On the other hand, the 2024 allegations regarding the withholding of Hart's prescribed medication give rise to a plausible deliberate indifference claim. The complaint alleges that in July 2024, Hart was discharged from Adventist Health Ukiah Valley having been prescribed anti-seizure medication by Duncan Johnston, M.D. (*Id.* ¶¶ 60–61.) Defendant Eldon Johnston and other individuals allegedly denied Hart his anti-seizure medication when he requested it, which caused him pain and neurological distress, among other things. (*Id.* ¶¶ 116–119.) As discussed in the Court's prior order, these allegations give rise to a plausible inference that Johnston deliberately refused to provide Hart with the medical care he needed, that such refusal was objectively unreasonable in light of Hart's doctor's prescription, and that Hart suffered harm as a result. *See Jacobson v. Contra Costa Cnty.*, No. C 18-04070 WHA, 2019 WL 186649, at *2 (N.D. Cal. Jan. 14, 2019). These allegations thus state a claim for deliberate indifference against Johnston.

Defendants argue that Hart's claim is foreclosed by a "Request for Medical/Mental Health Services," dated July 2, 2024. (Dkt. No. 1 at 64.) The Court takes judicial notice of this document, which was filed on the docket as an attachment to the original complaint. Though on the request form, Hart stated "since 7-1-24 medical refused me my meds!" (*id.*), that statement is not fatal to Hart's claim. There is no indication based on the request form or otherwise that Johnston relied upon any medical opinion when allegedly refusing to provide Hart with his prescribed medication. Hart alleges that he was prescribed anti-seizure medication, that he asked multiple people including Johnston and "medical" for it, and that he ultimately did not receive it. That is sufficient at this stage. The motion is denied as to the denial of medication in 2024.

The motion is granted as to Hart's remaining 2024 allegations, including that Johnston placed Hart in the Chamber; "failed to summon appropriate care; failed to ensure medically appropriate housing; and failed to protect [Hart] from punitive isolation." (SAC ¶ 116.) Again, these allegations do not support a plausible inference that Johston knew that his failure to take

the specified actions would cause Hart serious harm. As discussed above, the mere fact that Hart had suffered seizures in the past is, without more, insufficient to support such a plausible inference. The motion is therefore granted as to these allegations.

Dismissal of the claims based on the 2023 incident and the 2024 allegations other than the withholding of Hart's anti-seizure medication is with prejudice, without leave to amend. Hart has already been given an opportunity to add allegations correcting the above deficiencies but failed to do so, which indicates that amendment would be futile.

***Conditions of Confinement Claim (Claim 3)***. The complaint fails to state conditions of confinement claims against Defendants Eldon Johnston and Jenna Johnston. As to both Hart's allegations concerning these Defendants placing him in solitary confinement in 2023 and Eldon Johnston placing him in solitary confinement and the Chamber in 2024, the complaint fails to plausibly allege deliberate indifference for the reasons discussed above—that is, the complaint contains no non-conclusory allegations that Eldon Johnston and Jenna Johnston knew that placing Hart in solitary confinement and the Chamber would cause him serious harm. Accordingly, the motion to dismiss this claim is granted. Dismissal is with prejudice, without leave to amend, because amendment would be futile for the reasons discussed above.

***Procedural Due Process Claim (Claim 4)***. The complaint states a procedural due process claim as to Hart's allegations concerning his placement in the Chamber but otherwise fails to state a claim based on Hart's 2023 and 2024 placements in solitary confinement. When evaluating a procedural due process claim brought by a pretrial detainee such as Hart, a court first determines if the alleged liberty deprivation "amount[s] to punishment of the detainee" and therefore implicates the Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). If a court concludes that the alleged deprivation amounts to punishment, it must then determine what process is due. *See id*. at 535–38. Absent an intent to punish, whether Defendants' "restrictions and practices constitute punishment in the constitutional sense depends on whether they are rationally related to a legitimate nonpunitive governmental purpose and whether they appear excessive in relation to that purpose." *Id*. at 561.

The complaint plausibly alleges that Eldon Johnston's decision to place Hart in the Chamber in 2024 amounted to punishment. The complaint alleges that Johnston placed Hart in the Chamber "shortly after" Hart had requested "medication and grievance forms" and that in the past Johnston had been hostile to Hart. (SAC ¶¶ 73–74.) These allegations are sufficient to support a plausible inference that Johnston placed Hart in the Chamber to punish him for requesting medication and grievance forms. (*Cf.* Dkt. No. 40 at 9–10.) The complaint also plausibly alleges that Hart's placement in the Chamber caused him harm, including sleep deprivation, sensory overload, and neurological stress and pain. (SAC ¶ 71.) *See also Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004). The complaint therefore states a procedural due process claim arising from Hart's allegations concerning his placement in the Chamber. The motion to dismiss is denied as to these allegations.

However, Hart fails to plausibly allege that his placement in solitary confinement in 2023 and 2024 (other than his placement in the Chamber) amounted to punishment. The complaint contains only conclusory allegations that Defendants placed Hart in solitary confinement with the intention of punishing him. Furthermore, the complaint contains no allegations concerning the conditions of Hart's solitary confinement in 2023 and 2024 (other than the Chamber). Therefore, the complaint's allegations, which allege mere placement in solitary confinement with minimal detail regarding the conditions of that confinement, do not support a plausible inference that Hart's confinement was excessive in relation to a legitimate nonpunitive governmental purpose, for instance, jail security. *See Bell*, 441 U.S. at 547 ("Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). The motion to dismiss is granted as to these allegations. Dismissal is with prejudice, without leave to amend. Hart was given the opportunity to add allegations to his complaint concerning the conditions of his solitary confinement but failed to include such allegations in the operative complaint. (*See* Dkt. No. 40 at 11.) This indicates that amendment would be futile.

**Monell *Claim (Claim 6)***. The second amended complaint fails to state a *Monell* claim against the County. The complaint contains only conclusory allegations that the County and the Sheriff's Department had a policy and practice of, among other things, "placing medically vulnerable detainees, including detainees with epilepsy and seizure disorders, into solitary confinement, administrative segregation, or other restrictive housing without adequate medical screening, clearance, accommodation, or seizure-safe housing modification." (SAC ¶ 160; *see also id*. ¶¶ 161–72.) Indeed, the complaint only describes events involving Hart and merely asserts that "[t]he October 2023 and July 2024 incidents were not isolated or purely discretionary acts of individual line staff. Rather, they reflected and were carried out pursuant to County-level customs, practices, training failures, supervisory failures, and ratification." (*Id*. ¶ 161.) The complaint's allegations are insufficient to support a plausible inference that the County or Sheriff's Department had a municipal policy or custom giving rise to the events at issue in Hart's complaint. *See Hunter v. Cnty. of Sacramento,* 652 F.3d 1225, 1233 (9th Cir. 2011). Accordingly, the motion to dismiss is granted as to this claim. Dismissal is with prejudice, without leave to amend. Hart was already given an opportunity to add allegations regarding the existence of a County or Sheriff's Department policy or practice. His failure to add such allegations to the operative complaint indicates amendment would be futile.

***Negligence and Medical Negligence Claims (Claims 7, 8)***. The second amended complaint fails to state a negligence or medical negligence claim against the County. "[D]irect tort liability against a municipality must be authorized by statute." *Jones v. Cnty. of Del Norte*, No. C 08-03222 CW, 2010 WL 114013, at *6 (N.D. Cal. Jan. 7, 2010) (citing Cal. Gov. Code § 815). The complaint fails to allege any statutory basis for liability. Therefore, the negligence claims against the County are dismissed. *See Sowash v. Cnty. of San Mateo*, No. 25-cv-09630-MMC, 2026 WL 76697, at *7 (N.D. Cal. Jan. 9, 2026). In his opposition to the motion to dismiss, Hart argues that California Government Code section 845.6 provides a basis for holding the County liable. That statute is not pled as a basis for negligence liability, as Hart has pled only common law negligence claims, and the County therefore understandably does not respond

to it on the merits. Because it is not clear from the record whether amendment would be futile, dismissal is without prejudice to Hart seeking leave to amend to add such a claim via stipulation or pursuant to Rule 15.

***Claims Against Kendall***. The second amended complaint contains only conclusory allegations that Kendall "allowed, maintained, and/or ratified housing, classification, seizure response, and medication-continuity practices that predictably exposed epileptic detainees to unnecessary risk." (SAC ¶ 84.) These allegations are based solely on the fact that Kendall was the "final policymaker for the Mendocino County Sheriff's Office and Mendocino County Jail regarding jail operations, custody policies, classification practices, administrative segregation, staff training, supervision, medical-response coordination, medication-continuity procedures, grievance practices, and disability-related accommodation practices." (*Id.* ¶ 156.) The complaint also alleges Kendall "knew, or reasonably should have known, that detainees with seizure disorders predictably require seizure-safe housing, timely emergency response, post-seizure medical evaluation, medication continuity, and reasonable accommodation from conditions likely to worsen seizure risk." (*Id.* ¶ 158.) These allegations are insufficient to support a plausible inference that Kendall was personally involved in any alleged constitutional violations or that there was a causal connection between his conduct and any alleged violations. *See Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (citation omitted). Accordingly, the motion to dismiss the claims against Kendall is granted. Hart was given an opportunity to correct the deficiencies associated with his claims against Kendall but has failed to do so, indicating amendment would be futile. Therefore, dismissal is with prejudice, without leave to amend.

***Conclusion***. For the foregoing reasons, the motion to dismiss is granted as to the ADA claim, deliberate indifference claims arising from Hart's 2023 and 2024 allegations regarding his solitary confinement, conditions of confinement claim, procedural due process claims arising from Hart's 2023 and 2024 solitary confinement (except as to his placement in the Chamber in 2024), *Monell* claim, negligence and medical negligence claims against the County, Bane Act

claim, IIED claim, section 845.6 claim, and claims against Kendall. The motion is denied as to the remaining claims.

The case shall therefore proceed on the following claims: the deliberate indifference and negligence claims against Eldon Johnston based on Hart's allegations that Johnston denied him his prescribed medication in 2024, the procedural due process and First Amendment claims against Johnston based on Hart's placement in the Chamber, and the negligence claim against Jenna Johnston. Discovery is now open and may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is required before the parties may conduct discovery. Defendants shall file a dispositive motion, or notice regarding such a motion, on or before **October 23, 2026**. Plaintiff's opposition shall be filed within 45 days after Defendants' dispositive motion is filed. Defendants' reply shall be filed within 15 days after the opposition is filed. The motion will be deemed submitted on the day the reply brief is due. No hearing will be held on any motion unless the Court specifically orders one.

**IT IS SO ORDERED.**

Dated: July 24, 2026

RITA F. LIN
United States District Judge